IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| THE STATE OF MISSOURI, ex rel. ERIC S. SCHMITT, in his official capacity as Missouri Attorney General, <br><br>     Plaintiff, <br><br> v. <br><br> THE PEOPLE'S REPUBLIC OF CHINA, THE COMMUNIST PARTY OF CHINA, NATIONAL HEALTH COMMISSION OF THE PEOPLE'S REPUBLIC OF CHINA, MINISTRY OF EMERGENCY MANAGEMENT OF THE PEOPLE'S REPUBLIC OF CHINA, MINISTRY OF CIVIL AFFAIRS OF THE PEOPLE'S REPUBLIC OF CHINA, PEOPLE'S GOVERNMENT OF HUBEI PROVINCE, PEOPLE'S GOVERNMENT OF WUHAN CITY, WUHAN INSTITUTE OF VIROLOGY, and CHINESE ACADEMY OF SCIENCES, <br><br>     Defendants. | Case No. 1:20-cv-00099-SNLJ |

**PLAINTIFF'S MOTION TO AUTHORIZE ALTERNATIVE METHODS OF SERVICE
UNDER 28 U.S.C. § 1608 AND FEDERAL RULE OF CIVIL PROCEDURE 4**

Plaintiff State of Missouri ex rel. Missouri Attorney General Eric S. Schmitt ("Missouri") respectfully moves this Court to authorize alternative methods of service under Rule 4(f)(3) of the Federal Rules of Civil Procedure for defendants Communist Party of China, Wuhan Institute of Virology, and Chinese Academy of Sciences, and for service of the six governmental defendants via diplomatic channels under 28 U.S.C. § 1608(a)(4).  On August 7, 2020, Missouri attempted to serve summonses and copies of the complaint on all Defendants by submitting them through its professional international process server to China's central authority under the Hague Convention.

1

China has now refused to effect service, objecting under Article 13 of the Hague Convention. Because service through ordinary Hague channels has proven futile, Missouri requests authority under 28 U.S.C. § 1608(a)(4) and Rule 4(f)(3) to serve all defendants through the alternative channels authorized by law.

## FACTUAL BACKGROUND

This case was filed on April 21, 2020. Doc. 1. The Complaint alleges claims against the People's Republic of China, five other Chinese governmental defendants, the Chinese Communist Party, and two other Chinese entities for their role in unleashing the COVID-19 pandemic on Missouri and the rest of the world. *Id.* According to recent reports, the pandemic has caused over 2.5 million deaths worldwide, including over 500,000 deaths in the United States and over 8,000 deaths in Missouri. The economic costs of the pandemic are also staggering. "The International Monetary Fund has estimated that the global cost of the pandemic is $28 trillion. A paper published in The Journal of the American Medical Association, put the total cost in the U.S. at more than $16 trillion, or nearly $200,000 for a family of four."[1]

All Defendants are located in China, and many Defendants are Chinese governmental entities. Doc. 1. Accordingly, after filing the Complaint, Plaintiff pursued service of all Defendants pursuant to 28 U.S.C. § 1608 and the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Criminal Matters. *See* 28 U.S.C. § 1608; Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (Nov. 15, 1965) (hereinafter, "Hague Convention"), *at* https://www.hcch.net/en/instruments/conventions/full-text/?cid=17. *See also* Doc. 1-3.

---

[1] Dave Seminara, *We Cannot Allow China to Engage in a COVID Coverup* (Feb. 23, 2021), *at* https://www.realclearpolitics.com/articles/2021/02/23/we_cannot_allow_china_to_engage_in_a_covid_coverup_145284.html.

2

For defendants that are foreign governments or their political subdivisions, where a "special arrangement for service" does not exist, 28 U.S.C. § 1608(a)(2) provides that "service in the courts of the United States … shall be made upon a foreign state or political subdivision of a foreign state … by delivery of a copy of the summons and complaint in accordance with an applicable international convention on service of judicial documents."  28 U.S.C. § 1608(a)(2). Likewise, for non-governmental defendants located overseas, Federal Rule of Civil Procedure 4(f)(1) provides that "an individual … not within any judicial district of the United States" may be served "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents." Fed. R. Civ. P. 4(f)(1).  Thus, service through China's central authority under the Hague Convention was the appropriate first channel to attempt service of process.

