**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION**

| | | |
|---|---|---|
| THE STATE OF MISSOURI, | ) | |
| ex rel. ERIC S. SCHMITT, in his | ) | |
| official capacity as Missouri | ) | |
| Attorney General, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:20-cv-00099-SNLJ |
| | ) | |
| THE PEOPLE'S REPUBLIC OF CHINA, | ) | |
| THE COMMUNIST PARTY OF CHINA, | ) | |
| NATIONAL HEALTH COMMISSION | ) | |
| OF THE PEOPLE'S REPUBLIC OF | ) | |
| CHINA, MINISTRY OF EMERGENCY | ) | |
| MANAGEMENT OF THE PEOPLE'S | ) | |
| REPUBLIC OF CHINA, MINISTRY OF | ) | |
| CIVIL AFFAIRS OF THE PEOPLE'S | ) | |
| REPUBLIC OF CHINA, PEOPLE'S | ) | |
| GOVERNMENT OF HUBEI | ) | |
| PROVINCE, PEOPLE'S GOVERNMENT | ) | |
| OF WUHAN CITY, WUHAN INSTITUTE | ) | |
| OF VIROLOGY, and CHINESE | ) | |
| ACADEMY OF SCIENCES, | ) | |
| | ) | |
| Defendants. | ) | |

*AMICUS CURIAE* **BRIEF OF
THE CHINA SOCIETY OF PRIVATE INTERNATIONAL LAW
IN OPPOSITION TO PLAINTIFF THE STATE OF MISSOURI'S COMPLAINT
AGAINST DEFENDANTS THE PEOPLE'S REPUBLIC OF CHINA,** *ET AL.*

**TABLE OF CONTENTS**

STATEMENT OF INTEREST ..................................................................................................... 1
INTRODUCTION .......................................................................................................................... 1
ARGUMENT .................................................................................................................................. 1
    I.    The society as a non-party may suggest the lack of subject-matter jurisdiction .................. 1
    II.    The FSIA's noncommercial tort exception to immunity does not apply. ......................... 2
    III.    The FSIA's commercial activity exception to immunity does not apply. ........................ 3
        A.    The Complaint does not allege any "direct effect." ..................................................... 4
        B.    The alleged commercial activities of Defendants are not commercial in nature. ......... 5
        C.    The allegations are not based upon acts that have substantive or causal connection to the alleged commercial activities of Defendants. ............................................................. 12
    IV.    All named defendants are entitled to immunity ............................................................. 13
CONCLUSION ............................................................................................................................. 15

# TABLE OF AUTHORITIES

**Cases**

*Adler v. Fed. Republic of Nigeria*, 107 F.3d 720 (9th Cir. 1997) .................................................. 13

*Anglo-Iberia Underwriting Mgmt. Co. v. P.T. Jamsostek*, 600 F.3d 171 (2d Cir. 2009) ... 6, 12, 13

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................................... 1

*Best Med. Belgium, Inc. v. Kingdom of Belgium*, 913 F. Supp. 2d 230 (E.D. Va. 2012) ............... 9

*Big Sky Network Canada, Ltd. v. Sichuan Provincial Gov't*, 533 F.3d 1183 (10th Cir. 2008) ..... 10

*Chen v. China Cent. TV*, 2007 U.S. Dist. LEXIS 58503 (S.D.N.Y., Aug. 9, 2007) ............... 13, 14

*Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) ............................................................................ 4

*Drexel Burnham Lambert Group Inc. v. Comm. of Receivers for A.W. Galadari*, 12 F.3d 317 (2d Cir. 1993) .................................................................................................................................. 13

*El Omari v. Kreab (USA) Inc.*, 735 F. App'x 30 (2d Cir. 2018) .................................................... 9

*Elbasir v. Kingdom of Saudi Arabia*, 468 F. Supp. 2d 155 (D.D.C. 2007) .................................... 6

*F. Hoffman-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155 (2004) ........................................... 11

*First Nat'l City Bank v. Banco Para el Comercio Exterior de Cuba*, 462 U.S. 611 (1983) ..... 7, 10

*In re Terrorist Attacks on Sept. 11, 2001*, 349 F. Supp. 2d 765, 794 (S.D.N.Y. 2005) .................. 3

*In re Terrorist Attacks on September 11, 2001*, 714 F.3d 109 (2d Cir. 2013) .............................. 3

*Janvey v. Libyan Inv. Auth.*, 840 F.3d 248 (5th Cir. 2016) ........................................................... 4

*Jerez v. Republic of Cuba*, 775 F.3d 419 (D.C. Cir. 2014) .......................................................... 3

*Jerez v. Republic of Cuba*, 964 F. Supp. 2d 52 (D.D.C. 2013) ..................................................... 2

*Kato v. Ishihara*, 360 F.3d 106 (4th Cir. 2004) ............................................................................ 9

