IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| THE STATE OF MISSOURI, <br> ex rel. ERIC S. SCHMITT, in his official <br> capacity as Missouri Attorney General, <br><br> Plaintiff, <br><br> v. <br><br> THE PEOPLE'S REPUBLIC OF CHINA, <br> THE COMMUNIST PARTY OF CHINA, <br> NATIONAL HEALTH COMMISSION <br> OF THE PEOPLE'S REPUBLIC OF <br> CHINA, MINISTRY OF EMERGENCY <br> MANAGEMENT OF THE PEOPLE'S <br> REPUBLIC OF CHINA, MINISTER OF <br> CIVIL AFFAIRS OF THE PEOPLE'S <br> REPUBLIC OF CHINA, PEOPLE'S <br> GOVERNMENT OF HUBEI <br> PROVINCE, PEOPLE'S GOVERNMENT <br> OF WUHAN CITY, WUHAN INSTITUTE <br> OF VIROLOGY, AND CHINESE <br> ACADEMY OF SCIENCES, <br><br> Defendants. | Case No.: 1:20-cv-00099-SNLJ |

**FINAL BRIEF OF *AMICUS CURIAE* LAWYERS FOR UPHOLDING INTERNATIONAL LAW IN OPPOSITION TO PLAINTIFF THE STATE OF MISSOURI'S COMPLAINT AGAINST DEFENDANTS THE PEOPLE'S REPUBLIC OF CHINA, *ET AL.***

COMES NOW the Lawyers for Upholding International Law (hereinafter "Movants"), by and through their local counsel of record, and for their Final Brief of *Amicus Curiae* in Opposition to Plaintiff the State of Missouri's Complaint Against Defendants The People's Republic of China, *et al.*, and states as follows:

**INTRODUCTION**

Movants file this brief per the deadline set by this Court in its most recent Order. This final brief will provide answers to the three questions raised by this Court in its Memorandum and Order dated January 6th, 2022: (I) the proper classification of the Communist Party, the

Chinese Academy of Sciences (CAS), and the Wuhan Institute of Virology (WIV); (II) service on the above-referenced defendants; and (III) the lack of FSIA exceptions to foreign sovereign immunity. Based upon these arguments, Movants respectfully request that this Court consider dismissing Plaintiff's Complaint *sua sponte*.

## ARGUMENT

### I. THE PROPER CLASSIFICATION OF THE COMMUNIST PARTY, CAS, AND WIV

#### A. *The Classification of the Communist Party*

As was noted in paragraph III C. of the supplemental brief submitted by Movants, the organisation of the Chinese state and the position of the Communist Party in it are matters for Chinese constitutional law to determine. This approach finds support in international law. Thus in *Prosecutor v. Blaskic*, the International Criminal Tribunal For The Former Yugoslavia (ICTY) considered the following:

> [C]ustomary international law protects the internal organization of each sovereign State: it leaves it to each sovereign State to determine its internal structure and in particular to designate the individuals acting as State agents or organs. Each sovereign State has the right to issue instructions to its organs, both those operating at the internal level and those operating in the field of international relations, and also to provide for sanctions or other remedies in case of non-compliance with those instructions. The corollary of this exclusive power is that each State is entitled to claim that acts or transactions performed by one of its organs in its official capacity be attributed to the State, so that the individual organ may not be held accountable for those acts or transactions. The general rule under discussion is well established in international law and is based on the sovereign equality of States.[1]

Therefore, since Chinese constitutional law should be deemed determinative in this case, Rule 44.1 of the Federal Rules of Civil Procedure applies. Rule 44.1 entrusts the Court with the responsibility to determine foreign law. As the Supreme Court has acknowledged, this provision grants courts substantial discretion to consider and give weight to whatever sources

---

[1] ICTY 3 March 2020 IT-95-14-A, § 41-2

of law best address the issue.[2] It provides courts with wide latitude to research foreign law and gather material from any relevant source. Courts may reach their own decisions *sua sponte* on the basis of their independent examination of foreign legal authorities.[3]

