IN THE UNTIED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| THE STATE OF MISSOURI,<br>ex rel. ANDREW T. BAILEY, in his official<br>capacity as Missouri Attorney General,<br><br>　　　Plaintiff,<br><br>v.<br><br>THE PEOPLE'S REPUBLIC OF CHINA,<br>THE COMMUNIST PARTY OF CHINA,<br>NATIONAL HEALTH COMMISSION<br>OF THE PEOPLE'S REPUBLIC OF<br>CHINA, MINISTRY OF EMERGENCY<br>MANAGEMENT OF THE PEOPLE'S<br>REPUBLIC OF CHINA, MINISTRY OF<br>CIVIL AFFAIRS OF THE PEOPLE'S<br>REPUBLIC OF CHINA, PEOPLE'S<br>GOVERNMENT OF HUBEI PROVINCE,<br>PEOPLE'S GOVERNMENT OF WUHAN<br>CITY, WUHAN INSTITUTE OF VIROLOGY,<br>and CHINESE ACADEMY OF SCIENCES,<br><br>　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | <br><br><br><br><br>Case No. 1:20-cv-00099-SNLJ |

**PLAINTIFF STATE OF MISSOURI ex rel. ANDREW BAILEY'S MEMORANDUM IN
RESPONSE TO THE COURT'S APRIL 10, 2024 MEMORANDUM AND ORDER**

Plaintiff State of Missouri ex rel. Andrew Bailey ("Missouri") submits this memorandum

in response to the Court's April 10, 2024 Memorandum and Order (ECF 74). In its April 2024

Order, the Court identified three of the nonresponding Defendants in this lawsuit—the Communist

Party of China ("CPC"), the Wuhan Institute of Virology ("WIV"), and the Chinese Academy of

Sciences ("CAS")—for which this Court suggested "are foreign states" and therefore "it appears

that e-mail service was ineffective." *Id*. at 2.

As to the CPC, the Eighth Circuit described it both as a "foreign state" and as merely an

"alter ego" of the first named defendant, the People's Republic of China. As such, Missouri's

service on the PRC through diplomatic channels—previously approved by this Court—is sufficient to extend this Court's jurisdiction to any "alter ego" of PRC, including CPC.

WIV and CAS, meanwhile, were held by the Eighth Circuit not to be "foreign states" but rather "agencies or instrumentalities of a foreign state." This important distinction under the Foreign Sovereign Immunity Act's (FSIA) rules allow for service of process on so-characterized defendants through different means granted by Court order—the approach Missouri, out of an abundance of caution, took in serving WIV and CAS in 2021.

As such, all Defendants in this action have been properly served. Missouri addresses each Defendant more specifically in turn.

**1.      The Chinese Communist Party.**

Proper service on the CPC has already been effectuated through Missouri's service on the PRC, CPC's "alter ego" that, according to the Eighth Circuit, wields the exact same "supreme power" over the Chinese State as the PRC. The rules of service make clear that this Court's jurisdiction over a defendant (here, the PRC) extends the Court's jurisdiction to include every alter ego of the Defendant (including the CPC).

As this Court is aware, Missouri previously argued to this Court and the Eighth Circuit that the CPC was an independent entity separate from the Chinese state. *Missouri ex rel. Bailey v. People's Republic of China*, 90 F.4th 930, 935–36 (8th Cir. 2024). The Eighth Circuit rejected this argument, instead holding that the CPC "is in substance the same 'body politic that governs [China]'" as the PRC. *Id*. at 935 (modifications in original). Consequently, the CPC acts as "an alter ego of a foreign state"—the PRC—in governing China. *Id*. (quoting *Kirschenbaum v. Assa Corp*., 934 F.3d 191, 196 (2d Cir. 2019)). The holding that CPC is simply an "alter ego" of the PRC is straightforward: there can only be a single "supreme public power within a sovereign

2

political entity," regardless of whether the single "supreme public power" purports in a given moment to hold itself out as the PRC or CPC. *Id.* (quoting *The American Heritage Dictionary* 1706 (5th ed. 2016)). And the Eighth Circuit has held that the PRC and CPC *each* act as the authority that "governs [the] territory" or is the "supreme public power" of China. *Id.*

CPC's status as an "alter ego" of PRC means that Missouri's service of process on PRC (which Missouri previously properly served through diplomatic channels) effectuates service on the PRC alter ego of Defendant CPC. It has been well established in other similar contexts that the alter-ego status of a person or entity extends the Court's jurisdiction over the alter ego as well. *See, e.g. Lakota Girl Scout Council, Inc. v. Havey Fund-Raising Mgmt., Inc.*, 519 F.2d 634, 638 (8th Cir. 1975) ("[W]here a corporation is the alter ego of the stockholders so as to justify disregard of the corporate entity[,] jurisdiction over the corporation will support jurisdiction over the stockholders."); *Epps v. Stewart Information Services Corp.*, 327 F.3d 642, 649 (8th Cir. 2003) (noting that a court's jurisdiction extends from a resident subsidiary corporate defendant to a nonresidential corporate defendant "[i]f the resident subsidiary corporation is the alter ego of the nonresident corporate defendant.").

