**IN THE UNITED STATES DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

| | | |
|---|---|---|
| THE STATE OF MISSOURI,<br>ex rel. ANDREW T. BAILEY, in his official<br>capacity as Missouri Attorney General,<br><br>    Plaintiff,<br><br>v.<br><br>THE PEOPLE'S REPUBLIC OF CHINA,<br>THE COMMUNIST PARTY OF CHINA,<br>NATIONAL HEALTH COMMISSION<br>OF THE PEOPLE'S REPUBLIC OF<br>CHINA, MINISTRY OF EMERGENCY<br>MANAGEMENT OF THE PEOPLE'S<br>REPUBLIC OF CHINA, MINISTRY OF<br>CIVIL AFFAIRS OF THE PEOPLE'S<br>REPUBLIC OF CHINA, PEOPLE'S<br>GOVERNMENT OF HUBEI<br>PROVINCE, PEOPLE'S GOVERNMENT<br>OF WUHAN CITY, WUHAN INSTITUTE<br>OF VIROLOGY, and THECHINESE<br>ACADEMY OF SCIENCES,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 1:20-cv-00099-SNLJ |

## PLAINTIFF'S SECOND SUPPLEMENTAL BRIEFING IN SUPPORT OF HIS FOREIGN SOVEREIGN IMMUNITY ACT DEFAULT HEARING BRIEFING

    Plaintiff the State of Missouri, ex rel. Andrew Bailey, in his official capacity as Missouri Attorney General ("Plaintiff"), pursuant to this Court's January 27, 2025 order and docket entry, respectfully submits the following second supplemental briefing in support of his Foreign Sovereign Immunity Act Default Hearing Briefing to explain why the statutory causes of action can be brought against foreign governments.

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................... II

TABLE OF AUTHORITIES .................................................................. III

INTRODUCTION ..................................................................................... 1

ARGUMENT .............................................................................................. 2

    I.   FOREIGN GOVERNMENTS ARE INCLUDED IN THE SHERMAN ACT'S STATUTORY DEFINITION OF "PERSON." ........................................................... 2

        A.   Several defendants are entities organized under "the laws of any foreign country." ............................................................................................. 4

        B.   Controlling Supreme Court precedent makes clear that the term "person," as it is used in 15 U.S.C. § 2, includes foreign countries. ........................... 5

        C.   Ordinary methods of statutory interpretation reinforce the Supreme Court's conclusion that "person" includes foreign nations. .......................... 9

        D.   Other courts have reviewed and upheld antitrust actions brought against foreign states or in part based on foreign legislative actions. ..................... 13

    II.   MISSOURI'S STATE-LAW PROHIBITION ON ATTEMPTS TO MONOPOLIZE TRADE OR COMMERCE, PROVIDES MISSOURI A SEPARATE STATUTORY CLAIM THAT DOES NOT DEPEND ON THE DEFINITION OF "PERSON." ...................................... 16

CONCLUSION ......................................................................................... 20

CERTIFICATE OF SERVICE ............................................................... 21

# TABLE OF AUTHORITIES

**Cases**                                                                    Page(s)

*Alfred Dunhill of London, Inc. v. Republic of Cuba,*
  425 U.S. 682 (1976) ........................................................................................ 14

*BP Chemicals Ltd. v. Jiangsu Sopo Corp.,*
  285 F.3d 677 (8th Cir. 2002) ......................................................................... 18

*C. Bennett Bldg. Supplies, Inc. v. Jenn Air Corp.,*
  759 S.W.2d 883 (Mo. App. E.D. 1988) ....................................................... 19

*Celestin v. Caribbean Air Mail, Inc.,*
  30 F.4th 133 (2d. Cir. 2022) ................................................................... 13, 14

*City of Lafayette, La. v. Louisiana Power & Light Co.,*
  435 U.S. 389 (1978) ................................................................................. passim

*Christopher v. SmithKline Beecham Corp.,*
  567 U.S. 142 (2012) ........................................................................................ 11

*Continental Ore Co. v. Union Carbide & Carbon Corp.,*
  370 U.S. 690 (1962) ........................................................................................ 15

*Denbow v. State,*
  309 S.W.3d 831 (Mo. App. W.D. 2010) ..................................................... 18

*HollyFrontier Cheyenne Refining, LLC v. Renewable Fuels Assn.,*
  594 U.S. 382 (2021) ........................................................................................ 10

*IBP, Inc. v. Alvarez,*
  546 U.S. 21 (2005) .......................................................................................... 10

*Maalouf v. Islamic Republic of Iran,*
  923 F.3d 1095 (D.C. Cir. 2019) .................................................................... 14

*Missouri ex rel. Bailey v. People's Republic of China,*
  90 F.4th 930 (2024) ................................................................................ 4, 5, 14

*Petersen Energía Inversora S.A.U. v. Argentine Republic and YPF S.A.,*
  895 F.3d 194 (2d Cir. 2018) .......................................................................... 14

*Pfizer, Inc. v. Government of India,*
  434 U.S. 308 (1978) ................................................................................. passim

