IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| THE STATE OF MISSOURI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:20-cv-00099-SNLJ |
| | ) |
| THE PEOPLE'S REPUBLIC OF CHINA, et al., | ) |
| | ) |
| Defendants. | ) |

**SUPPLEMENTAL *AMICUS CURIAE* BRIEF
OF THE CHINA SOCIETY OF PRIVATE INTERNATIONAL LAW**

The China Society of Private International Law (the "Society") respectfully supplements its *Amicus Curiae* Brief to address issues of law in the current default judgment proceeding.

## INTRODUCTION

In this unusual and unprecedented case brought by the State of Missouri against a foreign state, China, for alleged injuries sustained from the COVID-19 pandemic, the Eighth Circuit affirmed this Court's dismissal of all but one claim for lack of subject matter jurisdiction due to immunity under the Foreign Sovereign Immunities Act ("FSIA"). Pursuant to the partial reversal, the remaining claim—Defendants' alleged hoarding of personal protective equipment ("PPE")—is allowed to proceed. Because none of the Defendants have appeared, Plaintiff now seeks default judgment against all Defendants with respect to the "hoarding" claim.

Plaintiff still has hurdles to overcome, one of which is the burden to establish its remaining claim with evidence satisfactory to this Court under 28 U.S.C. § 1608(e). The Society respectfully supplements its amicus brief to submit that Plaintiff has not met this burden and default judgment

#32693817 v1

is improper because Plaintiff fails to establish a legally sufficient prima facie case with regard to the "hoarding" claim.

Although the "hoarding" claim as stated in the Complaint is a common law negligence claim, Plaintiff has never amended the Complaint and now alleges that it also raises statutory causes of action under federal and Missouri antitrust laws. *See* Plaintiff's Supplemental Briefing, ECF No. 87 at 1. The "hoarding" claim alleges that Chinese Defendants' alleged hoarding acts in China caused the purported injury to Plaintiff in Missouri. But whether under Missouri common law or federal or Missouri antitrust laws, Plaintiff cannot establish a prima facie claim. Plaintiff claims Defendants have a duty of care not to engage in anticompetitive acts, but Defendants who are foreign sovereigns do not have a duty under the Missouri or federal statutes cited by Plaintiff. Further, to the extent there is any duty, the numerous independent intervening causes between the alleged "hoarding" and the purported injury sustained by Plaintiff prevents finding any "direct effect" in the United States to support jurisdiction under the FSIA. Finally, the alleged anticompetitive acts are sovereign acts and should be deemed valid under the act of state doctrine.

Further, we submit that the "lenient" evidentiary standard that Plaintiff derives from FSIA terrorism cases should not apply to a non-terrorism case like this one. Even though this Court has admitted Plaintiff's trial exhibits, virtually every trial exhibit contains inadmissible hearsay, which fails to satisfy even a lenient evidentiary standard, and therefore should not be relied upon by the Court in rendering any judgment.

Indeed, default judgments are not favored by the law and should be a rare judicial act. *Belcourt Pub. Sch. Dist. v. Herman*, 786 F.3d 653, 661 (8th Cir. 2015). Default judgments against foreign sovereigns are especially disfavored. *Commercial Bank of Kuwait v. Rafidain Bank*, 15 F.3d 238, 240 (2d Cir. 1994). Given the reasons below, we respectfully submit that this Court

2

#32693817 v1

should deny Plaintiff's motion for a default judgment and dismiss the remaining "hoarding" claim *sua sponte*.

## ARGUMENT

**I. Plaintiff fails to present a prima facie case with respect to the remaining "hoarding" claim.**

Under the FSIA, after a court determines that it has jurisdiction over a claim against a defaulting defendant, no default judgment may be entered against a foreign state "unless the claimant *establishes his claim or right to relief* by evidence satisfactory to the court." 28 U.S.C. § 1608(e) (emphasis added). Section 1608(e), which mirrors Federal Rule of Civil Procedure 55(d)[1], provides foreign states with the same protections from default judgments that the federal government enjoys. *Commercial Bank of Kuwait*, 15 F.3d at 242. This shows Congress's intent that foreign states be treated with respect and that they cannot be subject to "unfounded default judgments rendered solely upon a procedural default." *Compania Interamericana Exp.-Import, S.A. v. Compania Dominicana de Aviacion*, 88 F.3d 948, 950–51 (11th Cir. 1996).