Accordingly, after filing the Complaint, Missouri initiated the process of seeking to effect service on all Defendants as authorized under the Hague Convention.  Missouri conducted a competitive selection process to procure the services of a professional outside vendor with expertise in investigation, translation, and service of documents abroad, including in China.  As a result of this process, Missouri retained the services of a professional international process server for the investigation, translation, and service of process.  On Missouri's behalf, that process server conducted an investigation to verify official service addresses for all Defendants.  Because the investigation identified possible alternative service addresses for two Defendants, Missouri requested eleven summonses for the nine defendants, using both alternative addresses for those two Defendants out of an abundance of caution.  On July 17, 2020, this Court issued those eleven summonses at Missouri's request.  *See* Docs. 4-14.  The international process server prepared certified translations into simplified Chinese of all relevant documents, including the summonses,

3

Complaint, and civil cover sheet. Consistent with the Hague Convention and the instructions of China's central authority during the Covid-19 pandemic, Missouri's process server notified Missouri that it had submitted the completed service packets electronically to China's central authority for service of process on all Defendants on August 7, 2020.

On February 1, 2021, China's central authority posted a notice online that it objected to service of Missouri's lawsuit on any of the defendants under Article 13 of the Hague Convention. Missouri received notice of this rejection from its process server on February 11, 2021. Article 13 of the Hague Convention provides that a signatory nation may object to service if the objecting nation believes that the act of service would violate its sovereignty: "Where a request for service complies with the terms of the present Convention, the State addressed may refuse to comply therewith only if it deems that compliance would infringe its sovereignty or security." Hague Convention, art. 13. Article 13 states that the objecting nation "may not refuse to comply solely on the ground that, under its internal law, it claims exclusive jurisdiction over the subject-matter of the action or that its internal law would not permit the action upon which the application is based." *Id.*

The Article 13 objection of China's central authority demonstrates that Missouri's good-faith attempt to effect service pursuant to ordinary Hague Convention channels is futile. Accordingly, the law of the United States authorizes Missouri to pursue alternative methods to perfect service. *See, e.g., Zhang v. Baidu.com*, 932 F. Supp. 2d 561, 563 (S.D.N.Y. 2013) ("*Baidu I*") (authorizing a motion for alternative methods of service after China objected under Article 13 of the Hague Convention); *Zhang v. Baidu.com*, 293 F.R.D. 508, 510 (S.D.N.Y. 2013) ("*Baidu II*") (granting the motion for alternative methods of service after China objected to service under

Article 13 of the Hague Convention). Specifically, Missouri requests that this Court authorize alternative methods of service under Rule 4(f)(3) and 28 U.S.C. § 1608(a)(4).

## ANALYSIS

I. **The Court Should Authorize Service by Email on the Non-Governmental Defendants Under Rule 4(f)(3) of the Federal Rules of Civil Procedure.**

Rule 4(h)(2) of the Federal Rules of Civil Procedure addresses the service of non-governmental entities located abroad, and it provides that a "foreign corporation, or a partnership or other unincorporated association … must be served: (2) at a place not within any judicial district of the United States, in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under Rule (f)(2)(C)(i)." Fed. R. Civ. P. 4(h)(2). Rule 4(f) governs the service of defendants who are not located "within any judicial district of the United States." Fed. R. Civ. P. 4(f). Rule 4(f) authorizes three coequal, alternative methods of service on non-governmental entities located abroad. Rule 4(f)(1) permits service "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents." Fed. R. Civ. P. 4(f)(1). And Rule 4(f)(3) authorizes service "by other means not prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f)(3).