*OBB Personenverkehr AG v. Sachs*, 577 U.S. 27 (2015) .............................................................. 7

*Peterson v. Royal Kingdom of Saudi Arabia*, 416 F.3d 83 (D.C. Cir. 2005) .............................. 10

*Princz v. Fed. Republic of Germany*, 26 F.3d 1166 (D.C. Cir. 1994) .......................................... 4

*Republic of Argentina v. Weltover*, 504 U.S. 607 (1992) .......................................................... 4, 5

*Saludes v. Republica de Cuba*, 577 F. Supp. 2d 1243 (S.D. Fla. 2008) ...................................... 14

*Saudi Arabia v. Nelson*, 507 U.S. 349 (1993) ................................................................... 5, 7, 8

*Sprewell v. Golden State Warriors,* 266 F.3d 979 (9th Cir. 2001) ................................................ 1

*Stirling v. China*, Case No. 3:20-cv-00713 (D. Or. Aug. 14, 2020, adopted Sept. 21,2020) .......... 3

*Underhill v. Hernandez*, 168 U.S. 250 (1897) ....................................................................... 9, 12

*Verlinden B. V. v. Central Bank of Nigeria*, 461 U.S. 480 (1983) .................................................. 2

*W.S. Kirkpatrick & Co. v. Environmental Tectonics Corp., Int'l*, 493 U.S. 400 (1990) ................. 9

*Walters v. Indus. & Commer. Bank of China, Ltd.*, 651 F.3d 280 (2d Cir. 2011) ................. 2, 7, 10

*Yaodi Hu v. Communist Party of China*, 2012 WL 7160373 (W.D. Mich. Nov. 20, 2012) ......... 13

*Yessenin-Volpin v. Novosti Press Agency*, 443 F. Supp. 849 (S.D.N.Y. 1978) ............................ 14

**Statutes**

15 U.S.C. § 15c ............................................................................................................................. 4

15 U.S.C. § 1679h(c)(1) ............................................................................................................... 4

15 U.S.C. § 1681s(c) .................................................................................................................... 4

28 U.S.C. § 1330(a) ...................................................................................................................... 2

28 U.S.C. § 1605(a)(2) ................................................................................................................. 3

28 U.S.C. § 1605(a)(5) ................................................................................................................. 3

28 U.S.C. § 2680 ........................................................................................................................... 3

50 U.S.C. § 4501 ........................................................................................................................... 9

**Rules**

Fed. R. Civ. P. 12(h)(3) ................................................................................................................ 1

**Other Authorities**

Constitution of the People's Republic of China ......................................................................... 14

*Missouri's Lawsuit Doesn't Abrogate China's Sovereign Immunity*, Just Security (Apr. 22, 2020), available at https://www.justsecurity.org/69817/missouris-lawsuit-doesnt-abrogate-chinas-sovereign-immunity/ ................................................................................................ 13, 14

Presidential Memorandum on Allocating Certain Scarce or Threatened Health and Medical Resources to Domestic Use (Apr. 3, 2020), available at https://www.whitehouse.gov/presidential-actions/memorandum-allocating-certain-scarce-threatened-health-medical-resources-domestic-use/ ............................................................... 9

R. Seamon, *Causation and the Discretionary Function Exception to the Federal Tort Claims Act*, 30 U.C. Davis L. Rev. 691 (1996) ........................................................................................ 3

Restatement Fourth of the Foreign Relations Law of the United States § 454 .................... 4, 5, 13

**STATEMENT OF INTEREST**

The China Society of Private International Law ("The Society") is an academic society formed under Chinese law and dedicated to research and discussion of private international law issues. It is interested in the law and theory of foreign sovereign immunity and the furtherance of relations between China and the United States. It has been following this case in view of the foreign sovereign immunity issues it raises and in view of its potential effects on Sino-U.S. relations.

**INTRODUCTION**

The Society respectfully requests that the Court accept this *amicus curiae* brief on the question of subject-matter jurisdiction, in view of the significant subject-matter jurisdiction implications, foreign sovereign immunity and other issues this case raises, and also in view of the case's potential large effects on Sino-U.S. relations. It is important also to appreciate the reciprocal nature of the doctrine of foreign sovereign immunity generally.

This brief sets forth the reasons why the Court should find that Plaintiff has not sufficiently alleged a basis for finding that subject-matter jurisdiction exists under the Foreign Sovereign Immunities Act (FSIA). For purposes of this argument, we must assume that the allegations of Plaintiff's complaint are true, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), except for conclusory allegations, unwarranted deductions of fact and unreasonable inferences, *Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001), despite the outrageous and unfounded nature of certain of those allegations. However, the employment of this assumption, should not be taken as an endorsement of the complaint's factual allegations.