Consequently, it is for the Court to decide whether or not to invite experts to testify on this foreign law issue. Since Defendants hitherto have not filed an entry of appearance, it seems unlikely that Chinese government experts will come forward to assist the Court in this matter. However, in the case at bar no need to engage such foreign experts exists. In the supplemental brief, Movants have already put the relevant Chinese constitutional law provision before the Court. The English text of Article 1, section 2, of the Chinese Constitution, which has been published on the website of the National People's Congress,[4] China's Parliament, and should therefore be considered authenticated, reads as follows: "Leadership by the Communist Party of China is the defining feature of Socialism with Chinese characteristics".[5]

According to established case law,[6] for the purposes of Rule 44.1 a statutory provision that is unambiguously relevant to the case at hand on its own serves as sufficient information for a court. Therefore, in the case at bar the Court can limit himself to applying Article 1(2) of the Chinese Constitution, which reaffirms the leadership role of the Communist Party in China's constitutional system. Consequently, as the supreme power within China's constitutional make-up, the Communist Party as a political subdivision of the State falls within the ambit of the FSIA.

---

[2] *Animal Science Products, Inc., et al. v. Hebei Welcome Pharmaceutical Co., Ltd., et al.*, 138 S.Ct. 1865, 1873 (2018).

[3] *Curtis v. Beatrice Foods, Co.*, 481 F.Supp. 1275, 1285 (S.D.N.Y. 1980); *Haywin Textile Products, Inc., v. International Finance Inv.*, 137 F.Supp.2d 431, 434 (S.D.N.Y. 2001).

[4] Constitution of the People's Republic of China, Posted: Nov. 20, 2019, http://www.npc.gov.cn/englishnpc/constitution2019/201911/1f65146fb6104dd3a2793875d19b5b29.shtml (last visited February 4, 2022).

[5] *See id*.

[6] *Kalmich v. Bruno*, 404 F.Supp. 57, 61 (N.D. Ill. 1975) (reversed on other grounds by *Kalmich v. Bruno*, 553 F.2d 549 (7th Cir. 1977); *Argyll Shipping Co. v. Hanover Ins. Co.*, 297 F.Supp. 125, 128 (S.D.N.Y. 1968).

### B.     *The Classification of CAS and WIV*

The Chinese Academy of Sciences (CAS) and the Wuhan Institute of Virology (WIV) are part of the Chinese state structure in two ways.

First, both organizations are led by Communist Party committees, presided over by the Party Secretary. The relevant part of Article 10 (5) of the Constitution of the Communist Party of China reads as follows: "All major issues shall be decided upon by the Party committees after discussion in accordance with the principle of collective leadership, democratic centralism, individual consultations and decision by meetings."[7] Therefore, through the Party committees, the Communist Party, the supreme power within the Chinese state organization, exercises control over both the CAS and WIV. For that reason, they are to be considered political subdivisions of the Chinese state and they fall within the ambit of FSIA.

Second, according to Article 85 of the Constitution of the People's Republic of China, the State Council is the highest state administrative organ. According to its official website the State Council is the parent institution of the CAS.[8] This means that the State Council runs the CAS on a day-to-day basis, including its personnel and finances.

Consequently, the CAS is a political subdivision of the Chinese state. The CAS has several local branches, one of which is the Wuhan branch. The WIV is part of the Wuhan branch of CAS, and therefore is part of CAS. As a consequence, the WIV is an agency of the Chinese state. Therefore, for this reason as well, the CAS and WIV fall within the ambit of the FSIA.

---

[7] The State Council The People's Republic of China, Constitution of the Communist Party of China, Updated Sept. 15, 2017,
http://english.www.gov.cn/news/top_news/2017/09/27/content_281475888488000.htm (last visited Feb. 4, 2022).

[8] Organizations of the State Council, http://www.gov.cn/guowuyuan/zuzhi.htm (last visited Feb. 4, 2022).

## II.    SERVICE ON THE COMMUNIST PARTY, CAS, AND WIV

In view of the fact that the Communist Party, CAS and WIV fall under FSIA, they should be served in accordance with 28 U.S.C. § 1608. Email service does not meet the requirements of this provision.