The same is true with respect to service. Courts regularly hold that serving one organization is sufficient to serve that organization's alter ego. *See e.g.*, *Lopes v. JetsetDC, LLC*, 994 F. Supp. 2d 135, 144 (D.D.C. 2014) ("By personally delivering a copy of the summons and complaint to an owner, operator, and alter ego of the defendant LLC, there is no doubt that the defendant company was adequately informed of the commencement of this action, and that service of process upon him comports with [federal rules]." (alterations accepted, quotations omitted)); *Carney v. Horion Investments Ltd.*, 107 F. Supp. 3d 216, 226 (D. Conn. 2015) (refusing to "dismiss the complaint

against the companies on the basis of inadequate service of process" because of a showing that the defendants were "alter egos" of a defendant who was properly served).

The same is true here. The Eighth Circuit's designation of CPC as an "alter ego" of the PRC means that additional service to establish separate jurisdiction over CPC is unnecessary and would only serve to delay this action further.

There can only be one "supreme public power" controlling China. Because *both* the CPC and the PRC are the "supreme public power," they are alter egos, and Missouri's proper service on the PRC meant that this Court's jurisdiction extends to all PRC alter egos including Defendant CPC.

**2.      The Wuhan Institute of Virology and the Chinese Academy of Sciences.**

Although WIV and CAS are not similarly alter egos of the PRC/CPC, Missouri's prior service on each of them following a court order complied not only with the requirements of the Federal Rules of Civil Procedure, but also the requirements for service on agencies or instrumentalities of a foreign state under the FSIA. As such, WIV and CAS have already been properly served as Defendants even after the Eighth Circuit rejected Missouri's argument that WIV and CAS are non-governmental entities.

As with the CPC, Missouri previously took the position that both the WIV and CAS were nongovernmental entities that did not fall within the bounds of the FSIA. The Eighth Circuit disagreed—although neither WIV or CAS rose to the level of an "alter ego of a foreign state," the Eighth Circuit held that both WIV and CAS were "agenc[ies] and instrumentalit[ies]" of a foreign state as defined under 28 U.S.C. § 1603(a). *Missouri ex rel. Bailey*, 90 F.4th at 935. Critically, as the Eighth Circuit observed, an "agency or instrumentality" of a foreign state is a distinct category of entities defined under FSIA from "political subdivisions" of a foreign state. *Id*; *see also* 28

4

U.S.C. § 1603(a)-(b). This distinction is important,[1] because "agencies or instrumentalities," unlike "political subdivisions," "are, by definition, 'separate legal person[s]' from the government itself." *Missouri ex rel. Bailey*, 90 F.4th at 935.

This distinction is also important for service of process under FSIA. If an entity is a "political subdivision," of a foreign state, 28 U.S.C. § 1608(a) ultimately requires (if service cannot occur through the methods listed in 28 U.S.C. § 1608(a)(1)–(3)) that service be made "through diplomatic channels to the foreign state." 28 U.S.C. § 1608(a)(4). This is, of course, how Missouri already served all of the political subdivisions named as Defendants in this case. *See* ECF 36–41.

If a defendant is merely an "agency or instrumentality of a foreign state," different rules of service apply. 28 U.S.C. § 1608(b). Specifically, if service cannot occur through "delivery of a copy of the summons and complaint" under 28 U.S.C. § 1608(b)(1) and (b)(2), service may occur "as directed by order of the court consistent with the law of the place where service is to be made." 28 U.S.C. § 1608(b)(3).

This language is nearly identical to Federal Rule of Civil Procedure 4(f)(3), which Missouri previously invoked in its request to serve WIV and CAS by email. *See* Pl.'s Mot. to Authorize Alternative Method of Service Under 28 U.S.C. § 1608 and Federal Rule of Civil Procedure 4, ECF 19. The Court previously issued an order granting Missouri's request for leave to serve WIV and CAS "by emailing them copies of the translated service packets—which include summons, Complaint, and civil cover sheet—to publicly available email addresses for those defendants." Memorandum and Order, ECF 22 at 3; *see also id.* at 5 ("[T]his Court can be sure the requested

---

[1] In the Court's April 2024 Order, it refers to WIV and CAS as "foreign states." April 2024 Order at 2. Missouri respectfully submits that this classification of both WIV and CAS as "foreign states" (rather than "agencies or instrumentalities of a foreign state") is incorrect in light of the text of FSIA and the Eighth Circuit's previous opinion in this case for the reasons in this memorandum.