*Selleck v. Keith M. Evans Insurance, Inc.*,
   535 S.W.3d 779 (Mo. App. E.D. 2017) .................................................................... 17

*State of Georgia v. Evans*,
   316 U.S. 159 (1942) ...................................................................................................... 6

*U.S. Postal Service v. Flamingo Industries (USA) Ltd.*,
   540 U.S. 736 (2004) ................................................................................... 8, 9, 11, 15

*United States v. Cooper Corp.*,
   312 U.S. 600 (1941) ...................................................................................................... 8

*United States v. Sisal Sales Corp.*,
   274 U.S. 268 (1927) .................................................................................................... 14

*United States v. Topco Associates*,
   405 U.S. 596 (1972) .................................................................................................... 12

*W.S. Kirkpatrick & Co.*,
   493 U.S. 400 (1990) ......................................................................................... 13, 14, 15

**Statutes**

15 U.S.C. § 2 ...................................................................... ii, 1, 3, 5, 15, 16, 18

15 U.S.C. § 7 ........................................................... 4, 5, 6, 7, 9, 10, 11, 15

15 U.S.C. § 12 ............................................................................................ 9, 10

15 U.S.C. § 12(a) ............................................................................................. 4

15 U.S.C. § 15 ............................................................................................ 9, 10

15 U.S.C. § 15(a) ......................................................................................... 3, 9

15 U.S.C. § 15(b) .............................................................................................. 9

15 U.S.C. § 15(b)(1) ......................................................................................... 9

15 U.S.C. § 15c(a) ............................................................................................. 3

28 U.S.C. § 1603 ............................................................................................... 5

Mo. Rev. Stat. § 416.031 ..................................................................... 2, 16, 17

Mo. Rev. Stat. § 416.031(2) ..................................................................... 1, 2

## INTRODUCTION

On January 27, 2025, the Court held a Foreign Sovereign Immunity Act ("FSIA") Default Hearing in this case. *See* ECF 89 (docket entry). At the hearing, Defendants failed to appear, and the Court found them in default. *Id*. Additionally, the Court requested supplemental briefing on the legal question of whether each Defendant was included in the statutory definition of "person," as the term is used in 15 U.S.C. § 2. Missouri now submits supplemental briefing responding to the Court's question.

The Supreme Court has directly addressed the question in Missouri's favor, holding that foreign governments and instrumentalities are included in the definition of "person" under antitrust law. Furthermore, the Supreme Court has consistently affirmed that the scope of the term "person" in the antitrust context applies the same regardless of whether the sovereign in question is the plaintiff or defendant in the antitrust action. The Supreme Court's binding analysis of the term "person" in antitrust law is also consistent with well-established rules of textual interpretation. Indeed, Missouri is not the first plaintiff to bring an antitrust claim against a foreign country. As recently as 2022, the Second Circuit Court of Appeals allowed an antitrust case against the government of Haiti to proceed in response to that government's alleged anticompetitive actions.

Additionally, unlike federal antitrust law, Missouri's asserted cause of action under state law contains no "person" limitation. Mo. Rev. Stat. § 416.031(2), Missouri's state-law prohibition against monopolistic and anticompetitive actions,

1

broadly provides that "[i]t is unlawful" for any party to engage in monopolistic behaviors comparable to China's hoarding of PPE. Indeed, the structure and content of § 416.031 demonstrates that the omission of the term "person" from § 416.031(2) was intentional and intended to broadly capture any prohibited behavior—from any possible defendant. Section 416.031 provides Plaintiff an alternative cause of action that does not depend on the definition of the statutory term "person," and the Eighth Circuit has previously affirmed that plaintiffs may bring Missouri state-law causes of action, based on commercial activity, against China and its instrumentalities.

Both federal and state antitrust law provide Missouri with causes of action allowing it to recover damages suffered from China's unlawful hoarding of PPE. At the FSIA hearing and in the briefing submitted to this Court, Missouri has demonstrated damages suffered by the State, and, separately, to its citizens, in the amount of $8,162,941,819. Pls.' Supp. Br. at 15–26. Under any statutory theory, Missouri is additionally entitled to recover treble damages as a result of China's anticompetitive and monopolistic actions. Missouri, therefore, respectfully requests that this Court enter judgment against all Defendants in the amount of $24,488,825,457.

## ARGUMENT

### I. Foreign governments are included in the Sherman Act's statutory definition of "person."

The Supreme Court has expressly held that foreign governments and instrumentalities fall under the definition of "person" for the purpose of antitrust law. The Supreme Court has also specifically held that because "person" means the same

thing throughout the statutes, if an entity is a "person" for purposes of being a plaintiff in an antitrust action, that entity necessarily also satisfies the definition of "person" for the purpose of being a viable defendant in an antitrust action. Well-established principles of textual interpretation reinforce this conclusion. China thus easily falls under the definition of "person" for the purpose of Plaintiff's antitrust claims.