Section 1608(e) "codifies in the FSIA context the long-standing presumption that due process requires plaintiffs seeking default judgments to make out a prima facie case." *Moore v. United Kingdom*, 384 F.3d 1079, 1090 (9th Cir. 2004). That is, a legally sufficient evidentiary basis for a reasonable jury to find for the plaintiff. *Lanny J. Davis & Assocs. LLC v. Republic of Eq. Guinea*, 962 F. Supp. 2d 152, 162 (D.D.C. 2013). *See, e.g., Moore v. United Kingdom*, 384 F.3d 1079, 1090 (9th Cir. 2004) (dismissal for failure to state a claim is proper because plaintiff is not entitled to a default judgment against the United Kingdom where plaintiff has not adequately alleged that he has "a claim or right to relief"); *Abdulla v. Embassy of Iraq*, No. 12-2590, 2013

---

[1] Formerly Fed. R. Civ. P. 55(e).

3

U.S. Dist. LEXIS 127914 (E.D. Pa. Sep. 9, 2013), *aff'd*, 598 F. App'x 824 (3d Cir. 2015) (denying motion for default judgment against Iraqi Embassy for breach of contract because, *inter alia*, plaintiff fails to show breach).

In determining whether Plaintiff has presented a prima facie case, the court cannot simply accept a complaint's unsupported allegations as true but is obligated to inquire further. *Lanny J. Davis & Assocs. LLC v. Republic of Eq. Guinea*, 962 F. Supp. 2d 152, 161 (D.D.C. 2013); *see also Smith v. Gnassingbe*, No. 07-4167 (ADM/JJK), 2009 U.S. Dist. LEXIS 95372, at *9 (D. Minn. July 22, 2009) (noting that the plaintiff's allegations in the complaint "contains mere allegations" and not "evidence satisfactory to establish the legitimacy of [the plaintiff's] claims" that is "necessary to support an entry of default judgment"). The court must base its findings of fact and conclusions of law upon evidence admissible under the Federal Rules of Evidence. *Owens v. Republic of Sudan*, 864 F.3d 751, 786 (D.C. Cir. 2017), *vacated and remanded on other grounds sub nom. Opati v. Republic of Sudan*, 590 U.S. 418 (2020). Only "uncontroverted factual allegations that are supported by admissible evidence are taken as true." *Warmbier v Democratic People's Republic of Korea*, 356 F. Supp. 3d 30, 42 (D.D.C. 2018). In addition, the evidence must be sufficient for the court to come to the "logical conclusion" that the defendant is responsible for the plaintiffs' injuries. *Brown v. Islamic Republic of Iran*, 687 F. Supp. 3d 21, 38–39 (D.D.C. 2023) (citing *Han Kim*, 774 F.3d at 1051).

Simply put, if a plaintiff fails to present a prima facie case from a legal and factual standpoint with admissible evidence, the court should not enter a default judgment. This is the case here.

### A. Plaintiff fails to establish a claim under Missouri or federal antitrust laws because they do not apply to or impose any duty on Defendants.

In the Complaint, Plaintiff only pleads a "duty not to hoard PPE and not to provide ineffective PPE." Complaint, ¶ 176. In its Default Hearing Brief [ECF No. 79] and Supplemental Briefing [ECF No. 87],[2] Plaintiff argues that Defendants' duties to exercise care are imposed by statutes: (1) duties pursuant to state and federal statutory and regulatory authorities not to engage in anticompetitive acts;[3] and (2) duties pursuant to state and federal statutory and regulatory authorities not to engage in fraud or misrepresentation.[4]

With regard to the first group of duties, we next analyze the cited federal and state antitrust laws. Of note, the Eighth Circuit Court of Appeals did not make a determination that the alleged anticompetitive behavior/action constitutes a violation of any federal or state anticompetitive law, which concerns the merits of Plaintiff's remaining claim.

### i. The cited federal antitrust law does not apply to or impose any duty on Defendants.

On the face of the Complaint, Plaintiff does not plead any federal statute in the remaining Count IV. However, Plaintiff argues in the Default Hearing Brief that federal antitrust law imposes

---

[2] Of note, the "Default Hearing Brief" and "Supplemental Briefing" does not constitute a pleading. *Cf. Kilburn v. Socialist People's Libyan Arab Jamahiriya*, 376 F.3d 1123, 1125 (D.C. Cir. 2004) (allowing a suit to proceed, "[a]lthough the complaint did not specify the legal sources of the . . . causes of action," when later pleadings clarified the sources of law underlying the claims).
[3] *See* Default Hearing Brief, ECF No. 79 at 72–75.
[4] *See* Default Hearing Brief, ECF No. 79 at 85–87. This second group of duties is irrelevant and should not be considered by this Court, as the claims alleging the breach of those duties have been dismissed due to lack of subject matter jurisdiction. *See Mo. ex rel. Bailey v. People's Republic of China*, 90 F.4th 930, 937–40 (8th Cir. 2024) (affirming dismissal of "[t]here of Missouri's claims [that] target the alleged 'malfeasance and deception' behind the spread of COVID-19" for lack of subject matter jurisdiction because they do not meet the "commercial activity" exception under the FSIA). Because the claims alleging fraud and misrepresentation were dismissed, the alleged underlying duties related to those claims should not be considered by this Court when deciding the remaining "hoarding" claim.