Here, Missouri timely sought to effect service under Rule 4(f)(1). About six months after Missouri submitted its documents for service, Missouri received notice that China's central authority had objected to service under Article 13 of the Hague Convention. Notwithstanding China's Article 13 objection, this Court may still authorize an alternative method of service under

5

Rule 4(f)(3), because China's objection under Article 13 does not foreclose alternative methods of service under Rule 4(f)(3).[2]

The Southern District of New York has addressed this precise issue. In *Baidu II*, that court held as a matter of first impression that "alternative service [under Rule 4(f)(3)] is an option where, as here, a foreign country declined to effect service under Article 13 of the Hague Convention." *Baidu II*, 293 F.R.D. at 510. Just as in this case, *Baidu II* involved a lawsuit against both governmental and non-governmental defendants in China—the People's Republic of China, and the Chinese search engine Baidu.com. *Id.* As here, Plaintiffs attempted to effect service under the Hague Convention, but China's designated central authority objected under Article 13 of the Convention. *Id.* Notwithstanding China's Article 13 objection, the court held that it retained discretion to authorize alternative methods of service on the non-governmental defendant under Rule 4(f)(3), which "provides that service on a foreign litigant can be effected 'by other means not prohibited by international agreement, as the court orders.'" *Id.* (quoting Fed. R. Civ. P. 4(f)(3)).

In so holding, the court reasoned that Rule 4(f)(3) "stands independently, on equal footing with Rule 4(f)(1)," and that "numerous courts have authorized alternative service under Rule 4(f)(3) even where the Hague Convention applies." *Id.* (citations omitted) (citing cases). The

---

[2] Notably, the Hague Convention also authorizes alternative methods of service where, as here, service through ordinary Hague Convention channels proves fruitless. Article 15 of the Convention provides that "[e]ach Contracting State shall be free to declare that the judge … may give judgment even if no certificate of service or delivery has been received if … a period of time of not less than six months, considered adequate by the judge in the particular case, has elapsed since the date of the transmission of the document." Hague Convention, art. 15. The Advisory Committee's Notes to the 1993 Amendments to Rule 4 state: "The Hague Convention does not specify a time within which a foreign country's Central Authority must effect service, but Article 15 does provide that alternate methods may be used if a Central Authority does not respond within six months." Fed. R. Civ. P. 4(f)(3), Advisory Committee Notes to 1993 Amendments. "[T]here have been occasions when the signatory state was dilatory or refused to cooperate for substantive reasons. In such cases, resort may be had to the provision set forth in subdivision (f)(3)." *Id.*

court noted that "it follows equally from these principles that alternative service under Rule 4(f)(3) is an option even where service pursuant to Rule 4(f)(1) fails because the receiving state invokes Article 13 of the Convention." *Id.* at 512. "By its terms, Rule 4(f)(3) requires only that service be authorized by a court and 'not prohibited by international agreement.' So long as those conditions are met, it should not, and does not, matter whether service was attempted pursuant to Rule 4(f)(1) or (2) and, if so, whether or why such service was unsuccessful." *Id.* (quoting Fed. R. Civ. P. 4(f)(3)). Thus, the court concluded that authorizing an alternative method of service was consistent with the plain language of Rule 4(f)(3).

The court also rejected the argument that authorizing an alternative method of service under Rule 4(f)(3) after China objected under Article 13 would violate the letter or spirit of the Hague Convention. *See id.* at 512-13. Quoting the plain language of Article 13, the court noted that "[b]y invoking Article 13, therefore, a receiving state merely declares that 'compliance' with a 'request for service' pursuant to the Convention 'would infringe its sovereignty or security.'" *Id.* at 513 (quoting Hague Convention art. 13). A country's objection under Article 13, therefore, "is not a declaration that *the lawsuit itself* violates its sovereignty or security." *Id.* (emphasis added). Thus, "authorizing service within the United States pursuant to Rule 4(f)(3) in a manner that does not call upon China to effect service does not override its invocation of its own sovereignty and security; to the contrary, it honors that invocation." *Id.*

Moreover, the argument that "Article 13 refusal precludes alternative service" is based on an erroneous understanding of the Hague Convention, which was not intended to be "the exclusive means of service on a foreign defendant," but rather "a set of procedures, exclusive or not, for serving a defendant by transmitting judicial documents abroad." *Id.* Quoting the Hague Convention's preamble, the court observed that "[t]he purpose of the Hague Convention is 'to