**ARGUMENT**

**I. The society as a non-party may suggest the lack of subject-matter jurisdiction.**

Under Fed. R. Civ. P. 12(h)(3), "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Defendants in this case are presumptively

entitled to immunity under the FSIA, and if they are immune, subject-matter jurisdiction does not exist.[1] *See* 28 U.S.C. § 1330(a) (court has subject-matter jurisdiction *only if* the foreign state is *not* entitled to immunity).  Because of this, "even if the foreign state does not enter an appearance to assert an immunity defense, a district court still *must* determine that immunity is unavailable under the Act."  *Verlinden B. V. v. Central Bank of Nigeria*, 461 U.S. 480, 494 n.20 (1983) (emphasis added). Given the central importance of subject-matter jurisdiction, a nonparty may bring to the attention of a court the lack of subject-matter jurisdiction, pursuant to Fed. R. Civ. P. 12(h)(3):

> To the extent that a court has the power, or even duty, to consider a question *sua sponte*, it is hardly necessary to speak of "third-party standing."  If a court may consider an issue on its own motion [as in the case of subject-matter jurisdiction], it does not matter what triggers the court's inquiry. The court may consider the issue once it is suggested by any party - ***or, for that matter, non-party*** - even if there is no reason to confer a special right of "third-party standing" on that party.

*Walters v. Indus. & Commer. Bank of China, Ltd*., 651 F.3d 280, 292-293 (2d Cir. 2011) (emphasis added); *Jerez v. Republic of Cuba*, 964 F. Supp. 2d 52 (D.D.C. 2013). Therefore, the Society as a non-party to this lawsuit may suggest to this Court that the Court lacks subject-matter jurisdiction.

### II. The FSIA's noncommercial tort exception to immunity does not apply.

The FSIA's noncommercial tort exception to immunity provides as follows:

> (a)  A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case--
> . . .
> (5) not otherwise encompassed in [the commercial activity exception to immunity], in which money damages are sought against a foreign state for personal injury or death, or damage to or loss of property, occurring in the

---

[1] Sovereign immunity under the FSIA entitles a defendant to "an immunity from trial and the attendant burdens of litigation, and not just a defense to liability on the merits." *Phoenix Consulting, Inc. v. Republic of Angola*, 216 F.3d 36, 39 (D.C. Cir.2000). Discovery, even discovery limited to jurisdictional issues, "should be granted only if the plaintiff presents non-conclusory allegations that, if supplemented with additional information, will materially affect the court's analysis with regard to the applicability of the FSIA." *Crist v. Republic of Turkey*, 995 F. Supp. 5, 12 (D.D.C. 1998). There are no such non-conclusory allegations. Moreover, subject-matter jurisdictional findings cannot be created out of nothing pursuant to Fed. R. Civ. P. 37(b)(2)(A)(i), as implied by plaintiff in ECF No.26, at 8. *See Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702(1982).

2

> United States and caused by the tortious act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment; except this paragraph shall not apply to--
> (A) any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function regardless of whether the discretion be abused, or
> (B) any claim arising out of malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights . . . .

28 U.S.C. § 1605(a)(5). This exception applies only when the alleged tort occurs entirely within the territorial jurisdiction of the United States: "'[T]he entire tort'—including not only the injury but also the act precipitating that injury—must occur in the United States." *Jerez v. Republic of Cuba*, 775 F.3d 419, 424 (D.C. Cir. 2014) (holding default judgment void because of lack of subject-matter jurisdiction); *In re Terrorist Attacks on September 11, 2001*, 714 F.3d 109, 116 (2d Cir. 2013).[2] Therefore, jurisdiction does not exist under § 1605(a)(5), because all alleged acts and omissions asserted by Plaintiff to be torts occurred in China.

### III. The FSIA's commercial activity exception to immunity does not apply.

It has also been alleged that subject-matter jurisdiction exists under the "direct effect" prong of the commercial activity exception to immunity, which requires that the action be based "upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States." 28 U.S.C. § 1605(a)(2). Jurisdiction is lacking under this exception to immunity for the reasons below.

---

[2] The "discretionary function" and "misrepresentation: exceptions to the exception" also would bar suit. *See Stirling v. China*, Case No. 3:20-cv-00713 (D. Or. Aug. 14, 2020, adopted Sept. 21,2020) (claim against China for negligent release of coronavirus dismissed under discretionary function exception). "The FSIA's discretionary function exception replicates the discretionary function exception in the Federal Tort Claims Act." *In re Terrorist Attacks on Sept. 11, 2001*, 349 F. Supp. 2d 765, 794 (S.D.N.Y. 2005). Under the latter statute (28 U.S.C. § 2680), the U.S. courts have dismissed tort claims against the United States for exposing people to "radiation, asbestos, Agent Orange, and blood contaminated by human immunodeficiency virus (HIV)." R. Seamon, *Causation and the Discretionary Function Exception to the Federal Tort Claims Act*, 30 U.C. Davis L. Rev. 691, 694 (1996).