## III.   THE LACK OF FSIA EXCEPTIONS TO FOREIGN SOVEREIGN IMMUNITY

In their original brief, Movants have already noted that if one were to accept that the origins of the pandemic lie in China, on which no scientific consensus exists, none of the exceptions invoked by the Plaintiff apply in the present case.

The commercial activities exception of 28 U.S.C. § 1605(a)(2) does not apply since Plaintiff has failed to identify which specific activities performed by which entity or entities should be characterised as "commercial activities" within the meaning of this provision. Instead, Plaintiff has limited himself to making sweeping and generalized statements and, therefore, the complaint does not meet the legal requirements of § 1605(a)(2). Since Plaintiff has failed to identify concrete activities, it cannot be established whether these activities meet the test developed by the Supreme Court in *Verlinden B.V. v. Central Bank of Nigeria*,[9] according to which a foreign state engages in commercial activities when it exercises powers that can also be exercised by private citizens.

Plaintiff has also invoked the third clause of § 1605(a)(2), which confers jurisdiction over actions that are "based upon ... an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere that causes a direct effect in the United States". However, Plaintiff has failed to demonstrate which direct effects the activities described in general terms may have had in the United States. In *Republic of Argentina v. Weltover*, the Supreme Court stated that in order to be "direct", the effect must follow as an

---

[9] 103 S.Ct. 1962 (1983).

*immediate consequence* of the foreign state's activity.[10] The State of Missouri has not shown that the activities it listed did have direct effects in the United States that could be characterized as the immediate consequences of activities performed by China or its instrumentalities.

The tortious conduct exception of § 1605(a)(5) does not apply since Plaintiff has failed to identify any damage or loss of property that resulted from the acts that were listed in the Complaint, let alone demonstrated that those occurred in the United States, to which § 1605(a)(5) is limited, according to the Supreme Court in *Argentine Republic v. Amerada Hess Shipping Corp, et al.*[11]

Moreover, since all activities complained of took place within Chinese territory, they are covered by the Act of State doctrine, according to which states enjoy immunity for acts performed within their territory. The importance of this doctrine was recognized by the Supreme Court in *Underhill v. Hernandez*, where Chief Justice Fuller for a unanimous Court stated that "the courts of one country will not sit in judgment on the acts of the government of another, done within its own territory."[12] Therefore, the Act of State doctrine provides China with immunity for all "commercial" acts referred to by Missouri.

## CONCLUSION

Based on the defendants' status as arms of the state, the lack of proper service on defendants, and the lack of FSIA exceptions to foreign sovereign immunity, Movants respectfully request that this Court consider dismissing Plaintiff's Complaint *sua sponte* and for such other orders as this Court may find just and equitable

Dated:         February 14, 2022

---

[10] 112 S.Ct. 2160, 2168 (1992).
[11] 109 S.Ct. 683 (1989).
[12] 18 S.Ct. 83, 84 (1897).

Respectfully submitted,

*/s/ Geert-Jan Alexander Knoops*
Dr. Geert-Jan Alexander Knoops, A09070
Knoops' Advocaten International Lawyers
Concertgebouwplein 25
1071 LM Amsterdam
P: +31 (0)20-470-5151
F: +31 (0)20-675-0946
office@knoopsadvocaten.nl

*/s/ Tom Zwart*
Dr. Tom Zwart
Newtonlaan 201, 3584 BH
Utrecht, The Netherlands
P: 316 2705 2580
t.zwart@uu.nl

***Lawyers for Upholding International Law***

THE SIMON LAW FIRM, P.C.

/s/ *Amy Collignon Gunn*
Amy Collignon Gunn #45016MO
Elizabeth S. Lenivy #68469MO
800 Market Street, Ste. 1700
St. Louis, Missouri 63101
P: (314) 241-2929
F: (314) 241-2029
agunn@simonlawpc.com
elenivy@simonlawpc.com

***Local Counsel for Lawyers for Upholding International Law***

7