email service is reasonably calculated to reach the subject defendants and provide actual notice under the Due Process Clause."). Missouri thereafter "served . . . CAS and WIV by this method of email service." Pl.'s Mot. for Entry of Default Against Defendants Communist Party of China, Chinese Academy of Sciences, and Wuhan Institute of Virology, ECF 26 at 2. In the same motion, Missouri noted it was going above and beyond, taking a belt-and-suspenders approach to service so that no problems would arise in the future:

> [C]onsistent with Missouri's belt-and-suspenders approach to service throughout this case, this method of service also satisfied 28 U.S.C. § 1608(b), which governs the service of agencies or instrumentalities of foreign states. In particular, where (as here) no special arrangement for service exists and service under the Hague Convention has proven to be futile, see § 1608(b)(1)-(2), § 1608(b)(3)(C) authorizes service on agencies and instrumentalities of foreign states "as directed by order of the court consistent with the law of the place where service is to be made." 28 U.S.C. § 1608(b)(3)(C). Here, Missouri effected service by email on CPC, CAS, and WIV as directed by this Court's order, ECF No. 22, and such service by email "is consistent with the law of the place where service is to be made," as the Court previously found.

*Id*. at 2–3; *see also id*. at 3 n.1 (citing New England Merchants Nat. Bank v. Iran Power Generation & Transmission Co., 495 F. Supp. 73, 78–79 (S.D.N.Y. 1980); LAW LIBRARY OF CONGR., SERVICE OF PROCESS 38–39 (2020) *at* https://tile.loc.gov/storage-services/service/ll/llglrd/2020720028/2020720028.pdf (noting that China's Civil Procedure Law generally permits the service of legal documents by email)); Pl.'s Supp. Br. Regarding Service and FSIA in Resp. to the Court's Order, ECF 54 at 35–37 (explaining how "CAS and WIV were properly served even if they are 'agencies or instrumentalities' of the PRC").

As the Fifth Circuit has held, "substantial compliance with the provisions of service upon an agency or instrumentality of a foreign state—that is, service that gives actual notice of the suit and the consequences thereof to the proper individuals within the agency or instrumentality—is sufficient to effectuate service under section 1608(b)." *Magness v. Russian Fed'n*, 247 F.3d 609, 616 (5th Cir. 2001). The Fifth Circuit's approach is, furthermore, "in accord with the Third, Sixth,

Ninth, Eleventh, and D.C. Circuits, all of which have determined that substantial compliance with section 1608(b) is sufficient so long as the defendants have actual notice of the suit." *Id*. For the reasons Missouri detailed at length in its February 14, 2022 Supplemental Brief on Service and FSIA immunity (along with its other related briefing on service to date), Missouri's efforts have certainly provided "actual notice of the suit and the consequences thereof to the proper individuals within the agency or instrumentality." ECF 54. As such, Missouri's 2021 service on WIV and CAS was proper and this case should proceed against both Defendants.[2]

\* \* \*

The Eighth Circuit's decision in this case, although clarifying the nature of each party under the FSIA, did not render service ineffective on any defendant. CPC, as merely an "alter ego" of the PRC, was made subject to this Court's jurisdiction when Missouri perfected service on the PRC. WIV and CAS, meanwhile, were properly served in 2021 in a manner that (intentionally) complied with both FRCP 4(f)(3) and the procedure for service on agencies or instrumentalities of a foreign state under FSIA. As all Defendants were properly served over two years ago and have to date refused to appear or otherwise answer this lawsuit, this Court should enter a scheduling order allowing Missouri to begin discovery and to set a trial date at which Missouri may establish its claim or right to relief by evidence satisfactory to the Court. 28 U.S.C. § 1608(e).

---

[2] To the extent that this Court does not believe its May 11, 2021 Order constituted an "order of the Court" sufficient to trigger service under 28 U.S.C. § 1608(b)(3)(C), Missouri respectfully requests that the Court re-issue an order similar to its May 11, 2021 order allowing service on WIV and CAS pursuant to 28 U.S.C. § 1608(b)(3)(C).

Date: April 30, 2024                    Respectfully submitted,


                                        ANDREW T. BAILEY
                                        Attorney General

                                        */s/ Samuel C. Freedlund*
                                        Joshua M. Divine, 69875MO
                                        *Solicitor General*
                                        Samuel C. Freedlund, 73707MO
                                        *Deputy Solicitor General*
                                        Office of the Attorney General
                                        815 Olive St.
                                        Suite 200
                                        St. Louis, Missouri 63101
                                        Phone: (314) 340-4869
                                        Fax (573) 751-1774
                                        Samuel.Freedlund@ago.mo.gov

                                        *Attorneys for Plaintiff.*


## CERTIFICATE OF SERVICE

I hereby certify that on April 30, 2024, a true and accurate copy of the foregoing Entry of Appearance was electronically filed by using the Court's CM/ECF system to be served on all counsel of record entered in the case.

                                        /s/ Samuel C. Freedlund

8