Missouri has identified to the Court multiple distinct federal statutory causes of action by which it may recover treble damages from Defendants. Section 2 of the Sherman Antitrust Act broadly prohibits "[e]very person" from attempting to monopolize "any part" of trade or commerce.[1] Two independent provisions then give the Missouri Attorney General authority to enforce this prohibition: 15 U.S.C. § 15(a) (allowing Missouri to recover treble the amount of direct damages it suffered as a result of Defendants' violations of federal antitrust laws) and 15 U.S.C. § 15c(a) (allowing Plaintiff, as the Attorney General of Missouri, to recover as *parens patriae* treble the amount of damages suffered by the people of Missouri). *See* Pl.'s Supp. Br, at 4–12. Both statutory causes of action specifically allow for recovery stemming from any actions "forbidden in the antitrust laws" or "by reason of any violation of sections 1 to 7 of this title." 15 U.S.C. §§ 15(a), 15c(a).

The question then becomes whether any of Defendants here is a "person" under these laws. Federal antitrust law defines "person" broadly and nonexhaustively:

---

[1] "Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations . . . ." 15 U.S.C. § 2.

3

The word "person," or "persons," wherever used in sections 1 to 7 of this title shall be deemed to include corporations and associations existing under or authorized by the laws of either the United States, the laws of any of the Territories, the laws of any State, or the laws of any foreign country.

15 U.S.C. § 7; *see also* 15 U.S.C. § 12(a) (providing an identical definition for "person" or "persons" as 15 U.S.C. § 7 "wherever [the term is] use in this Act").[2]

This text governs Defendants here for several reasons. First, the text expressly encompasses entities organized under "the laws of any foreign country." That includes defendants like the Wuhan Institute of Virology. Second, the Supreme Court has expressly held that foreign governments are "persons" who can bring federal antitrust actions and has held that, if an entity is a "person" for plaintiff-side purposes, that entity necessarily also is a "person" for defendant-side purposes. Cases from other circuits confirm this understanding.

## A. Several defendants are entities organized under "the laws of any foreign country."

Even setting aside the question whether China itself is a "person" under antitrust law (it is), certain nonstate defendants clearly fall into the definition of person as "includ[ing] corporations and associations existing under or authorized by the laws of . . . any foreign country." 15 U.S.C. § 7. The Eighth Circuit has held that both the Wuhan Institute of Virology and the Chinese Academy of Sciences, although constituting "instrumentalities" of China for the purpose of the FSIA, remain "legally separate from the government." *Missouri ex rel. Bailey v. People's Republic of China*,

---

[2] Missouri's supplemental briefing on the scope of the term "person" under antitrust law, and the authority supporting application of the term in this case, applies to every Defendant in this action and establishes that each falls under the definition of "person." *See infra.*

4

90 F.4th 930, 935 (2024); *see also id.* (referring to "instrumentalities" of a foreign state, such as the Wuhan Institute of Virology and Chinese Academy of Sciences, as "separate legal person[s] from the government itself") (internal quotation marks omitted).  Both the Wuhan Institute of Virology and Chinese Academy of Sciences on their face therefore independently satisfy the definition of "persons" as "includ[ing] corporations and associations existing under or authorized by . . . the laws of any foreign country."  15 U.S.C. § 7.

In short, this Court and the Eighth Circuit had to assess these organizations under the Foreign Sovereign Immunities Act because that Act provides default immunity to any "agency or instrumentality of a foreign state."  28 U.S.C. § 1603. But because these organizations are instrumentalities under Chinese law, they easily satisfy the definition of "person" for purposes of federal antitrust law.

**B. Controlling Supreme Court precedent makes clear that the term "person," as it is used in 15 U.S.C. § 2, includes foreign countries.**

The Supreme Court has squarely held that the term "person" includes foreign countries. *Pfizer, Inc. v. Government of India*, 434 U.S. 308 (1978).  Starting from the backdrop that Congress intended the "scope of the remedies provided by the antitrust laws" to be "broad" and that the Sherman Act is "comprehensive in its terms and coverage, protecting all who are made victims of the forbidden practices by whomever they may be perpetrated," the Supreme Court construed "the phrase 'any person'" to have a "broad and inclusive meaning."  *Id.* at 312.  To that end the Supreme Court, analyzing the permitted scope of the definition of "person" in 15 U.S.C. §§ 7 and 12, held that "[i]t is apparent that this definition [of 'person'] is inclusive rather than

exclusive, and *does not by itself imply that a foreign government, any more than a natural person, falls without its bounds.*"  *Id.* at 312 n.9 (emphasis added).  Rather, courts analyzing claims brought under antitrust law should read the definition of "person" contained in § 7 in a "broad" manner to include foreign countries and governments.  *Id.*  Applying this approach, the Supreme Court expressly held that the foreign nation of India is included in the definition of "person" for the purpose of the relevant antitrust statute.  *Id.* at 312.