5

duties on Defendants not to engage in anticompetitive acts. *See* ECF No. 79, at 73. It is improper for Plaintiff to import a federal antitrust law claim it has not pleaded.

Nonetheless, Plaintiff's position is erroneous because, for decades, federal courts have held that the federal antitrust law does not create any duty for foreign sovereigns—just as it does not impose liability on domestic sovereigns. *See, e.g.*, *Interamerican Refining Corp. v. Texaco Maracaibo, Inc.*, 307 F. Supp. 1291, 1298 (D. Del. 1970) ("The Sherman Act does not confer jurisdiction on United States courts over acts of foreign sovereigns. By its terms, it forbids only anticompetitive practices of persons and corporations.") (footnote omitted); *cf. F.T.C. v. Phoebe Putney Health Sys., Inc.*, 568 U.S. 216, 224 (2013) (federal antitrust laws do not apply to sovereign States as defendants).

The Second Circuit Court of Appeals agreed on this in *Hunt v. Mobil Oil Corp.*, an antitrust case. In *Hunt*, the plaintiffs alleged that they and certain private oil companies entered into anticompetitive agreements to resist the Libyan government's demands. The plaintiffs' reliance on these agreements ultimately led to the loss of the plaintiffs' oil production and assets in Libya. While Libya was not named as a defendant, the Second Circuit considered Libya's liability and held that "Libya cannot be guilty of a Sherman Act violation . . . because it is not a person or corporation within the terms of the Act but a sovereign state." 550 F.2d 68, 78 n.14 (2d Cir. 1977) (citing *Interamerican Refining*, 307 F. Supp. at 1298), *cert. denied*, 434 U.S. 984 (1977).[5]

Thereafter, a California federal court reviewed *Interamerican Refining* and *Hunt*, and further explained why foreign states are not subject to U.S. antitrust liability in *Int'l Ass'n of*

---

[5] In *Hunt*, the Second Circuit also dealt with the "act of state" doctrine, which is a separate doctrine with separate requirements. 550 F.2d at 72–75; *cf. Celestin v. Caribbean Air Mail, Inc.*, 30 F.4th 133, 144–45 (2d Cir. 2022) (addressing the applicability of the act of state doctrine to antitrust claims).

6

*Machinists & Aerospace Workers, v. Org. of Petroleum Exporting Countries*, 477 F. Supp. 553 (C.D. Cal. 1979), *aff'd on other grounds*, 649 F.2d 1354 (9th Cir. 1981) ("*IAM*"). In that case, the plaintiff labor union alleged that the Organization of Petroleum Exporting Countries (OPEC) and its member nations engaged in price fixing of crude oil in violation of the Sherman Act, which caused the plaintiff to suffer harm by paying higher prices for gasoline. The court first noted that there is no statutory basis for imposing antitrust liability on foreign states:

> Section 8 of the Sherman Act, 15 U.S.C. § 7, and section 1 of the Clayton Act, 15 U.S.C. § 12, define "person" or "persons," "to include corporations and associations existing under or authorized by the laws of the Territories, the laws of any State, or the laws of a foreign country." This statutory language does not support the conclusion that foreign sovereigns are "persons" subject to Sherman Act liability.

*IAM*, 477 F. Supp. at 570. The court then considered the legislative intent of the Sherman Act. In this regard, it analyzed the Supreme Court's reasoning in *Parker v. Brown*, 317 U.S. 341 (1943), where the Supreme Court first held that the Sherman Act does not prohibit actions by a U.S. state:

> The Sherman Act makes no mention of the state as such, and gives no hint that it was intended to restrain state action or official action directed by a state. . . .
> There is no suggestion of a purpose to restrain state action in the Act's legislative history. The sponsor of the bill which was ultimately enacted as the Sherman Act declared that it prevented only "business combinations." 21 Cong. Rec. 2562, 2457; see also at 2459, 2461. That its purpose was to suppress combinations to restrain competition and attempts to monopolize by Individuals [sic] and corporations, abundantly appears from its legislative history.

*IAM*, 477 F. Supp. at 570 (citing *Parker*, 317 U.S. at 351). The *IAM* court held that the same considerations "apply with equal force to foreign nations," *IAM*, 477 F. Supp. at 570, and noted that "Congress has never indicated any intent to extend liability of the Sherman Act to actions of a foreign sovereign." *Id.* at 572.