7

create appropriate means to ensure that judicial and extrajudicial documents to be served abroad shall be brought to the notice of the addressee in sufficient time.'" *Id.* (quoting *Burda media, Inc. v. Viertel*, 417 F.3d 292, 300 (2d Cir. 2005) (quoting Hague Convention, pmbl.).  As the U.S. Supreme Court has stated, "[t]he only transmittal to which the Convention applies is a transmittal abroad that is required as a necessary part of service."  *Id.* (quoting *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 707 (1988)). "The Convention has 'no further implications,' therefore, 'where service on a domestic agent is valid and complete under both state law and the Due Process Clause.'"  *Id.* (quoting *Volkswagenwerk*, 486 U.S. at 707).

For all these reasons, *Baidu II* held that a federal district court "has discretion to authorize alternative service … pursuant to Rule 4(f)(3) notwithstanding China's refusal to effect service under the Hague Convention on the ground that doing so would infringe its sovereignty and security." *Id.* at 514.  For the reasons stated in that opinion, this conclusion was well-reasoned and correct.  It is consistent with the plain language of Rule 4(f), the plain language of the Hague Convention, and the history and purposes of the Convention.  Like *Baidu II*, this Court should conclude that it has discretion to authorize alternative methods of service on non-governmental defendants in this case under Rule 4(f)(3) of the Federal Rules of Civil Procedure, notwithstanding China's Article 13 objection to service under ordinary Hague Convention channels.

Once a court decides to authorize an alternative method of service under Rule 4(f)(3), "[t]he only remaining question is what method of alternative service would be appropriate." *Baidu II*, 293 F.R.D. at 514.  "A method of alternate service is acceptable if it (1) is not prohibited by international agreement; and (2) comports with constitutional notions of due process."  *Id.* (quotation omitted).  "For a method of service to satisfy due process requires 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action

8

and afford them an opportunity to present their objections.'" *Id.* (quoting *Luessenhop v. Clinton County, New York*, 466 F.3d 259, 269 (2d Cir. 2006)). "A district court is afforded wide discretion in ordering service of process under Rule 4(f)(3)." *Id.*

Here, Missouri requests authority to serve the non-government defendants Communist Party of China, Chinese Academy of Sciences, and Wuhan Institute for Virology by the simple expedient of emailing them copies of the translated service packets—which include summons, Complaint, and civil cover sheet—to publicly available email addresses for those defendants. Email addresses are publicly available for all three defendants, and are posted on websites maintained by those organizations. Service by email is preferable to service of hard-copy documents through international delivery, because China has objected to service by postal channels under Article 10 of the Hague Convention, and some courts have held that such an Article 10 objection forecloses service by international postal or commercial-carrier delivery as an alternative to service through the nation's central authority. *See* Hague Convention, art. 10. By contrast, a substantial body of well-reasoned authority holds that an objection to service by postal channels under Article 10 does *not* foreclose service by email as an alternative method of service under Rule 4(f)(3).[3] Moreover, service by email to email addresses publicly associated with the

---

[3] *See, e.g., Fourte Int'l Ltd. BVI v. Pin Shine Indus. Co.*, Case No. 18-cv-00297-BAS-BGS, 2019 WL 246562, at *2 (S.D. Cal. Jan. 17, 2019) (finding that China's Article 10 objection does not include email and allowing email service under Federal Rule of Civil Procedure 4(f) because it is not "prohibited by international agreement"); *WeWork Cos. Inc. v. WePlus (Shanghai) Tech. Co.*, Case No. 5:18-CV-04543-EJD, 2019 WL 8810350, at *2 (N.D. Cal. Jan. 10, 2019) ("Given the weight of authority [in the Northern District of California], the court finds that China's objection to Article 10 regarding postal service does not mean that email service is 'prohibited by international agreement' under Federal Rule 4(f)."); *Bazarian Int'l Fin. Assocs., L.L.C. v. Desarrollos Aerohotelco, C.A.*, 168 F. Supp. 3d 1, 17 (D.D.C. 2016) ("[A] country's objection to Article 10 does not constitute an express rejection of service by email."); *Sulzer Mixpac AG v. Medenstar Indus. Co.*, 312 F.R.D. 329, 332 (S.D.N.Y. 2015) (holding that China's Article 10 objection "does not cover service by email"); *WhosHere, Inc. v. Orun*, Civil Action No. 1:13-cv-00526-AJT-TRJ, 2014 WL 670817, at *3 (E.D. Va. Feb. 20, 2014) (permitting email service