3

### A. The Complaint does not allege any "direct effect."

None of the alleged acts or omissions of Defendants occurred in the United States, so there is no jurisdiction under the "commercial activity" provision of the FSIA unless the case is based on an act that had a "direct effect" in the United States. An effect was direct if it followed as an immediate consequence of the defendant's activity in the foreign state. *Republic of Argentina v. Weltover*, 504 U.S. 607, 618 (1992). A "direct effect" "is one which has no intervening element, but, rather, flows in a straight line without deviation or interruption." *Princz v. Fed. Republic of Germany*, 26 F.3d 1166, 1172 (D.C. Cir. 1994) (internal citation and quotation marks omitted). *See* Restatement Fourth of the Foreign Relations Law of the United States § 454 (b)(3) ("a direct effect is one that follows as an immediate consequence of the act") and § 454, comment (e) ("An effect is not direct . . . if it is caused by an intervening act.").

*A chain of causal events* had to occur before any person or business in the United States became affected. According to the allegations, the coronavirus originated in China when some persons there became infected. *Even if* one or more of Defendants committed some tortious act or omission, causing this causal chain to start, without the intervening interpersonal transmission through international travel, the harm suffered in the United States would not have occurred. Hence the harm occurring in the United States cannot qualify as a "direct effect" under 28 U.S.C. § 1605(a)(2). The lack of a direct effect bars jurisdiction under § 1605(a)(2) in this case.

Furthermore, an effect is not "direct" if it hinges on third parties' independent conduct. *Janvey v. Libyan Inv. Auth*., 840 F.3d 248, 262 (5th Cir. 2016).[3] The direct cause of infection to

---

[3] Plaintiff asserts that it is suing in a *parens patriae* capacity. Some statutes do authorize proceedings in such a capacity, *e.g*., 15 U.S.C. § 15c (2006), 15 U.S.C. § 1679h(c)(1), 15 U.S.C. § 1681s(c), but the FSIA does not authorize such actions. Moreover, the non-uniformity of alleged harms suffered by individual Missouri citizens would make such a case unmanageable, even if it were authorized. *Cf. Comcast Corp. v. Behrend*, 569 U.S. 27 (2013).

4

the vast majority of persons in the United States would have been other infected persons present in the United States due to the failure of the U.S. authorities to take effective measures to suppress the spread of the coronavirus and the failure of persons to take proper preventive measures (including the wearing of masks and social distancing). The harms allegedly suffered by Plaintiff and Missourians as a consequence of the large number of infections contracted *within* the United States are caused by independent conduct of U.S. authorities. There is therefore no "direct effect."

### B.  The alleged commercial activities of Defendants are not commercial in nature.

In addition, the Complaint fails to identify relevant commercial activity that could serve as a basis for jurisdiction under the FSIA's commercial activity exception. The Complaint cites various governmental activities and attaches the label "commercial" thereto in a conclusory fashion, and uses incorrect criteria for determining when an activity is commercial under the FSIA. Plaintiff's mischaracterizations are exemplified in its list of allegedly "commercial activities":

> (1) operation of the healthcare system in Wuhan and throughout China; (2) commercial research on viruses by the Wuhan Institute and Chinese Academy of Sciences; (3) the operation of traditional and social media platforms for commercial gain . . . .

Complaint, ¶ 40. (Regarding ¶ 40(4), concerning personal protective equipment (PPE), see below.)

A foreign state engages in commercial activity under the FSIA "when a foreign government acts, not as a regulator *of a market*, but in the manner of a private player *within it.*" *Republic of Argentina v. Weltover*, 504 U.S. 607, 614 (1992) (emphasis added); *Saudi Arabia v. Nelson*, 507 U.S. 349, 360 (1993). To determine whether a foreign state's activity is "commercial" for purposes of the FSIA, one must ask "whether the particular actions that the foreign state performs (whatever the motive behind them) are the type of actions by which a private party engages in '*trade and traffic or commerce.*'" *Id.* (emphasis added). *See also* Restatement Fourth of the Foreign Relations Law of the United States § 454 (b)(2) ("commercial activity means a foreign state's participation

5

*in the marketplace* in the manner of a private party") (emphasis added).

In fact, (1) the "commercial activity" exception of the FSIA does not encompass the administration of a government program to provide for the health and welfare of a sovereign's citizens and residents. *Elbasir v. Kingdom of Saudi Arabia*, 468 F. Supp. 2d 155, 161–62 (D.D.C. 2007). *See also Anglo-Iberia Underwriting Mgmt. Co. v. P.T. Jamsostek*, 600 F.3d 171, 178 (2d Cir. 2009) ("actions in connection with the administration of Indonesia's national health insurance program are sovereign in nature and do not suffice to bring [defendant] within the 'commercial activity' exception to the FSIA").