*Pfizer* is consistent with the Supreme Court's longstanding application of the term "person," as used in antitrust law, to include sovereign states and governmental bodies.  In *State of Georgia v. Evans*, the Supreme Court expressly rejected the argument that 15 U.S.C. § 7's definition of "person" or "persons" (a definition identical to today) "could not include a governmental body."  316 U.S. 159, 161 (1942).  Concluding that "[n]othing in the Act . . . could justify so restrictive a construction of the word 'person' in [15 U.S.C. § 7] as to exclude a State" from the definition of a "person" under the statute, the Supreme Court reversed the judgment of the district court "that the State of Georgia is not a 'person' under [15 U.S.C.] § 7 of the [Sherman] Act" and instead concluded that the Sherman Act's intended expansive definition of who may sue and be sued under the Act includes sovereign states.  *Id.* at 160–61.

Although the Supreme Court's decisions in *Pfizer* and *Evans* considered whether the term "person" encompassed foreign nations or U.S. States acting as plaintiffs in antitrust actions (rather than defendants), the Court later explained that this is a distinction without a difference.  In *City of Lafayette, La. v. Louisiana Power*

6

& *Light Co.*, the Supreme Court held that, although cases such as *Evans* interpreting the scope of "person" under antitrust law "involved the public bodies as plaintiffs," rather than defendants, "the basis of those decisions *plainly precludes* a reading of 'person' or 'persons'" which would include public bodies "that sue as plaintiffs *but not to include* such" public bodies as "persons" "when sued as defendants."  435 U.S. 389, 397 (1978) (emphasis added).  As the Court explained, the definitions of "person" and "persons," as used in in 15 U.S.C. §§ 7 and 12, are "general definition sections" that maintain a consistent definition of the terms "wherever used in this [Act]."  *Id*. at 395 (quoting 15 U.S.C. § 7).  The Court in *Lafayette* further concluded that its application of this expansive definition of "person" to all antitrust contexts—rather than just when a governmental body is acting as a plaintiff—comports with the Court's "presumption against implied exclusion from coverage under the antitrust laws."  *Id*. at 398; *see also id*. at 408 (rejecting the argument that "governmental entities . . . are, simply by reason of their status as such, exempt from the antitrust laws").

The Supreme Court has consistently reaffirmed the conclusion reached in *City of Lafayette* that that the broad scope of the term "person" includes sovereign governments regardless of whether the government is a plaintiff or defendant in an antitrust action.  For example, in *U.S. Postal Service v. Flamingo Industries (USA) Ltd.*, a unanimous Supreme Court, citing both *Georgia* and *Pfizer*, again reaffirmed under the Sherman Act "that corporate *or governmental status* in most instances"—specifically, in every instance in which the U.S. federal government is not a party to the antitrust action—"*is not a bar to the imposition of liability on an entity* as a

'person' under the Act." *U.S. Postal Service v. Flamingo Industries (USA) Ltd.*, 540 U.S. 736, 744–45 (2004) (emphasis added); *see also id.* at 745 (explaining the rule adopting a broad definition of "person" under antitrust law is only "otherwise . . . when liability is pursued against the Federal Government").

Indeed, this principal that "person" means the same thing in the plaintiff context as it does the defendant context is specifically why the Supreme Court held that the United States government—alone—was not a "person."  Explaining one of its earlier decisions, the Supreme Court said that it construed "person" not to include the United States because "if the definition of 'person' included the United States" as a plaintiff, "then the Government *would* be exposed to liability as an antitrust defendant." *U.S. Postal Serv. v. Flamingo Industries (USA) Ltd.*, 540 U.S. 736, 745 (2004) (emphasis added) (citing *United States v. Cooper Corp.*, 312 U.S. 600, 614 (1941)).[3]

In short, *Pfizer* expressly holds that foreign government plaintiffs are "persons" under the antitrust laws, and *Flamingo* and *Lafayette* (the latter decided two months after *Pfizer*) conclude that if an entity is a "person" as a plaintiff, then the same entity is a viable defendant as well. *Pfizer*, 434 U.S. at 312; *City of Lafayette*,

---

[3] *Cooper* held that the United States federal government, for reasons particular to the federal government's unique enforcement authority, is not included in the definition of "person" under the Sherman Act.  *Cooper*, 312 U.S. at 614.  The Supreme Court in *Flamingo* (as well as other cases), has since explained that this exception to inclusion in the definition of "person" under antitrust laws is unique to only the U.S. federal government.  *See, e.g., Flamingo*, 540 U.S. at 744–45 (explaining that, despite *Cooper*, the term "person" applies to both U.S. states and foreign governments besides the U.S. federal government).

435 U.S. at 397; *Flamingo*, 540 U.S. at 745.  Being able to sue as a plaintiff necessarily means the same party "would be exposed to liability as an antitrust defendant." *Flamingo*, 540 U.S. at 745.  As such, the antitrust definition of "person" includes foreign states—foreign states such as the People's Republic of China.

### C. Ordinary methods of statutory interpretation reinforce the Supreme Court's conclusion that "person" includes foreign nations.