Plaintiff argues in its Supplemental Briefing [ECF No. 87] that under 15 U.S.C. § 15(b)(1), a foreign state may be treated as a "person" under antitrust law. That is true only in a limited sense.

7

A foreign state may be a "person" under U.S. antitrust laws as a plaintiff, but cannot be sued as a defendant. In this regard, the *IAM* court analyzed *Pfizer Inc. v. India*, 434 U.S. 308 (1978), where "the Supreme Court held that a foreign nation may be a 'person' under [the federal] antitrust laws *as a plaintiff* for the purpose of bringing suit." *IAM*, 477 F. Supp. at 572 (emphasis added). The *IAM* court noted that in reaching this result, the determining factor for the Supreme Court was that the Judiciary was not "require[d] . . . in any way to interfere in sensitive matters of foreign policy." *Id.* (citing *Pfizer*, 434 U.S. at 319). In this regard, the Supreme Court recently noted that "statutes affecting international relations" should be interpreted in a way "to avoid, where possible, producing friction in our relations with [other] nations and leading some to reciprocate by granting their courts permission to embroil the United States in expensive and difficult litigation." *Republic of Hungary v. Simon*, No. 23-867, 640 U.S. ___, 2025 WL 567336, at *9 (Feb. 21, 2025) (cleaned up).

However, where foreign nations are sued as defendants in an antitrust action, as here, the *IAM* court cautioned that "[t]o include foreign nations within the ambit of "persons" who may be sued as defendants . . . would require judicial interference in sensitive foreign policy matters." *IAM*, 477 F. Supp. at 572. The court noted that "Congress has never indicated any intent to extend liability of the Sherman Act to actions of a foreign sovereign," *id.*, and that it is "accepted doctrine" that "questions of 'general policy' -- especially with respect to foreign sovereigns and absent explicit legislative authority -- are beyond the province of the Judicial Branch." *Id.* (citing *Pfizer*, 434 U.S. at 330 (Powell, J., dissenting)). As a result, the *IAM* court refused to extend the *Pfizer* ruling and instead concluded that "a foreign nation may sue, but not be sued, under the United States antitrust laws." *IAM*, 477 F. Supp. at 572 (dismissing the entire antitrust action against defendant foreign nations "because they cannot be made defendants . . . in this antitrust suit and

8

#32693817 v1

no valid claim for relief can be alleged or proved against them"). As the *IAM* court explained, "this determination is consistent with the [Supreme] Court's rulings concerning domestic States under the antitrust laws," which "may sue, but not be sued."  *Id*. at 572 n.19 (citing *Georgia v. Evans*, 316 U.S. 159 (1942), and *Parker*, 317 U.S. at 341); *see also id.* at 570 n.17 (distinguishing *City of Lafayette, La. v. Louisiana Power & Light Co.*, 435 U.S. 389, 412 (1978)).[6]

Plaintiff also argues in its Supplemental Briefing [ECF No. 87] that the Foreign Sovereign Immunities Act ("FSIA") provides the venue for suits against a foreign state brought under antitrust laws. This is incorrect as the FSIA does not alter the application of antitrust laws. *See IAM*, 477 F. Supp. at 571–72 (rejecting similar argument and holding that the legislative history of the FSIA does not support a conclusion that a foreign nation may be sued for violating U.S. antitrust laws).

In conclusion, Defendants do not have a duty under the cited federal antitrust laws. Whether this stems "from the literal meaning of the words 'person' and 'corporation'" or instead "from the purpose, the subject matter, the context and the legislative history of the statute," the Supreme Court has been clear for 80 years that sovereigns cannot be sued as defendants under federal antitrust laws and that should resolve this case. *Parker*, 317 U.S. at 351. If an intent to regulate *domestic* sovereigns "is not lightly to be attributed to Congress," *id*., the myriad foreign-relations concerns that would arise if U.S. law were interpreted to directly regulate the conduct of foreign sovereigns abroad make clear that this result too "is not lightly to be attributed to Congress." *Id*.

---

[6] *City of Lafayette* allowed municipalities, unlike States, to be sued as antitrust defendants because "[c]ities are not themselves sovereign." 435 U.S. at 412. Foreign sovereigns, of course, are sovereigns.

9

### ii. The cited Missouri statutes do not apply to Defendants.

On the face of the pleading, Plaintiff does not plead that Defendants violated any Missouri statute. Plaintiff argues in the Default Hearing Brief that Defendants breached duties pursuant to Missouri law not to engage in anticompetitive acts. Again, it is improper for Plaintiff to import a Missouri statutory claim into its common law claim. But in any event, this argument fails.