defendants—here, identified on their own websites—is more effective in giving actual notice than alternative methods such as service by publication in Chinese media.

Service by email will also readily satisfy any concerns about providing actual notice under the Due Process Clause. As noted above, "[s]ervice pursuant to Rule 4(f)(3) must comply with constitutional notions of due process and constitute "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *U.S. S.E.C. v. Shehyn*, No. 04 CIV. 2003 (LAP), 2008 WL 6150322, at *3 (S.D.N.Y. Nov. 26, 2008) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). "One factor in considering whether due process is satisfied is whether a defendant served by alternative means possesses some knowledge of the pending lawsuit against her." *Id.* Service by email to email addresses that defendants hold out to the public on their websites as methods of contacting them is "reasonably calculated … to apprise [defendants] of the pendency of the action and afford them an opportunity to present their objections." *Mullane*, 339 U.S. at 314.

For these reasons, the Court should authorize Missouri to serve the non-governmental defendants—Communist Party of China, Wuhan Institute of Virology, and Chinese Academy of Sciences—by email under Rule 4(f)(3) of the Federal Rules of Civil Procedure.

---

because an Article 10 objection "is specifically limited to enumerated means of service in Article 10," and email is "not explicitly listed as means of service under Article 10"); *SEC v. China Sky One Med., Inc.*, Case No. 12-CV-07543 MWF (MANx), 2013 WL 12314508, at *2–3 (C.D. Cal. Aug. 20, 2013) ("The better argument is that e-mail is sufficiently distinct from postal channels that the two should not be equated under the Hague Convention. Therefore, China's objection to the means of service specified in Article 10 does not prevent service by e-mail."). *See also FKA Distrib. Co. v. Yisi Tech. Co.*, Case No. 17-CV-10226, 2017 WL 4129538, at *1 (E.D. Mich. Sept. 19, 2017) (noting that "several courts have held that the Hague Convention allows service by email").

10

    II.    **The Court Should Authorize Service on the Governmental Defendants Through Diplomatic Channels Under 28 U.S.C. § 1608(a)(4).**

Service on foreign states and their political subdivisions is governed by statute, 28 U.S.C. § 1608. Here, the remaining six Defendants—People's Republic of China, National Health Commission of the People's Republic of China, Ministry of Emergency Management of the People's Republic of China, Ministry of Civil Affairs of the People's Republic of China, People's Government of Hubei Province, and People's Government of Wuhan City—are a foreign state and some of its political subdivisions.

Section 1608(a) provides that "[s]ervice in the courts of the United States and of the States shall be made upon a foreign state or political subdivision of a foreign state" according to four processes, arranged hierarchically. 28 U.S.C. § 1608(a)(1)-(4). Unlike Rule 4(f)(1)-(3), a plaintiff must pursue the four processes provided in Section 1608(a)(1)-(4) in the order they are listed, to the extent that they are available. *See id.*

First, Section 1608(a)(1) requires a plaintiff to pursue service "in accordance with any special arrangement for service between the plaintiff and the foreign state or political subdivision." 28 U.S.C. § 1608(a)(1). No such "special arrangement" exists, so Section 1608(a)(1) is not applicable here.

Second, Section 1608(a)(2) provides that "if no special arrangement exists," service shall be made "by delivery of a copy of the summons and complaint in accordance with an applicable international convention on service of judicial documents"—*i.e.*, the Hague Convention. 28 U.S.C. § 1608(a)(2). Missouri has already attempted service under the Hague Convention, and it has proven futile for the reasons discussed above.