As for (2) research on viruses, Plaintiff alleges, without any basis, that "the Wuhan Institute of Virology . . . was studying the virus as part of a commercial activity." (Complaint, ¶ 52). Scientific research into important human health issues such as that carried out by the Wuhan Institute of Virology ("WIV") and numerous institutes of the U.S. National Institutes of Health such as the National Institute of Allergy and Infectious Diseases (NIAID), is not in itself commercial.  It is true that one of these government organizations might commercialize its research. If that occurred and if it committed a legal wrong relating to that commercializing activity (for example, breaching a contract into which it had entered with a drug manufacturer), it could be sued under the FSIA's "commercial activity" exception.  However, Plaintiff does not identify any commercializing activities. Instead, the allegations are based on the simple fact that WIV, a state-owned scientific institution similar to NIAID, was conducting scientific research into viruses.

It is notable that Plaintiff refers not to WIV but to "[t]he Chinese Academy of Sciences seek[ing] to 'commercialize' its discoveries and boast[ing] about spinning off hundreds of companies from its activities." (Complaint, ¶ 32.) The Chinese Academy of Sciences ("CAS") is a different Chinese legal person from WIV.  Plaintiff cannot disregard the juridically separate

6

status of different state-owned persons one from another. *See First Nat'l City Bank v. Banco Para el Comercio Exterior de Cuba*, 462 U.S. 611 (1983); *Walters v. Indus. & Commer. Bank of China, Ltd.*, 651 F.3d 280, 298-99 (2d Cir. 2011).

In any event, Plaintiff has not alleged any specific commercializing activities of CAS or virus research activities of CAS -- or, indeed, any activities of CAS -- on which it could base its claims. It also has not identified any alleged commercializing activities of WIV with respect to COVID-19. The FSIA's "commercial activity" exception to immunity does not provide for any general "doing business" test, whereby engaging in any kind of commerce would provide a basis for jurisdiction, even if the claims alleged are not based on or substantively connected to the specific commercial activity identified. In fact, a court must identify the "particular conduct" that forms the "basis" or "foundation" for a claim, "those elements . . . that, if proven, would entitle a plaintiff to relief," "the 'gravamen of the complaint,'" *Saudi Arabia v. Nelson*, 507 U.S. at 356-57; *OBB Personenverkehr AG v. Sachs*, 577 U.S. 27, 33-34 (2015). Thus, in *Nelson,* the Supreme Court "found that the [foreign state's] commercial activities, while they 'led to the conduct that eventually injured the Nelsons,' were not the particular conduct upon which their suit was based. The suit was instead based upon the [foreign state's] sovereign acts that actually injured them. The Nelsons' suit therefore did not fit within §1605(a)(2)." *OBB*, 577 U.S. at 34.

Plaintiff's (3), "the operation of traditional and social media platforms for commercial gain," illustrates Plaintiff's strategy. The reference to "commercial gain" seems to be a way of trying to shoehorn Plaintiff's allegations into the commercial activity exception. In fact, Plaintiff's allegation is about the exercise of sovereign powers. Plaintiff refers to media not operated by Defendants and refers to no commercial activity of Defendants, but rather to alleged government regulation in the form of censorship concerning COVID-19, which it claims constituted a "cover-

7

up" causing harm. *See* Complaint, ¶¶ 79-81. Thus, the claim is actually based on an alleged exercise of the government's sovereign power, or alleged abuse of such power, in the form of government censorship. Such allegations do not describe "commercial activity" and cannot serve as the basis for a claim under the "commercial activity" exception: "The [alleged] conduct boils down to abuse of the power of its police by [a foreign government], and however monstrous such abuse undoubtedly may be, a foreign state's exercise of the power of its police has long been understood for purposes of the restrictive theory as peculiarly sovereign in nature." *Saudi Arabia v. Nelson*, 507 U.S. 349, 361 (1993). "Exercise of the powers of police and penal officers is not the sort of action by which private parties can engage in commerce." *Id.*[4]

With regard to allegations concerning "(4) production, purchasing, and import and export of medical equipment, such as personal protective equipment ('PPE'), used in COVID-19 efforts" (Complaint, ¶ 37), jurisdiction does not exist under the FSIA for a number of reasons, and in any event, adjudication is barred by the act of state doctrine. Notably, Plaintiff does not identify what entities are producing, purchasing, importing, or exporting PPE. Plaintiff is not basing its claims on the commercial activities of these enterprises; it is basing them on the sovereign regulatory actions of the Chinese state -- actions of the same type as the U.S. Government has taken.