The Supreme Court's construction of 15 U.S.C. § 7 in *City of Lafayette*, even if it were not binding on this Court, is consistent with well-established methods and presumptions of textual interpretation for several reasons.

*First*, at various points in the text of the antitrust provisions, the statutory scheme expressly assumes that foreign states are included in the definition of "person."  For example, 15 U.S.C. § 15 creates a cause of action whereby "*any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue*" for damages from the antitrust violation.  15 U.S.C. § 15(a) (emphasis added).  As part of the statute, 15 U.S.C. § 15(b) provides, with certain exceptions, that "*any person who is a foreign state*" may not recover under 15 U.S.C. § 15 an amount in excess of the actual damages the foreign state sustained.  15 U.S.C. § 15(b)(1)(emphasis added).  These defined terms of "person" and "persons" are consistent "wherever used in this Act."  15 U.S.C. § 12; *see also* 15 U.S.C. § 7.  As such, consistent use of the terms "person" and "persons" includes "person who is a foreign state" within the definitions of "person" and "persons" as applied consistently throughout the statute.  Nowhere in the Sherman and Clayton Acts does the

9

definition suggest that "wherever" is limited based on whether the person is a plaintiff or defendant.

*Second*, as the Court noted in *City of Lafayette*, the language of 15 U.S.C. § 7, copied verbatim again in 15 U.S.C. § 12, in fact expressly *rejects* the suggestion that it should be applied inconsistently in any part of antitrust law.  Both 15 U.S.C. §§ 7 and 12 make clear that their identical definitions of "person" should be adopted "wherever" the term is used in the Sherman and Clayton Acts.  15 U.S.C. §§ 7, 12. Furthermore, even if the statute were silent on its scope (it is not), nothing in the language would overcome "the normal rule of statutory interpretation" that "identical words" used in different parts of an Act "are generally presumed to have the same meaning."  *IBP, Inc. v. Alvarez*, 546 U.S. 21, 34 (2005); *accord HollyFrontier Cheyenne Refining, LLC v. Renewable Fuels Assn.*, 594 U.S. 382, 389 (2021) ("absent contrary evidence, this Court normally presumes consistent usage").

This is especially true for the statutory definition of "person" in 15 U.S.C. §§ 7 and 12, which does not contain any language suggesting the term is defined separately when applied to plaintiffs or defendants.  The application of this presumption, combined with the lack of any express instruction to the contrary, counsels that the use of the term "person" bears a consistent meaning in antitrust law regardless of whether a party is a plaintiff or defendant—a meaning which, under the plain text of the statute and Supreme Court precedents, includes foreign nations. 15 U.S.C. § 15; *Pfizer*, 434 U.S. at 312.

*Third*, the statutory definition of "person" contained in 15 U.S.C. §§ 7 and 12 demonstrates that, although the language of the definition itself does not expressly mention foreign governments, its summary of the entities that fall under the definition of "person" for the Sherman Act is a non-exhaustive definition that does not exclude foreign governments.  Critically, the definition of "person" in 15 U.S.C. §§ 7 and 12 does not *limit* itself to "corporations and associations" through the use of any language that would exclude other legal entities.  Rather, the statute makes clear that the definition of "person" only "*include[s]*" entities such as "corporations and associations existing under or authorized by the laws . . . of any foreign country."  15 U.S.C. § 7 (emphasis added).  The Supreme Court has explained that the use of the term "includes" in a statute "is significant because it makes clear that the examples enumerated in the text are intended to be *illustrative, not exhaustive*."  *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 162 (2012) (emphasis added).  The "illustrative" nature of 15 U.S.C. §§ 7 and 12 is even more apparent in light of the Supreme Court's repeated decisions holding that a foreign nation can constitute a "person" under the Sherman Act.  *See, e.g.*, *Pfizer*, 434 U.S. at 312; *Flamingo*, 540 U.S. at 744–45.

Indeed, in light of the statutory definition, the Supreme Court has often stressed that an entity is covered by antitrust laws unless there is "clear legislative intent" to exempt that entity from coverage.  *Pfizer*, 434 U.S. at 319.  That is why the Supreme Court interpreted "person" to include foreign nations when India brought

11

suit.  *Id.*; *see also Lafayette*, 435 U.S. at 398 (adopting a "presumption against implied exclusions from coverage under the antitrust laws").

*Fourth*, even if *Pfizer* did not control, its rationale behind including foreign nations in the definition of "person" is instructive.  There, the Court observed that, "[w]hen a foreign nation enters our commercial markets as a purchaser of goods or services, it can be victimized by anticompetitive practices just as surely as a private person or a domestic state." *Id*. at 318. The corollary is also true: when a foreign nation enters our commercial markets as a purchaser of goods or services, it can, as happened here, victimize private persons or states through its own anticompetitive practices. Nothing in our antitrust laws suggest that Congress intended to give foreign nations a free pass for their unlawful and anticompetitive actions.  Indeed, the Supreme Court has described "[a]ntitrust laws in general, and the Sherman Act in particular," as "the Magna Carta of free enterprise" and "as important to the preservation of economic freedom and our free-enterprise system as the Bill of Rights is to the protection of our fundamental personal freedoms." *United States v. Topco Associates*, 405 U.S. 596, 610 (1972).  To permit China to sue as a plaintiff (as *Pfizer* does) but not be subject to suit as a defendant would "create a conspicuous exception to this rule, an exception that could not be justified in the absence of clear legislative intent." *Pfizer*, 435 U.S. at 319.  Missouri should not be deprived of such fundamental economic protections simply because the bad actor engages in anticompetitive activity on a national, rather than individual, scale.