With regard to Missouri's anticompetitive law, this Court has observed that "Missouri antitrust law is to be 'construed in harmony with ruling judicial interpretations of comparable federal antitrust statutes[.]'" *Process Controls Int'l, Inc. v. Emerson Process Mgmt.*, 753 F. Supp. 2d 912, 920 n.3 (E.D. Mo. 2010) (citing Mo. Stat. Ann. § 416.141).[7] Accordingly, Missouri courts will likely hold that Missouri antitrust law, like its federal counterpart, does not apply to or impose any duty on foreign states.

In addition, the Missouri statutes Plaintiff relies on do not appear to apply to foreign states. For instance, the Missouri Merchandising Practices Act ("MMPA") defines "person" as follows:

> (5) **"Person"** [means] any natural person or his legal representative, partnership, firm, for-profit or not-for-profit corporation, whether domestic or foreign, company, foundation, trust, business entity or association, and any agent, employee, salesman, partner, officer, director, member, stockholder, associate, trustee or cestui que trust thereof[.]

Mo. Stat. Ann. § 407.010. The definition does not include any governmental entity within or without the state of Missouri. Therefore, foreign states like Defendants are not within the scope of "person." *See also Bottorff-Arey v. Truman State Univ.*, 633 S.W.3d 508, 515 (Mo. Ct. App. 2021) (noting that the MMPA states that the definition of "person" means the individuals and entities

---

[7] Mo. Stat. Ann. § 416.141 states that "Sections 416.011 to 416.161 shall be construed in harmony with ruling judicial interpretations of comparable federal antitrust statutes."

listed in § 407.010(5); concluding that the MMPA does not expressly or impliedly indicate that it applies to public corporations).

Further, Missouri's highest court has held that Missouri statutes generally have no extraterritorial effect:

> [T]his Court [Supreme Court of Missouri] applies the long-standing presumption that Missouri statutes, absent express text to the contrary, apply only within the boundaries of this state and have no extraterritorial effect. *Rositzky v. Rositzky*, 329 Mo. 662, 46 S.W.2d 591, 595 (Mo. 1931) ("[I]t is the settled law and almost axiomatic that the statutes of a state or country prescribe the law within its boundaries only, and have no extraterritorial force or effect."); *Stanley v. Wabash St. L. & P. Ry. Co.*, 100 Mo. 435, 13 S.W. 709, 710 (Mo. 1890) ("The legislative authority of every state must spend its force within the territorial limits of the state.").

*Tuttle v. Dobbs Tire & Auto Ctrs., Inc.*, 590 S.W.3d 307, 311 (Mo. 2019). The court noted that "[t]his presumption against the extraterritorial application of laws is not a novel concept, as it is recognized federally and by other states." *Id.* at n.10 (collecting federal and state cases including *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247 (2010)). Here, neither the Missouri antitrust law nor the MMPA expressly provides extraterritorial force to a foreign sovereign's conduct in a foreign country. Accordingly, the presumption against extraterritoriality reinforces that foreign sovereigns are not "persons" under Missouri's antitrust statutes.

Moreover, an interpretation that the cited Missouri statutes apply to foreign sovereigns would likely violate the U.S. Constitution. The U.S. Supreme Court has held for over 100 years that state law does not apply extraterritorially—that is, state law does not apply beyond a state's borders. *See, e.g.*, *New York Life Ins. Co. v. Head*, 234 U.S. 149, 161 (1914) ("it would be impossible to permit the statutes of [one State] to operate beyond the jurisdiction of that State"; describing this rule as "so obviously the necessary result of the [U.S.] Constitution that it has rarely been called into question"); *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 571 & n.16 (1996) (citing

11

*Head* and reaffirming that states cannot regulate extraterritorially). *See also Friedman v. Boucher*, 580 F.3d 847, 854 (9th Cir. 2009) (finding it "obvious" that state law "does not apply extraterritorially"); *Carolina Trucks & Equip., Inc. v. Volvo Trucks of N. Am., Inc.*, 492 F.3d 484, 489-90 (4th Cir. 2007) ("The principle that state laws may not generally operate extraterritorially is one of constitutional magnitude," "reflect[ing] core principles of constitutional structure.").

Accordingly, Defendants who are foreign states do not have a statutory duty under Missouri's anticompetitive law.

The conclusion that neither federal nor state anticompetitive statutes apply to Defendants is not surprising, given that Defendants are governmental entities, not businesses. Indeed, much of Plaintiff's "hoarding" claim is based on allegations concerning a Chinese government ban on exports of PPE. *See* Complaint, ¶ 175. As discussed in detail below, an export ban is a quintessential regulatory and sovereign act that can only be conducted by a sovereign state and not entities that may be subject to anticompetitive laws.