Third, Section 1608(a)(3) provides that "if service cannot be made under paragraphs (1) or (2)," service shall be made "by sending a copy of the summons and complaint and a notice of suit,

11

together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned." 28 U.S.C. § 1608(a)(3). Here, service cannot be made under Section 1608(a)(3), because China has objected to service through postal channels under Article 10 of the Hague Convention, and service under Section 1608(a)(3) entails the use of postal channels. Thus, the U.S. Department of State advises: "If a foreign state which is a party to the Hague Service Convention formally objected to service by mail when it acceded to the Convention, *service under Section 1608(a)(3) should not be attempted*, and the plaintiff should proceed to service under Section 1608(a)(4)." U.S. Department of State – Bureau of Consular Affairs, *International Judicial Assistance, Service of Process, Foreign Sovereign Immunities Act*, at https://travel.state.gov/content/travel/en/legal/travel-legal-considerations/internl-judicial-asst/Service-of-Process/Foreign-Sovereign-Immunities-Act.html (visited March 3, 2021) (emphasis added). Accordingly, "service under Section 1608(a)(3) should not be attempted" here, and Missouri "should proceed to service under Section 1608(a)(4)." *Id.*

Fourth and finally, Section 1608(a)(4) provides that "if service cannot be made within 30 days under paragraph (3)," service shall be made:

> by sending two copies of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the Secretary of State in Washington, District of Columbia, to the attention of the Director of Special Consular Services—and the Secretary shall transmit one copy of the papers through diplomatic channels to the foreign state and shall send to the clerk of the court a certified copy of the diplomatic note indicating when the papers were transmitted.

28 U.S.C. § 1608(a)(4).

Here, Missouri's international process server has already prepared translations of the summonses and complaint into simplified Chinese, and it is preparing the requisite notices of suit.

12

The State Department advises that "[t]he summons, complaint and notice of suit must be submitted to the U.S. Department of State, CA/OCS/L, SA-17, 10th Floor, Washington, DC 20522-1710 in duplicate.  Requesting courts or plaintiff's counsel should establish in writing to the Department that service has been attempted pursuant to 1608(a)(l), (2) and (3).  If service is attempted pursuant to Section 1608(a)(2), by applicable international convention, and service is denied by a foreign central authority for the convention, a copy of the denial should be furnished."  U.S. Department of State – Bureau of Consular Affairs, *International Judicial Assistance*, *supra*.  Missouri is also preparing the requisite cover letter advising the State Department that service has been attempted under Paragraphs (a)(1)-(3) to the extent available.  Thus, Missouri requests an order from this Court directing the Clerk of the Court to coordinate with Missouri's counsel and its international process server to receive Missouri's service packet and submit it to the State Department for service through diplomatic channels on the six governmental Defendants, as provided in 28 U.S.C. § 1608(a)(4).

## CONCLUSION

For the reasons stated, Plaintiff State of Missouri ex rel. Attorney General Eric Schmitt respectfully requests that this Court issue an order (1) authorizing Missouri, pursuant to Federal Rule of Civil Procedure 4(f)(3), to serve Defendants the Communist Party of China, the Wuhan Institute of Virology, and the Chinese Academy of Sciences by providing translations into simplified Chinese of the Complaint and Summons by email at publicly available email addresses provided by those organizations; and (2) directing the Clerk of the Court to coordinate with Missouri's counsel and international process server to receive and submit Missouri's service packet to the U.S. Department of State for service through diplomatic channels on the other six

13

Defendants pursuant to 28 U.S.C. § 1608(a)(4); and (3) to grant such other and further relief that the Court deems just and proper.

Dated: March 8, 2021                              Respectfully submitted,

**ERIC S. SCHMITT**
**ATTORNEY GENERAL**

*/s/ D. John Sauer*
D. John Sauer, #58721MO
  Solicitor General
Justin D. Smith, #63253MO
  Deputy Attorney General
Missouri Attorney General's Office
Post Office Box 899
Jefferson City, MO 65102
Tel: (573) 751-8870
Fax: (573) 751-0774
John.Sauer@ago.mo.gov