Much of Plaintiff's "hoarding" claim is based on allegations concerning a Chinese government ban on exports of PPE. (Complaint, ¶ 175.) However, an export ban is a quintessential sovereign act that can only be conducted by a sovereign state and cannot serve as a basis for jurisdiction under the FSIA, and is an act of a state whose legitimacy cannot be attacked. "Every sovereign State is bound to respect the independence of every other sovereign State, and the courts of one country will not sit in judgment on the acts of the government of another done within its

---

[4] The acts on which the lawsuit's claims are based also lack the requisite substantive or causal connection to the "commercial activity" of the operation of traditional and social media platforms.

8

own territory." *Underhill v. Hernandez*, 168 U.S. 250, 252 (1897). The act of state doctrine simply requires reviewing courts to "deem valid" the acts of foreign sovereigns taken within their own jurisdictions. *W.S. Kirkpatrick & Co. v. Environmental Tectonics Corp., Int'l*, 493 U.S. 400, 409 (1990). In every case where the act of state doctrine is applicable, "the relief sought or the defense interposed would have required a court in the United States to declare invalid the official act of a foreign sovereign performed within its own territory." *Id.* at 405. Indeed, the United States itself has imposed an export ban on PPE. *See* Presidential Memorandum on Allocating Certain Scarce or Threatened Health and Medical Resources to Domestic Use (Apr. 3, 2020), available at https://www.whitehouse.gov/presidential-actions/memorandum-allocating-certain-scarce-threatened-health-medical-resources-domestic-use/. China has the same right as the U.S. to encourage and regulate the production, purchasing and selling activities of domestic enterprises to protect the health of its citizens. *See id.* (exercising authority under the Defense Production Act of 1950, as amended (50 U.S.C. § 4501 *et seq.*)). Such regulation is a sovereign activity, and is not itself a commercial activity even though it affects commercial activity.[5]

Moreover, the alleged effect of China's regulatory actions cannot constitute a "direct effect" for purposes of the FSIA. Even in cases that involve undeniably commercial activities, a loss suffered in the United States due to a breach of a commercial obligation occurring outside the United States, even where the U.S. party has a contractual or other legal relationship to the foreign party, does not constitute a "direct effect":

> the mere fact that an American corporation ultimately "suffered a financial loss" in the United States was insufficient "to place the direct effect of the defendants' actions in the United States." . . . To allow such a loss to be the basis for jurisdiction "would give the district courts jurisdiction over virtually any suit arising out of an

---

[5] Similarly, a foreign state's promotion of commercial activity is a "quintessential" government function and therefore not itself commercial activity. *El Omari v. Kreab (USA) Inc.*, 735 F. App'x 30 (2d Cir. 2018); *Best Med. Belgium, Inc. v. Kingdom of Belgium*, 913 F. Supp. 2d 230, 237–38 (E.D. Va. 2012); *Kato v. Ishihara*, 360 F.3d 106, 112 (4th Cir. 2004).

9

>overseas transaction in which an American citizen claims to have suffered a loss from the acts of a foreign state." . . . Such a result, we held, was inconsistent with Congress's intent to limit jurisdiction to those cases in which the act caused a "direct" effect.

*Big Sky Network Canada, Ltd. v. Sichuan Provincial Gov't*, 533 F.3d 1183, 1190 (10th Cir. 2008) (Gorsuch, J.) (internal citations omitted); *Peterson v. Royal Kingdom of Saudi Arabia*, 416 F.3d 83 (D.C. Cir. 2005). Thus, commercial losses and *a fortiori* non-commercial losses ultimately experienced in the United States due to "production, purchasing, and import and export" of PPE outside of the United States do not constitute "direct effects" for purposes of the FSIA.

Also, the allegations do not satisfy the "in connection with" requirement of the "direct effect" provision. Under § 1605(a)(2), the act that caused the direct effect has to be "in connection with" a commercial activity of the foreign state defendant. The claims in this case are based on alleged sovereign regulatory acts of the Chinese state, but the commercial activities (production, purchasing, selling) are not those of the Chinese state Defendants, but instead activities of ***other*** entities. Plaintiff cannot deem these enterprises as if they are all an undifferentiated part of the Chinese state. *See First Nat'l City Bank v. Banco Para el Comercio Exterior de Cuba*, 462 U.S. 611, 626-27 (1983) ("government instrumentalities established as juridical entities distinct and independent from their sovereign should normally be treated as such")*; see also Walters v. Indus. & Commer. Bank of China, Ltd.*, 651 F.3d 280, 298-99 (2d Cir. 2011).[6]

Regarding Plaintiff's allegation that Defendants owe a duty of care to Missourians not to engage in what they have alleged to constitute "hoarding," (Complaint, ¶ 176), no legal relationship exists between the Chinese sovereign Defendants and U.S. persons (or U.S. States) that gives rise to the alleged duty of care any more than the United States owes such a duty of care to the citizens

---

[6] *A fortiori*, the commercial activities of non-state-owned enterprises in China, such as the 3M-owned enterprise manufacturing PPE, cannot be attributed to the Chinese state as a commercial activity of the state.