12

## D. Other courts have reviewed and upheld antitrust actions brought against foreign states or in part based on foreign legislative actions.

Neither is Missouri the first plaintiff to bring antitrust claims against a foreign state or government for commercial actions which the foreign state took in violation of the Sherman Act.  In *Celestin v. Caribbean Air Mail, Inc.*, for example, the Second Circuit reviewed antitrust claims brought against, among other defendants, the Government of Haiti for "fix[ing] the prices of remittances and telephone calls made between [p]laintiffs and their contacts in Haiti."  30 F.4th 133, 135–36 (2d Cir. 2022).[4]

---

[4] Cases raising antitrust claims against foreign states or foreign instrumentalities will sometimes consider the "act of state" defense to liability from antitrust claims involving certain actions of foreign states.  *See, e.g., Celestin*, 30 F.4th at 135 (considering whether the act of state doctrine bars antitrust claims against Haiti). Critically, this antitrust doctrine is distinct from the similarly-phrased "state action" doctrine, which is only held to apply to antitrust claims brought against U.S. states and municipalities.  *Compare City of Lafayette*, 435 U.S. at 411 (basing the state action doctrine as arising under "our dual system of government in which, under the Constitution, the states are sovereign, save only as Congress may constitutionally subtract from their authority) (internal quotation marks omitted) *with Kirkpatrick*, 493 U.S. at 409 (basing the act of state doctrine on questions concerning foreign sovereigns).  The act of state doctrine, which "merely requires that, in the process of deciding [an antitrust claim], the acts of foreign sovereigns taken within their own jurisdictions" are not held to be legally invalid, does not affect this Court's analysis for multiple, independent reasons.  *Id.* at 409–10.  *First*, the Supreme Court has clarified that the act of state doctrine *only* applies in the narrow instances where "the relief sought or the defense interposed would have required a court in the United States to declare invalid the official act of a foreign sovereign performed within its own territory."  *Id.* at 405; *see also Celestin*, 30 F.4th at 135 ("We hold that the act of state doctrine does not foreclose [p]laintiffs' antitrust claim because no official act of Haiti must be deemed invalid for liability to attach under federal law.").  Plaintiff's claims do not ask this Court to enter a judgment legally declaring "invalid" or "ineffective" any official act by the People's Republic of China in finding that these official acts violated antitrust laws, and therefore the act of state doctrine does not apply.  *W.S. Kirkpatrick & Co.*, 493 U.S. at 409–10 ("The act of state doctrine does not establish an exception that may embarrass foreign governments, but merely requires that, in the process of deciding, the acts of foreign sovereigns taken with their own jurisdictions shall be deemed valid.  That doctrine has no application to the

13

Relying in part on the Supreme Court's decision in *W.S. Kirkpatrick & Co.*, 493 U.S. 400 (1990), which held "that a 'defendant's actions in obtaining [a foreign country's] enactment of 'discriminating legislation' could form part of the basis for suit under the United States antitrust laws,'" the Second Circuit concluded that Plaintiffs were not barred from asserting an antitrust claim against the government of Haiti. *Id.* at 144–45 (quoting *Kirkpatrick*, 493 U.S. at 407) (modification made in *Celestin*); *see also id.* at 144 ("We may give the Presidential Order and Circulars their full purported legal effect and still conclude that Plaintiffs have plausibly alleged illegal price-fixing [by the government of Haiti] under the Sherman Act."). *Cf. United States v. Sisal Sales Corp.*, 274 U.S. 268, 273 (1927) (reversing dismissal of an antitrust action that was based on the claim that "[t]he governments of both Mexico and Yucatan were persuaded to pass discriminatory legislation and all other buyers were