### B.  Plaintiff fails to prove the "direct effect" alleged in the Complaint.

In addition, the Eighth Circuit in *Bailey* did not hold that Plaintiff had adequately *proved* that the alleged hoarding had a direct effect in the United States; it instead found that "Missouri has plausibly *alleged* that the defendants' anticompetitive behavior had 'a direct effect in the United States.'" *Mo. ex rel. Bailey v. People's Republic of China*, 90 F.4th 930, 939 (8th Cir. 2024) (citing 28 U.S.C. § 1605(a)(2)) (emphasis original). In fact, the Eighth Circuit noted that this issue is a "close[] call." *Id.* at 938.

As such, Plaintiff still has to present with evidence satisfactory to this Court that Defendants' alleged hoarding of masks "led to an immediate shortage in Missouri, which then allowed the defendants to enter the market and sell lower-quality masks." *Id. See BP Chems. Ltd.*

12

*v. Jiangsu SOPO Corp. Ltd.*, 420 F.3d 810, 816 (8th Cir. 2005) (a plaintiff "has the burden to *prove* an [FSIA] exception applies" (emphasis added)); *Gen. Elec. Cap. Corp. v. Grossman*, 991 F.2d 1376, 1382 (8th Cir. 1993) (after a prima facie showing that a defendant is entitled to immunity, "the plaintiff seeking to litigate in the United States then has the burden of showing that an exception applies"). In this regard, Plaintiff has failed to show adequate legal and factual basis for any legal nexus between the alleged anticompetitive acts and the injury to establish its "claim or right to relief."

*Even if* we assume Defendants—a foreign sovereign and governmental entities—engaged in the hoarding as Plaintiff alleges, the chain of events that led to the alleged injury is filled with intervening causes. Plaintiff's expert actually agrees on this point when he alleges that PPE hoarding affects the infection rates, which affects the implementation of sequestration and lockdown policies, which affects production, which affects economic damages. *See* Addendum to Plaintiff's Expert Report, ECF No. 87-1 at 1; Plaintiff's Supplemental Briefing, ECF No. 87 at 21.

One of the most obvious independent intervening causes is the coronavirus itself: how and when it got to the United States and Missouri; its transmissibility in different environment; its numerous variants, each with different transmissibility and infectious rates, etc. For example, had the virus become increasingly less infectious and/or less likely to make people sick over time, or had the vaccines been more effective or available to the public sooner,[8] Missouri might not have needed PPE as much as it did. But how coronavirus spread and how it changed over time is

---

[8] In this regard, Plaintiff's expert started with a flawed premise that "without PPE hoarding, infection rates would have been reduced," Addendum to Plaintiff's Expert Report, ECF No. 87-1 at 1, because the alleged PPE hoarding is not the only factor that affects the infection rates, and possibly not even the dominant one.

13

unforeseeable and something "over which [Defendants] ha[ve] absolutely no control." *Hahn v. Monsanto Co.*, 39 F.4th 954, 962 (8th Cir. 2022) (internal citation omitted).

The responses of the U.S. society to the pandemic are also intervening causes. Defendants have no control over how the federal government depleted national PPE stockpiles before the pandemic even began, when the federal government invoked the Defense Production Act, or the pandemic's disruptions to global supply chains. Defendants also have no control over if and when the U.S., state, and local governments issued travel bans, started quarantine, issued gathering restrictions and stay-at-home orders,[9] mandated mask wearing, started vaccination, or took any other measures to suppress the spread of the coronavirus.

Likewise, Defendants have no control over how businesses in the U.S. and Missouri reacted to the pandemic, or how many people intended to get vaccinated, not to mention people's travel to and within Missouri, which may lead to interpersonal transmission. Any of these examples could affect the containment of the pandemic and the need for PPE.

Further, the medical professionals' understanding of the efficacy of PPE (in particular masks), the governments' and the public's acceptance of or skepticism toward using masks are also independent intervening factors over which Defendants have no control.

Accordingly, we submit that Plaintiff fails to establish its "claim or right to relief" with regard to the ***legal nexus*** between the alleged anticompetitive acts and the alleged injury due to the myriad intervening causes.

---

[9] In fact, Plaintiff's expert expressly acknowledges that governmental policies directly affect Plaintiff's economic damages. *See* Addendum to Plaintiff's Expert Report, ECF No. 87-1 at 1 ("The economic damages can be traced directly to sequestration and lockdown policies implemented at the Federal level.").