10

of China or of other countries. Plaintiff has not identified the source of any such duty of care. In fact, no such duty of care applies to Defendants.[7] In any event, the center of gravity of the allegedly wrongful actions of Defendants is China. The proper law to be applied would not be the common law of the state of Missouri as Plaintiff claims, but the law of China.

In addition, the alleged regulation of exports of PPE and alleged directives concerning purchases and sales of PPE were centered in China. The Supreme Court has observed that using "principles of prescriptive comity," it "ordinarily construes ambiguous statutes to avoid unreasonable interference with the sovereign authority of other nations." *F. Hoffman-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155, 165, 164 (2004). The comity concerns associated with extraterritorial application of U.S. antitrust law militate against exercising jurisdiction in this case, especially since Defendants are not state-owned commercial enterprises but the Chinese state itself and some of its organs, and because the case call into question sovereign, regulatory actions -- not commercial actions -- of a type that the U.S. Government itself undertakes, and for which it could be sued if China could be sued. These are not matters to be resolved in local courts of one country or another, particularly where there is an issue of how much one country is at fault, and how much another is for its malfeasance in protecting the health of its citizens. Adjudication of this case in a local court would interfere with the conduct of foreign affairs in relations with and the resolution of disputes with China. When it comes to the actions of a sovereign in sovereign capacities, particular heed should be taken of the Supreme Court's observation long ago that "the courts of one country will not sit in judgment on the acts of the government of another done within its own

---

[7] There are some allusions to sales of allegedly substandard Chinese PPE to the United States. Complaint, ¶ 129, when Defendants actually sold nothing to the United States. Chinese commercial parties that have chosen to introduce goods into the stream of U.S. commerce by making sales of PPE to the United States presumably would be subject to the jurisdiction of U.S. courts if U.S. purchasers were to file claims alleging that such Chinese manufacturers or other vendors shipping products to the United States failed to meet agreed specifications. That would be a different case altogether.

11

territory. Redress of grievances by reason of such acts must be obtained through the means open to be availed of by sovereign powers as between themselves" -- that is, by consultations between the sovereigns, not by litigation in the local courts of one or the other of the sovereigns. *Underhill v. Hernandez*, 168 U.S. 250, 252 (1897). The same "principles of prescriptive comity" should also inform the interpretation of the "direct effect" prong of the FSIA's "commercial activity" exception to immunity. In particular, that provision should not be interpreted to interfere with the sovereign authority of other states when they are exercising their sovereign authority with the same types of acts as the United States itself engages in the exercise of its sovereign authority.

In fact, all of the asserted causes of action are based on alleged acts, or on alleged failure to undertake acts, that are sovereign in nature, not commercial. Essentially the causes of action assert that Defendants did not exercise *sovereign* powers to prevent the rise of or prevent the spread of the coronavirus. Similar claims have been made in U.S. public discourse about the perceived inaction and malfeasance of the U.S. Government, which has resulted in a far greater spread of the virus in the United States than in other countries where the governments undertook better mitigating measures. Obviously, none of these would be actionable under the FSIA's tort exception, because all would be based on alleged acts, or failure to act, occurring in China.

### C. The allegations are not based upon acts that have substantive or causal connection to the alleged commercial activities of Defendants.

Because these causes of action are not actionable under the FSIA's tort exception, Plaintiff attempts to connect these alleged acts to some commercial activity to which Defendants' sovereign acts would have been undertaken in connection with. The statutory term "in connection" as used in the FSIA is a term of art, and courts interpret it narrowly. *Anglo-Iberia Underwriting Mgmt. v. P.T. Jamsostek*, 600 F.3d 171, 178 (2d Cir. 2010). In order to satisfy that requirement, the wrongful act causing the alleged harm must have a "substantive connection" or "causal link" to the asserted

12

commercial activity. *Anglo-Iberia*, 600 F.3d at 178; *Adler v. Fed. Republic of Nigeria*, 107 F.3d 720 (9th Cir. 1997); Restatement Fourth of the Foreign Relations Law of the United States § 454, note 7.  "[T]angential commercial activities to which the 'acts' forming the basis of the claim have only an attenuated connection," *Anglo-Iberia*, 600 F.3d at 179 (quoting *Drexel Burnham Lambert Group Inc. v. Comm. of Receivers for A.W. Galadari*, 12 F.3d 317, 330 (2d Cir. 1993)), cannot provide a basis for FSIA jurisdiction.

Therefore, there is no jurisdiction under the FSIA's commercial activity exception.[8]

### IV. All named defendants are entitled to immunity.

Plaintiff recognizes that the People's Republic of China and the other Defendants are presumptively entitled to immunity under the FSIA, with the exception of the Communist Party of China ("CPC"), CAS, and WIV, which in fact do fall within the coverage of the FSIA.