---

present case, because the validity of no foreign sovereign act is at issue."). *Second*, the commercial nature of Defendants' actions at issue renders the act of state doctrine inapplicable. The Eighth Circuit has already held that Defendants' actions, forming the basis of Count IV of Plaintiff's complaint, "were commercial in nature." *Missouri ex rel. Bailey v. People's Republic of China*, 90 F.4th 930, 938 (8th Cir. 2024). The Supreme Court, in turn, has squarely rejected the argument that the act of state doctrine should be extended to claims based upon "the purely commercial conduct of foreign governments." *Alfred Dunhill of London, Inc. v. Republic of Cuba*, 425 U.S. 682, 698 (1976). *Third*, the act of state doctrine is an affirmative defense to antitrust claims, which the Supreme Court has expressly held a *defendant* bears the burden of establishing. *Id.* at 694 (1976) (holding that the defendant failed to satisfy their "burden of establishing their act of state defense"); *see also Petersen Energía Inversora S.A.U. v. Argentine Republic and YPF S.A.*, 895 F.3d 194, 212 (2d Cir. 2018) ("The act of state doctrine . . . [is] an affirmative defense."). As Defendants are each in default, they are deemed to have waived any affirmative defenses in this lawsuit. *Maalouf v. Islamic Republic of Iran*, 923 F.3d 1095, 1112 (D.C. Cir. 2019). And, even if they were not deemed to have waived any affirmative defenses, Defendants, by virtue of their default, have certainly failed to provide evidence carrying their burden of establishing a defense under the act of state doctrine. *Dunhill*, 425 U.S. at 694.

forced out of the markets"); *Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 705 (1962) (describing *Sisal* as a lawsuit over attempts "to monopolize an article of commerce produced abroad [which] was held to violate the Sherman Act even though the defendants' control of that production was aided by discriminatory legislation of the foreign country"); *Kirkpatrick*, 493 U.S. at 407 (noting that the Supreme Court has previously held that "the defendant's actions in obtaining Mexico's enactment of 'discriminating legislation' could form part of the basis for suit under the United States antitrust laws").

* * *

The Supreme Court's conclusion that the statutory definition of "person" as provided in 15 U.S.C. §§ 7 and 12 includes foreign states and governments is binding on this Court. *See, e.g.*, *Pfizer*, 434 U.S. at 312; *Flamingo*, 540 U.S. at 744–45. What's more, the Supreme Court has made clear that the scope of the term "person" in antitrust law does not expand or contract based on whether a foreign state is a plaintiff or defendant in an antitrust action. *See, e.g., City of Lafayette*, 435 U.S. at 397; *Flamingo*, 540 U.S. at 745.

Controlling Supreme Court precedents and well-established methods of textual interpretation each independently reach a clear answer to the question posed by the Court at the January 27, 2025 hearing: the statutory definition of "person," as it is used in 15 U.S.C. § 2, includes the People's Republic of China, its agencies, and its instrumentalities.

## II. Missouri's state-law prohibition on attempts to monopolize trade or commerce provides Missouri a separate statutory claim that does not depend on the definition of "person."

For each of the reasons addressed above, the use of the term "person" in 15 U.S.C. § 2 includes and allows antitrust claims to be brought against China. Even if the Court disagrees, however, Missouri's asserted state law cause of action for monopolistic and anticompetitive behavior, § 416.031(2), provides an independent basis for relief.

As Missouri detailed in its January 8, 2025 Supplemental Briefing, Section 416.031.2 of the Missouri Revised Statutes includes an independent, state-law cause of action violated by China's anticompetitive and monopolistic actions in hoarding PPE:

> It is unlawful to monopolize, attempt to monopolize, or conspire to monopolize trade or commerce in this state.

The language of § 416.031.2 is nearly identical to the language of 15 U.S.C. § 2, with both prohibiting "attempt[ing] to monopolize" and "conspir[ing]" to monopolize trade or commerce. But § 416.031.2 contains one critical difference: unlike the federal statute, the state statute makes no mention of it being unlawful for a "person" to monopolize or attempt to monopolize trade. Rather, by simply using the broad phrase "[i]t is unlawful," § 416.031.2 contains *no mention* of any characteristic of a person, entity, or foreign state which would limit the scope of the prohibitions on attempted monopolization contained in the statute. In other words, to the extent the Court concludes "person" limits the applicability of 15 U.S.C. § 2 to claims against foreign

16

states (it does not), no such limitation would prevent Missouri's state-law cause of action.

Indeed, the structure of § 416.031 demonstrates that this omission of the word "person" in the prohibitions of § 416.031.2 was intentional. In the very next subpart, § 416.031.3—a provision not asserted in this action—the language of the statute creates a separate, *additional* prohibition barring "any person" from taking other, additional anticompetitive acts in the State:

> It is unlawful *for any person* engaged in trade or commerce in this state, in the course of such trade or commerce, to lease or make a sale or contract for sale of any commodity, whether patented or unpatented, for use, consumption, or resale within this state, or fix a price charged therefor, or discount from, or rebate upon, such price, on the condition, agreement, or understanding that the lessee or purchaser thereof shall not use or deal in the commodities of the competitor or competitors of the lessor or seller, where the effect of such lease, sale, or contract for such sale or such condition, agreement, or understanding may be to substantially lessen competition or tend to create a monopoly in any line of trade or commerce in this state.

§ 416.031.3 (emphasis added).