**C. The alleged anticompetitive acts are sovereign acts and should be deemed valid under the act of state doctrine.**

As noted above, an export ban on PPE is an act of a state whose legitimacy cannot be attacked. *See, e.g.*, *Bridas S.A.P.I.C. v. Gov't of Turkm.*, 447 F.3d 411, 417 (5th Cir. 2006) (noting that imposition of export ban by the Government of Turkmenistan was exercise of sovereign powers); *MOL, Inc. v. Peoples Republic of Bangladesh*, 736 F.2d 1326, 1329 (9th Cir. 1984) ("right to regulate imports and exports [is] a sovereign prerogative" that cannot be exercised by a private party); *USA Tropicals v. Zim Am. Isr. Shipping*, No. CV 2005-5836 (RJD) (MDG), 2006 U.S. Dist. LEXIS 22454, at *5-6 (E.D.N.Y. Mar. 30, 2006) ("[r]egulating exports is an exercise of the government's police power and is not the type of action by which private parties can engage in commerce"); *cf. Velasquez v. Gen. Consulate of Mexico*, No. C-92-3745 EFL, 1993 U.S. Dist. LEXIS 2977, at *1 (N.D. Cal. Mar. 4, 1993) ("the control of the entry of goods into a nation was one which only a sovereign could perform"). "Every sovereign State is bound to respect the independence of every other sovereign State, and the courts of one country will not sit in judgment on the acts of the government of another done within its own territory." *Underhill v. Hernandez*, 168 U.S. 250, 252 (1897). It is not just an act of grace and comity by the United States but in "the United States' 'reciprocal self-interest'" to avoid "'retaliatory or reciprocal actions' in [foreign] courts." *Republic of Hungary v. Simon*, No. 23-867, 640 U.S. ___, 2025 WL 567336, at *9, *10 (Feb. 21, 2025) (quoting *National City Bank of N.Y. v. Republic of China*, 348 U.S. 356, 362 (1955)).

As we noted before, the United States itself has imposed an export ban on PPE.[10] The act of state doctrine requires reviewing courts to "deem valid" the acts of foreign sovereigns taken

---

[10] *See* ECF No. 34 at 9 (citing Presidential Memorandum on Allocating Certain Scarce or Threatened Health and Medical Resources to Domestic Use (Apr. 3, 2020)) (available at

#32693817 v1

within their own jurisdictions. *W.S. Kirkpatrick & Co. v. Environmental Tectonics Corp., Int'l*, 493 U.S. 400, 409 (1990). In every case where the act of state doctrine is applicable, "the relief sought or the defense interposed would have required a court in the United States to declare invalid the official act of a foreign sovereign performed within its own territory." *Id.* at 405.

II. **The "lenient standard" proposed by Plaintiff for factual findings is improper and the Court should not rely on Plaintiff's trial exhibits due to their lack of trustworthiness.**

In addition, given that this Court has to decide whether Plaintiff has established a prima facie case as a matter of law, we submit that the evidentiary standard proposed by Plaintiff is improper and that the Court should not rely on Plaintiff's trial exhibits in rendering any judgment due to their lack of trustworthiness.

Plaintiff in its Default Hearing Brief proposes that this Court adopt a "lenient standard" for factual findings. ECF No. 79, at 67 (citing *Owens v. Republic of Sudan*, 864 F.3d 751, 785 (D.C. Cir. 2017)). The proposed "lenient" evidentiary standard is inapposite because *Owens* is a terrorism case. The court specifically noted that "[t]his lenient standard is particularly appropriate ***for a FSIA terrorism case***, for which firsthand evidence and eyewitness testimony is difficult or impossible to obtain from an absent and likely ***hostile sovereign***." *Owens*, 864 F.3d at 785 (emphases added). The court reasoned that in terrorism cases, firsthand evidence is difficult to obtain:

> [F]irsthand evidence of terrorist activities is difficult, if not impossible, to obtain. Victims of terrorist attacks, if not dead, are often incapacitated and unable to testify about their experiences. Perpetrators of terrorism typically lie beyond the reach of the courts and go to great lengths to avoid detection. Eyewitnesses in a state that sponsors terrorism are similarly difficult to locate and may be unwilling to testify for fear of retaliation.

---

https://trumpwhitehouse.archives.gov/presidential-actions/memorandum-allocating-certain-scarce-threatened-health-medical-resources-domestic-use/) (last visited February 26, 2025).

#32693817 v1

*Owens*, 864 F.3d at 787. *See also Han Kim v. Democratic People's Republic of Korea*, 774 F.3d 1044 (D.C. Cir. 2014) (allowing expert declarations, noting that because the DPRK refused to participate in the litigation and intimidated potential eyewitnesses, the plaintiffs could offer no direct evidence of their relative's torture and killing by the DPRK).