With regard to CPC, Plaintiff has cited *Yaodi Hu v. Communist Party of China*, 2012 WL 7160373, at *3 (W.D. Mich. Nov. 20, 2012) as support for its position. (Complaint, ¶ 19.) However, the issue of CPC's status under the FSIA was not litigated in that case.  The magistrate judge did state that CPC was not entitled to FSIA immunity, but provided no analysis in this regard, possibly because it was unnecessary and therefore *dictum*, given that there was an independent basis for dismissal (failure to state a claim under the Alien Tort Statute).  By contrast,  a federal court held that China Central Television is an instrumentality of the People's Republic of China because it is the "mouthpiece of the Chinese Communist Party." *Chen v. China Cent. TV*, 2007 U.S. Dist. LEXIS 58503 (S.D.N.Y., Aug. 9, 2007). *See also Saludes v. Republica de Cuba*, 577 F.

---

[8] "[T]he 'gravamen' of the complaint is that the Chinese government, acting outside the United States, breached its international obligations, with disastrous consequences for the rest of the world.  The FSIA does not provide jurisdiction over these claims.'" Professor Chimène Keitner, *Missouri's Lawsuit Doesn't Abrogate China's Sovereign Immunity*, Just Security (Apr. 22, 2020), available at https://www.justsecurity.org/69817/missouris-lawsuit-doesnt-abrogate-chinas-sovereign-immunity/.

Supp. 2d 1243 (S.D. Fla. 2008) (Communist Party of Cuba is covered by the FSIA). In fact, the Constitution of the People's Republic of China provides that "[t]he socialist system is the basic system of the People's Republic of China.  The leadership of the Communist Party of China is the defining feature of socialism with Chinese characteristics." XIANFA art. 1, § 2 (1982) (China).  "In China, the CCP [Chinese Communist Party] arguably *is* the state."  Keitner, *Missouri's Lawsuit Doesn't Abrogate China's Sovereign Immunity*.

Moreover, Plaintiff effectively alleges that CPC is a part of the Chinese state. *See* Complaint, ¶ 17 ("Defendant People's Republic of China ('PRC' or 'China') is a communist nation in Asia"); *id.* ¶ 18 (CPC "is the sole governing party within China"); *id.* ¶ 20 ("the Communist Party exercised direction and control over the actions of all other Defendants").  Plaintiff cannot both maintain that CPC exercises state power and deny that it is part of the state.  An organ alleged to be exercising such paramount state power is necessarily a part of the state, and therefore qualifies for sovereign immunity under the FSIA. *See Chen v. China Cent. TV.* [9]

Plaintiff also alleges that WIV and CAS are not covered by the FSIA. In fact, both of these entities are the type of Chinese legal person known as a "public institution," directly owned by the Chinese state (as evidenced by their public institution registration certificates, attached with translations, see **Exhibit A**). As a result, they constitute "agencies or instrumentalities of a foreign state" under the FSIA. Consequently, they must be served in accordance with the FSIA.[10] They also are immune unless the claims against them are based on an activity made non-immune by the FSIA.  As explained above, WIV was no more studying coronaviruses "as part of a commercial

---

[9] The definitions in the FSIA are "ill-suited to concepts which exist in socialist states."  *Yessenin-Volpin v. Novosti Press Agency*, 443 F. Supp. 849 (S.D.N.Y. 1978) (holding the Soviet's Union's Novosti Press Agency to be an agency or instrumentality of a foreign state under the FSIA, and immune from the claims in question as a consequence).

[10] China considers that its reservation in the Hague Service Convention against service by mail covers service by electronic mail, i.e., e-mail.

14

activity" than the U.S. NIAID has been. Plaintiff's conclusory "part of a commercial activity" allegation is an attempt to convert scientific research activities of government institutes around the world into commercial activities. Regarding CAS, Plaintiff does not identify any activity upon which it could base a claim against the CAS. Instead, it in effect incorrectly maintains that it can sue CAS on the basis that it sometimes commercializes research, even if such commercializing activity has nothing to do with the basis of Plaintiff's claim.

Consequently, all Defendants are covered by the FSIA.

## CONCLUSION

In conclusion, Defendants are immune under the FSIA and this Court lacks subject-matter jurisdiction. Respectfully, the Society requests the Court *sua sponte* dismiss this matter.

Date:   September 15, 2021

Respectfully submitted,

**THE CHINA SOCIETY OF PRIVATE INTERNATIONAL LAW**
c/o International Law Institute of Wuhan University
Wuchang District
Wuhan, China 430072


**BROWN & JAMES, P.C.**

*/s/ Jackie M. Kinder*
Jackie M. Kinder, #52810MO
800 Market Street, Suite 1100
St. Louis, Missouri 63101-2501
314-421-3400 – Phone
314-421-3128 – Fax
jkinder@bjpc.com
*Local Counsel for The China Society of Private International Law*

26449421.1