The distinction between § 416.031.2 (providing simply that "it is unlawful to monopolize, attempt to monopolize, or conspire to monopolize") and § 416.031.3 (specifying that it is unlawful "for any person" to engage in additional specific anticompetitive activities) is instructive on the broad scope of § 416.031.2. When analyzing state statutes, Missouri courts presume that the General Assembly "acts intentionally when it includes language in one section but omits such language from another." *Selleck v. Keith M. Evans Insurance, Inc.*, 535 S.W.3d 779, 784 (Mo. App. E.D. 2017). Indeed, Missouri courts regularly hold that including language in one clause of a statute, but omitting it from another clause, "is itself a significant indicator

17

that this limitation does *not* apply" to the clause it was omitted from.  *Denbow v. State*, 309 S.W.3d 831, 835 (Mo. App. W.D. 2010) (emphasis in original).

Likewise here, the disparate use of "any person" in § 416.031.3, but not § 416.031.2, serves as a "significant indicator" that the legislature *did not* intend the anti-monopoly provisions contained in § 416.031.2 to contain any limitation restricting claims brought under that subpart to actions brought by a "person."  On the contrary, the broad language of § 416.031.2—simply stating that "[i]t is unlawful"—demonstrates an intent for the prohibitions contained in § 416.031.2 to broadly apply to any person, entity, or foreign government which may "monopolize, attempt to monopolize, or conspire to monopolize trade or commerce" to the detriment of Missouri.

As such, any concern the Court has regarding the term "person" in 15 U.S.C. § 2 would not bar granting Missouri relief pursuant to § 416.031.2.  On the contrary, the language in question demonstrates a clear attempt to cast as broad a net as possible over anticompetitive and monopolistic behaviors.  Missouri's state-law cause of action provides an independent avenue by which the State may obtain relief (including treble damages) for China's hoarding of PPE.  *See BP Chemicals Ltd. v. Jiangsu Sopo Corp.*, 285 F.3d 677, 682 (8th Cir. 2002) (holding that a plaintiff may assert Missouri state-law causes of action that are based on commercial activity against an instrumentality of the People's Republic of China.).

The statutory provision empowering the Attorney General to seek civil damages for violations of § 416.031.2 similarly contains no reference to any

18

requirement that claims only be brought against "persons."  Section 416.061, which states the mechanism by which Plaintiff, as the Attorney General of Missouri, may sue to recover damages for violations of § 416.031.2, simply provides that "[i]t shall be the duty of the attorney general to enforce the provisions of sections 416.011 to 416.161" and that "[t]he attorney general may represent, . . . the state [and] any of its political subdivisions or public agencies . . . in suits to enforce the provisions of sections 416.011 to 416.161." § 416.031.2, .3.

Furthermore, as Plaintiff detailed at length in his January 8, 2025 Supplemental Brief, Missouri has satisfied each element of § 416.031.2, and a judgment in Plaintiff's favor is therefore warranted.  *See* Pl.'s Supp. Br. at 13–15. Missouri may bring a state-law antitrust claim against a foreign defendant even when that claim "regulates or affects interstate commerce."  *C. Bennett Bldg. Supplies, Inc. v. Jenn Air Corp.*, 759 S.W.2d 883, 889 (Mo. App. E.D. 1988).

The use of the term "person" in federal law does not bar Missouri from bringing federal claims against China.  Even if this Court disagrees, however, state law is expressly, and conspicuously, even broader.  By using the expansive phrase "it is unlawful to monopolize, attempt to monopolize, or conspire to monopolize," § 416.031.2 demonstrates a statutory intent to capture actions by any defendant, including a foreign government.  Even under a narrower reading of the term "person," Missouri's state law cause of action survives and entitles the State to its full amount of damages.

19

# CONCLUSION

For the foregoing reasons and the reasons stated in Plaintiff's November 22, 2024 Foreign Sovereign Immunity Act Default Hearing Brief and Plaintiff's January 8, 2025 Supplemental Briefing in Support of his Foreign Sovereign Immunity Act Default Hearing Briefing, Plaintiff the State of Missouri ex rel. Andrew Bailey respectfully requests that this Court: (1) enter a judgment of liability against all Defendants on Count IV of Plaintiff's Complaint; (2) issue an award of civil damages against all Defendants in an amount of at least $24,488,825,457 or, in the alternative, $8,162,941,819; (3) order that Defendants pay prejudgment and postjudgment interest on every amount of damages awarded by this court; and (4) award such further relief as the Court deems just and appropriate.

Date: February 26, 2025     Respectfully submitted,

           ANDREW T. BAILEY
           Attorney General

           Joshua M. Divine, 69875MO
           *Solicitor General*

           */s/ Samuel C. Freedlund*
           Samuel C. Freedlund, 73707MO
           *Deputy Solicitor General*

           Office of the Attorney General
           815 Olive St.
           Suite 200
           St. Louis, Missouri 63101
           Phone: (314) 340-4869
           Fax (573) 751-1774
           Samuel.Freedlund@ago.mo.gov

           *Attorneys for Petitioner*

## CERTIFICATE OF SERVICE

I hereby certify that on February 26, 2025, a true and accurate copy of the foregoing was electronically filed by using the Court's CM/ECF system to be served on all counsel of record entered in the case.

<u>/s/ Samuel C. Freedlund</u>