Here, Plaintiff does not plead any terrorist acts. Plaintiff also fails to explain why China should be deemed a "hostile sovereign" or why firsthand evidence or eyewitness testimony is not required. As such, the Court should not adopt the proposed "lenient standard" for factual findings.

But in any event, we respectfully submit that Plaintiff's trial exhibits admitted by the Court fail to satisfy even a lenient evidentiary standard and should not be relied on by the Court in rendering any judgment. Some of Plaintiff's trial exhibits, such as journal and newspaper articles, are usually not proper evidence if challenged by the defendant. They are improper evidence because of their nature of being untrustworthy as inadmissible hearsay. This untrustworthiness remains the same whether or not Defendants are present to challenge the exhibits' admissibility, and the Court should not rely on them merely because Defendants are absent.

In fact, even in terrorism cases, courts have found that inadmissible hearsay is not proper evidence in the default judgment context without a defendant present to object. *See, e.g.*, *Hutira v. Islamic Republic of Iran*, 211 F. Supp. 2d 115, 123 (D.D.C. 2002) (holding that allowing a newspaper article into evidence based on the defendants' failure to object "would clearly undermine the purpose of excluding hearsay in general and 28 U.S.C § 1608(e) in particular" and that "[i]t would be wholly inappropriate to permit" an FSIA plaintiff "to satisfy the requirement of 28 U.S.C. § 1608(e) by submitting an unsubstantiated newspaper article"); *Alinejad v. Islamic Republic of Iran*, No. 19-cv-3599 (GMH), 2023 U.S. Dist. LEXIS 125650, at *22 n.9 (D.D.C. July

6, 2023) (finding the majority of documentary evidence in support of the plaintiff's motion for default judgment including news articles and press releases "inadmissible, irrelevant, or both").

Further, although a properly qualified expert may base his opinion upon otherwise inadmissible sources of information under certain conditions, *see* Fed. R. Evid. 703, the expert's opinion cannot be used "as a conduit for introducing hearsay under the guise that the testifying expert used the hearsay as the basis of his testimony." *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 136 (2d Cir. 2013) (internal citation omitted). "The appropriate way to adduce factual details of specific past events is, where possible, through persons who witnessed those events." *Id.*

As for Plaintiff's introduction of governmental reports under the "public records" exception, we note that the assumption that "an administrative body's findings may be assumed to be trustworthy . . . has substantially diminished force when extended to the sources outside the investigative agency from which the agency culls the information for its report." *Brown v. Sierra Nev. Mem'l Miners Hosp.*, 849 F.2d 1186, 1190 (9th Cir. 1988). Accordingly, we submit that this Court should not rely on Plaintiff's government reports with heavy reliance on third-party materials and limited trustworthiness of findings. They, too, cannot serve as "evidence *satisfactory to the court*" as required by 28 U.S.C. § 1608(e).

### III. Conclusion

Actions against foreign sovereigns in the United States courts "raise sensitive issues concerning the foreign relations of the United States, and the primacy of federal concerns is evident." *Verlinden B.V. v. Cent. Bank of Nig.*, 461 U.S. 480, 493 (1983). Because Plaintiff fails to present a legally sufficient prima facie case with respect to the "hoarding" claim, Plaintiff fails to "establish[] [its] claim or right to relief." Therefore, this Court should refrain from entering a

default judgment to avoid harming the U.S.-China relations and instead dismiss the remaining "hoarding" claim *sua sponte*.[11]

---

[11] *See also Jackson v. People's Republic of China*, 596 F. Supp. 386, 387 (noting that the court previously set aside a default judgment in that case by considering, *inter alia*, "the far reaching ramifications that the ultimate decision could have on Sino-American relations").

Respectfully submitted,

**THE CHINA SOCIETY OF PRIVATE INTERNATIONAL LAW**
c/o International Law Institute of Wuhan University
Wuchang District
Wuhan, China 430072


**WATTERS WOLF BUB & HANSMANN**

*/s/ Jackie M. Kinder*
Jackie M. Kinder, #52810MO
600 Kellwood Pkwy, St. 120
Saint Louis, Missouri 63017
636-798-0639 – Phone
636-798-0693 – Fax
jkinder@wwbhlaw.com
*Local Counsel for The China Society of Private International Law*


**CERTIFICATE OF SERVICE**

The undersigned certifies that a true and correct copy of the foregoing was electronically filed by using the Court's electronic filing system to be served on all counsel of record entered in the case this 27th day of February, 2025.


*/s/ Jackie M. Kinder*

20

#32693817 v1