UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

THE STATE OF MISSOURI, ex rel,
ANDREW T. BAILEY, in his official
Capacity as Missouri Attorney General,

    Plaintiff,

    vs.                      Cause No. 1:20-CV-00099 SNLJ

THE PEOPLE'S REPUBLIC OF CHINA,
THE COMMUNIST PARTY OF CHINA,
NATIONAL HEALTH COMMISSION OF
PEOPLE'S REPUBLIC OF CHINA, MINISTRY
OF EMERGENCY MANAGEMENT OF THE
PEOPLE'S REPUBLIC OF CHINA, PEOPLE'S
GOVERNMENT OF HUBEI PROVINCE, PEOPLE'S
GOVERNMENT OF WUHAN CITY, WUHAN
INSTITUTE OF VIROLOGY and CHINESE
ACADEMY OF SCIENCES,

    Defendants.

================================================================

BENCH TRIAL

BEFORE THE HONORABLE STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE

JANUARY 27, 2025

================================================================

Reported by:

Alison M. Garagnani, CCR #475, CSR, RMR, CRR
Official Court Reporter
United States District Court
555 Independence, Room 3100
Cape Girardeau, MO 63703
(573) 331-8832

```
 1                         APPEARANCES

 2    For Plaintiff:

 3    Mr. Joshua M. Divine
      OFFICE OF THE ATTORNEY GENERAL
 4    OF MISSOURI - Jefferson City
      207 West High Street
 5    P.O. Box 899
      Jefferson City, MO 65102-0899
 6
      and
 7
      Mr. Samuel Charles Freedlund
 8    ATTORNEY GENERAL OF MISSOURI - St. Louis
      815 Olive Street
 9    Suite 200
      St. Louis, MO 63101
10
      No Appearance for Defendant
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
1              (THE PROCEEDINGS BEGAN AT 2:01 P.M.)

2              THE COURT:  Good afternoon.

3              This case is the State of Missouri versus the

4    People's Republic of China, et al.  The Case Number is

5    20CV099.

6              Counsel, announce your appearances.

7              MR. FREEDLUND:  Good afternoon, Your Honor.

8              Sam Freedlund from the Missouri Attorney General's

9    Office on behalf of the Plaintiff.

10             MR. DIVINE:  Good afternoon, Your Honor.

11             Joshua Divine on behalf of the Plaintiff.

12             THE COURT:  All right.  This matter is set today

13   for a bench trial after the Court of Appeals for the Eighth

14   Circuit having determined that there was one remaining count

15   that was sufficient for a trial.  I'm referring to the Court

16   of Appeals case of State of Missouri ex rel Andrew Bailey in

17   his official capacity as the Missouri Attorney General versus

18   the People's Republic of China.  That citation is 90 F. 4th

19   930 from last year.

20             Counsel, I have quite a few legal questions that I

21   want to review with you.  I've done that informally as well

22   sometime ago.  I appreciate also the supplemental briefing

23   that was filed on January 8th.  That was very helpful along

24   with the addendum to the economic impact of the Covid-19

25   pandemic, the damages report from your damages expert
```

1    Dr. Haslag at the University of Missouri.  All that was very

2    helpful.  It allowed me to understand all of the complicated

3    issues a little bit better.  The case is obviously unique.

4           Let me just start with a few questions of counsel.

5    Now that the Eighth Circuit has determined that there's

6    really only one entity that is subject to suit and all of the

7    other entities that were originally sued are really

8    subdivisions of the People's Republic of China, and by that I

9    mean the National Health Commission, the PRC, the Ministry of

10   Emergency Management of the People's Republic of China, the

11   Ministry of Civil Affairs, People's Government of the main

12   province, People's Government of Wuhan City, the Communist

13   Party of China, the Chinese Academy of Sciences, and the

14   Wuhan Institute of Virology.

15          So I think that that has been decided definitively

16   by the Eighth Circuit.  So we're really dealing with one

17   entity, as I say, and all those other entities are really

18   subdivisions of the People's Republic of China.

19          Everybody agrees with that; right?

20          MR. FREEDLUND:  Yes, Your Honor.

21          THE COURT:  The second issue that I just want to

22   address briefly is the service of process on all of these

23   various entities.  That was the subject of a lot of unique

24   law, and but you litigated that extensively now, and so the

25   Court has ruled in favor of the State of Missouri that

1    service of process on the People's Republic of China and all

2    those entities was properly performed.

3        So now, as I say, we're left with the single count

4    from the original complaint, which had multiple counts.  The

5    single count deals with the allegations that the Defendant --

6    I'll just call the Defendant by the People's Republic of

7    China -- hoarded PPE protective material like masks and other

8    material, and as such committed violations of both federal

9    and state statutes mainly pertaining to monopolies, the

10   prohibition against monopolies.

11       Let me first ask, though, in the original briefing

12   there was a claim for a common law count of hoarding, and are

13   you really pursuing that count anymore or just the two

14   statutory -- principal statutory counts under state and

15   federal law?

16       MR. FREEDLUND:  First, Your Honor, would you mind

17   if I stood up at the podium?

18       THE COURT:  No.  No. That's what you should do.

19       MR. FREEDLUND:  Thank you, Your Honor.

20       We're asserting a common law claim in the

21   alternative.  If this Court did not find that the federal or

22   state statutes applied, we still believe that the common law

23   provides Missouri the right to relief.  But if -- I would say

24   that the federal state statutes are our primary claim.

25       THE COURT:  Yeah, well, I'm just concerned that if

1    there was indeed a common law claim, why would that not be

2    subsumed by the statutory claims, the Missouri statutory

3    claim, or repeat by indication perhaps, something like that?

4    Although that pertains to statutes.

5            And you cited that in your -- in your reference to

6    the common law claim in your supplemental brief, but you

7    referred to pages 70 to 100, I think.  I looked again at

8    those pages.  I didn't see much about the common law claim.

9    Can you call my attention to that?

10           I don't want to give you short shrift if that's

11   something you really want to pursue, although obviously the

12   statute findings have a lot more weight, perhaps, to it.

13           MR. FREEDLUND:  Yes.  Yes, Your Honor.

14           Again, I think it's one of those things where it's

15   solely to the extent that the Court concluded that the

16   statutory claims did not apply or in this context, which we

17   obviously believe they do, we have the common law claim as an

18   alternative, and I think the alternative in the common law

19   exists as a traditional tort, so you have the classic four

20   elements of tort understanding that many of these common law

21   claims are when there's a federal or state statute that

22   covers or is subsumed, if you will.

23           THE COURT:  Oh, great.

24           MR. FREEDLUND:  Yeah, exactly.

25           THE COURT:  So if we're in the briefing now, you

1  reference pages 70 -- see 70 to 100 in the original brief,

2  and I can't find it.

3          MR. FREEDLUND:  Let's look, Your Honor.  So I think

4  in the reference --

5          THE COURT:  It's not that big of a deal, but, like

6  I said, I don't want to give you short shift on anything.

7          MR. FREEDLUND:  No.  Absolutely, Your Honor.

8          So the reference to 70 to 100 was each of the

9  sections that we believe, if the Court was inclined to go

10 down the common law route, lays out each of the classic tort

11 elements.

12         THE COURT:  I guess what I'm getting at what is the

13 common law route?

14         What are the elements of the cause of action.

15         MR. FREEDLUND:  Absolutely, Your Honor.

16         THE COURT:  Where is that in the briefing?

17         MR. FREEDLUND:  So -- so we referenced the classic

18 four prong approach to the tort.  So you have the duty.  And

19 we talk about different -- different statutes that we believe

20 if they did not apply, would still give rights to a common

21 law duty, treaty rights, that sort of thing.

22         We talk about a breach.  We talk about our belief

23 that China breached these duties, and then the causation

24 element.

25         THE COURT:  Well, was there a citation to any

1   Missouri case about a common law cause of action for --

2          MR. FREEDLUND:  No, Your Honor.

3          THE COURT:  -- for hoarding?

4          MR. FREEDLUND:  No, Your Honor.

5          THE COURT:  Okay.  That clarifies it.  So I'm not

6   going to pay much more attention to it.

7          MR. FREEDLUND:  Yes, Your Honor.

8          THE COURT:  Okay.  No cases, in other words.

9          All right.  So just to get through some of the

10  ground rules, I think it would be appropriate for me to read

11  into the record some of these standards of review and

12  evidentiary standards that the Court will abide by, but then

13  I have some other questions too about the cause of action and

14  the elements of the causes of action.

15         So, again, this is a default judgment case because

16  there's no response from the Defendant.  I know that there

17  were amicus briefs filed at the trial level two to three

18  years ago by entities in support of the Chinese entities, but

19  nothing has been filed since the Court of Appeals.  So we're

20  proceeding per under the Foreign Sovereign Immunities Act,

21  the FSIA, which is 28, United States Code, Section 1603(a).

22         And under that statute it states that, "No judgment

23  by default shall be entered by a court of the United States

24  or of a State against a foreign state, a political

25  subdivision thereof, or an agency or instrumentality of a

1    foreign state, unless the claimant establishes his claim or

2    right to relief by evidence satisfactory to the Court."

3            And that really tracks the standard for

4    presentation of evidence in support for any default judgment.

5            MR. FREEDLUND:  Yes, Your Honor.

6            THE COURT:  So and the next thing is to prevail in

7    the FSIA default proceeding the "Plaintiff must present a

8    legally sufficient prima facie case, in other words, a

9    legally sufficient evidentiary basis for a reasonable jury to

10   find for the Plaintiff."  Well, I'm the jury in the case.

11           And finally, "In reviewing a plaintiff's claim

12   against a defaulting defendant subject to the FSIA, the Court

13   may accept as true the plaintiff's uncontroverted evidence."

14   And that's really what we're dealing with altogether is an

15   abundance of uncontroverted evidence, and we'll get to that

16   in a minute.

17           So and there's other parts to the evidentiary

18   standard, and I'll just quote from the case called -- well,

19   it's against the Islamic Republic of Iran, which was cited in

20   the briefs.  In any event, the cite that -- the quotation is,

21   "Given the difficulty of obtaining direct proof of the types

22   of conduct for which the FSIA provides a remedy, the statute

23   permits courts to credit indirect evidence and to impose a

24   lower evidentiary burden than they might apply in a different

25   context."

1          Now, that quotation is taken from quite a few

2    different cases.  So that's clearly established law.  And

3    then there's also the idea that a plaintiff may submit

4    multiple types of evidence to support FSIA claims, including

5    testimony, documentation, and affidavits all under the

6    Foreign Sovereign Immunities Act.

7          So the Court -- in your briefing you set out all

8    those standards at great length, and I'm well aware of them,

9    and I'll take -- I'll abide by all those standards.  And in

10   particular, the idea that in this kind of case the

11   evidentiary proof is not quite -- you don't have to submit

12   quite the degree of proof that you would in an ordinary case

13   given a default judgment status and also the kind of case

14   that we're dealing with.

15         So let me go into the legal questions that I have.

16   Let's start with the federal antitrust law.  And this is

17   Subsection 2.  And that's the principal statute that, I

18   believe, that you're proceeding on where it says, "It is

19   unlawful for any person to monopolize or to attempt to

20   monopolize or combine or conspire with any other person or

21   persons to monopolize any part of the trade or commerce with

22   or for any other state or with foreign nations."

23         Now, it appears to the Court that that is the

24   principal statute that you want to proceed under; is that

25   right?

1      MR. FREEDLUND:  Yes, Your Honor.  I would say

2   that's the principal statute, and that 15 U.S.C.15 and 15

3   U.S.C. 15c are different vehicles by which we may assert a

4   breach of statute, so you have the direct injuries and the

5   parens patriae injuries.

6      THE COURT:  The parens patriae is the Missouri, but

7   the first of the Missouri cases based on the federal

8   antitrust law; right?

9      MR. FREEDLUND:  Yes, sir.

10      So 15 U.S.C. 15c is a federal parens patriae

11   statute, so it expressly says that state attorneys' general

12   may bring that parens patriae under the Missouri --

13      THE COURT:  That's all clear.

14      MR. FREEDLUND:  Yeah.

15      THE COURT:  But let's go to Subsection 2 that

16   you've stated in your briefs where it says, "It is unlawful

17   for any person to monopolize or attempt to monopolize or

18   combine or conspire with any other person or persons to

19   monopolize any part of the trade or commerce with states or

20   with foreign nations."

21      So my first question is, then, it addresses it's

22   unlawful for "any person" to do that.  So we're not dealing

23   with a person in the literal sense.  We're dealing with the

24   Chinese -- or the People's Republic of China.  So I'm a

25   little concerned about that.

1              And I know that your response on page 4 of your

2    supplemental brief is this:  "For the purpose of the relevant

3    antitrust statutes, a person is defined broadly to include

4    corporations and associations existing under or authorized by

5    laws of either the United States, the laws of any of the

6    territories, the laws of any state, or the laws of any

7    foreign country."

8              So it talks about corporations and associations

9    existing under the laws of this country or any other country.

10   So how does a person -- or if a person is defined as the

11   corporation or association, how does that include a foreign

12   country?

13             MR. FREEDLUND:  Sure, Your Honor.  That's -- two

14   responses.  First, the Supreme Court has interpreted that

15   definition to include broader than just legal corporations

16   and legal associations.  I've referenced the Court to the

17   State of Georgia v.  Pennsylvania Railroad case which we cite

18   in our brief that includes states as a person within the

19   meaning of federal antitrust.  And then --

20             THE COURT:  I'm not concerned about the states

21   being -- being plaintiffs or even foreign countries being

22   plaintiffs.  I'm concerned, though, about whether a foreign

23   country can be a defendant under that definition.

24             MR. FREEDLUND:  Yes, Your Honor.

25             THE COURT:  Because a foreign country is not a

1  corporation or an association.  It's something completely

2  different.

3          MR. FREEDLUND:  But I think the definition of

4  "person," whether it's used in the context of a plaintiff for

5  15 U.S.C. 15 or 15(2), it all relates back to the same

6  definition under the statute.  And so when courts -- the

7  Supreme Court is interpreting that definition of "person,"

8  it -- which applies to the different parts of the chapter, it

9  covers both -- it covers not just the legal corporations and

10  states it covers -- and to look at 15 U.S.C. 15b, it

11  expressly contemplates foreign states and instrumentalities

12  of foreign states as in that definition.

13          THE COURT:  Well, it says, "recognizing that a

14  foreign state may be treated as a person under antitrust law

15  and limiting the republic to cover a plaintiff foreign -- a

16  plaintiff foreign state."

17          Now, here's what I'm getting at.  We have done

18  independent research.  We've not found any case anywhere in

19  which a foreign country like the People's Republic of China

20  was treated as a person if that person was a defendant as

21  opposed to a plaintiff.

22          Do you have any cases ever that treat a foreign

23  country as a plaintiff for purposes of the antitrust laws?

24          MR. FREEDLUND:  Your Honor, I think this case is

25  certainly unique.

1           THE COURT:  That's what I'm getting at.

2           MR. FREEDLUND:  Absolutely.

3           THE COURT:  We have a unique case, something that's

4    not come up before.

5           MR. FREEDLUND:  Absolutely.

6           THE COURT:  But you're asking me to go out on a

7    limb, and I may well do that, but that's why I'm asking the

8    question.

9           You found no cases, then?

10          MR. FREEDLUND:  I found no cases.

11          I don't believe or I don't necessarily agree that

12   this is going out on a limb just, again, given the fact that

13   the definition of person it's the same -- they all relate

14   back to the same statutory definition contained in, I

15   believe, 2 -- 15 U.S.C. 2 or not 15 U.S.C. -- 15 U.S.C. 1.

16   I'd have to double check that citation, but it's all one

17   definition of person.

18          And when the different parts of the statute

19   expressly contemplate foreign states as a person -- and I

20   hear what Your Honor is saying, which is that's in the

21   context of a plaintiff rather than a defendant, but the

22   statute doesn't make any distinction between plaintiff and

23   defendant for the definition of person.

24          THE COURT:  Well, the problem is the statute says a

25   person is -- what is it?  A person includes corporations and

1    associations existing under laws, and it doesn't say anything

2    about nations or foreign countries or --

3         MR. FREEDLUND:  I think if you're looking at 15

4    U.S.C. 15b -- and, again, I recognize that that is a --

5    contemplating this -- the context of this particular statute

6    a foreign state as a plaintiff, but it expressly contemplates

7    that foreign states and instrumentalities of foreign states

8    may utilize the Sherman Antitrust Act in the petition to

9    recover --

10        THE COURT:  Well, I guess, once again, my point is

11   there's been no case ever in which a state like Missouri has

12   sued a foreign country as opposed to a corporation or an

13   association incorporated under the laws of the foreign

14   country.

15        MR. FREEDLUND:  I'm not aware of any case.  I don't

16   necessarily agree that it's going out on a limb, I think, but

17   I agree there's not -- I'm not aware of any case.

18        THE COURT:  I'm not saying I'm not willing to do

19   that either.

20        So, you know, the Court of Appeals really didn't

21   address that issue.  Their issue was entirely about whether

22   the People's Republic of China had sovereign immunity, and

23   they based their determination based on, let's see, 28 U.S.C.

24   Section 1605(a)(2)(3), which deals with an act outside of the

25   territory of the United States in connection with a

1    commercial activity of the foreign state elsewhere, and that

2    act causes a direct effect in the United States.

3            So, again, my point there is that the Court of

4    Appeals wasn't addressing the question that I have here.

5    They were addressing whether there's sovereign immunity and

6    that idea that it advocates sovereign immunity for claims

7    based on an act outside of the territory of the state and so

8    on.  That presupposes that there's an underlying cause of

9    action or causes of action.  So that really doesn't address

10   the point I'm trying to raise, I guess.

11           MR. FREEDLUND:  Well, I think the Eighth Circuit's

12   opinion recognized that -- I guess I believe used language

13   recognizing that this fits pretty squarely in the intent of

14   anticompetitive violations.

15           And if I can draw the Court's attention to --

16           THE COURT:  No, I read it for the fifth time today,

17   and that -- there was no reference whatsoever to any of the

18   statutes that you-all cite in support of the -- your causes

19   of action.

20           MR. FREEDLUND:  There's no reference, but in the --

21   as the Eighth Circuit said, our allegations, which we believe

22   we've proven with the factual evidence we've submitted,

23   identified classic anticompetitive behavior, except on a

24   country-wide scale, and I think that that's the key language

25   to show that this was the context of what the Eighth Circuit

1    was contemplating.

2         THE COURT:  Now you're going to the merits of the

3    thing, and, frankly, I assume that you're going to ask to

4    introduce all of the evidence you have, and I don't have much

5    problem on the merits.  I just want to make sure that the law

6    provides for this kind of lawsuit against a foreign country

7    when we've never seen it before, so...

8         MR. FREEDLUND:  You're right.  You're right that

9    we're not aware of any cases, Judge.

10        And I -- I think that the -- the tenor of the

11   Eighth Circuit's decision when you look at the heavy economic

12   analysis they did not only the tort that I just provided but

13   also talking about cause and effect and these different

14   things, I think that it directly contemplates the kind of

15   anticompetitive claims that Missouri, of course, will argue,

16   and then this wasn't directly held in the Eighth Circuit, but

17   it's part and parcel of the claim --

18        THE COURT:  They were talking about the merits.

19   They were talking about this idea of hoarding, and I

20   understand -- I understand that altogether.  I think that

21   you've put together a very good case on that part.  Again,

22   there's nobody here to argue against you so because it's a

23   default judgment.

24        But let me go to -- on the other hand, I have to do

25   an independent inquiry about this again.  Let's just jump

1    over to the Missouri statute.

2         MR. FREEDLUND:  Yes, Your Honor.

3         THE COURT:  That's Section 416.031.1.  Now, this

4    statute says that it provides that, "Every contract,

5    combination or conspiracy in restraint of trade or commerce

6    in this state is unlawful."

7         That's what you're banking on on that claim;

8    correct?

9         MR. FREEDLUND:  Correct, Your Honor.

10        THE COURT:  Well, the wording of that statute

11   implies that -- that there's more than one party to the

12   activities.  "Every contract," that means more than one

13   party.  "Every combination or conspiracy," that's more than

14   one party.  And "restraint of trade or commerce in this state

15   is unlawful."  So it looks like that might not apply

16   technically because we're not -- we're only dealing with one

17   party, the People's Republic.

18        MR. FREEDLUND:  Well, I would also direct the Court

19   to the 416.031.12 which talks about the monopolization.  It

20   says, "It is unlawful to monopolize, attempt to monopolize,

21   conspire to monopolize."  And we see that as effectively

22   adopting language similar to or identical to the 15 U.S.C.

23   15.

24        THE COURT:  Because -- and I agree with you because

25   the -- the statute is couched in not in conjunctive terms.

1   It says, "or."  "It's unlawful for any person to monopolize

2   or attempt to monopolize or combine or conspire with other

3   persons."  So I think that's -- that's your best bet.

4           And, again, my only concern about the whole thing

5   is what is the definition of a person, because the statute

6   says a person is neither corporation or association.  It

7   doesn't say it's a foreign government.  Well, let's go on,

8   though.

9           I'm completely satisfied with the idea that the

10  Attorney General is authorized to bring suits like this under

11  those other statutes.  I would question about the parens

12  patriae idea.

13          So mainly when it comes to damages, let's say that

14  there's a huge judgment in favor of the State of Missouri on

15  that parens patriae count, what happens to the money?  Does

16  it does it go to the people?  Is it distributed to all the

17  citizens or does it go to the state government?

18          I'm just -- I'm just curious about that actually.

19  I'm not --

20          MR. FREEDLUND:  That's a good question, Your Honor,

21  I confess that after -- if a judgment is awarded and we

22  collect on it, I'm not frankly exactly sure.  I would imagine

23  it's a determination made by either the State or the Attorney

24  General or somebody -- somebody else.

25          THE COURT:  Well, I know that there have been cases

1   brought under that kind of theory, but I've always wondered

2   what happens if you get a big verdict.  I mean, where does it

3   go?

4          MR. FREEDLUND:  My -- I've litigated parens patriae

5   cases before, but my experience is generally when it's

6   seeking injunctive relief.  And I've -- of course, there's

7   other parens patriae damages relief.  I just don't have

8   experience with that.

9          THE COURT:  That's more curiosity on my part than

10  anything else.

11         So how do you wish to proceed?  You've got your

12  original briefing along with a multitude of exhibits and

13  attachments.

14         MR. FREEDLUND:  Yes, Your Honor.  So I have a

15  brief.  I styled it as an opening, although it may be a mid

16  argument at this point, if the Court would entertain that.

17         THE COURT:  Sure.

18         MR. FREEDLUND:  And then I would ask -- as Your

19  Honor predicted, ask for the evidence to be admitted and the

20  Court take it under consideration unless there are any other

21  questions, of course.

22         THE COURT:  Okay.

23         MR. FREEDLUND:  Your Honor, Missouri brought this

24  lawsuit to remedy the significant harms the People's Republic

25  of China inflicted on Missouri and its citizens through

1    misrepresentations and hoarding of PPE in the early

2    monopolization of the Covid-19 pandemic.

3              China knew about the human-to-human

4    transmissibility months before the rest of the world.  Rather

5    than share this vital information, China lied and devised a

6    scheme to hide this information.

7              China then used its specialized knowledge to engage

8    in a massive state commercial campaign to hoard PPE from the

9    rest of the world seizing American factories and buying up

10   America's supply of PPE.  All while at the same time falsely

11   insisting that there was no evidence of human-to-human

12   transmission of the virus.

13             Missouri submitted, as we've discussed, significant

14   government reports and evidence demonstrating both China's

15   misrepresentations and the harms they've inflicted on the

16   state and its citizens.  I think the most unflinching of

17   these reports is likely the redacted Department of Homeland

18   Security memorandum which directly concludes that the Chinese

19   government intentionally concealed the severity of Covid-19

20   from the international community while it hoarded medical

21   supplies.  And then --

22             THE COURT:  Did I read that that was released

23   within the last couple of days --

24             MR. FREEDLUND:  So the last couple of days --

25             THE COURT:  -- from the new administration?

1          MR. FREEDLUND:  I'm aware that the CIA updated the

2     statement in the last couple of days to say that it believes

3     Covid was a lab leak.  The report that we got was published

4     as a classified document in May of 2020 and was only

5     declassified a couple years later, but it was declassified

6     before we submitted our FSIA brief with redactions.

7          THE COURT:  But it may not be -- okay.  I got it.

8          MR. FREEDLUND:  The COVID-19 pandemic and China's

9     actions during the pandemic have inflicted incredible harm on

10    the State of Missouri and its citizens, and the overall harm

11    as opposed to the harm from the hoarding of PPE exclusively

12    ranges in the hundreds of billions of dollars.

13         Now, Missouri's economic expert Dr. Joseph Haslag

14    of the University of Missouri has been able to calculate just

15    how much of the overall harm is directly and specifically

16    attributable to China's hoarding of PPE.

17         THE COURT:  And that's one question that I had of

18    you all initially that there was going to be a lot of damages

19    due to Covid regardless of the hoarding claim.

20         And so how do you separate that out from the

21    overall amount of damages?

22         And so your expert witnesses help considerably with

23    that.

24         MR. FREEDLUND:  Thank you, Your Honor.

25         And as our expert witness noted, and this is the

1   absolute most conservative calculation of direct harms

2   suffered by the State as a result of China's hoarding of PPE

3   amounts over $8 billion.

4          This case has a long history, as I know the Court

5   is aware, but one aspect that has remained consistent is

6   China's refusal to participate in this lawsuit or respond to

7   Missouri's claims.  But the -- and now the language of the

8   Foreign Sovereign Immunity Act requires that Missouri provide

9   China liability as we've already discussed.  And Missouri

10  believes in its pretrial brief and supplemental briefing that

11  it has demonstrated several different statutory causes of

12  action by which the State may obtain relief.

13         THE COURT:  I think there's just two left or maybe

14  three if you count the parens patriae.

15         MR. FREEDLUND:  Three.  And I think the parens

16  patriae, we would count that just because it's a little --

17  it's not -- the federal statutes are -- or the names of the

18  federal statutes aren't clear, but 15C is technically a

19  separate statute.  It's not part of 15.  Excuse me.  So

20  it's -- we would call that a separate cause of action.

21         THE COURT:  Three total then?

22         MR. FREEDLUND:  I'm sorry?

23         THE COURT:  Three total that you're pursuing?

24         MR. FREEDLUND:  Yes.

25         And then so, as I was discussing, Dr. Haslag is

1  a -- demonstrated that Missouri has suffered approximately

2  $8.04 billion at the most conservative estimate of damages

3  that the State has suffered from China's hoarding of PPE.

4        Now, of this 8.04 billion over $384.4 million was

5  net general revenue Missouri would have already collected

6  through the second quarter of 2023 but for China's hoarding

7  activities with the remaining amount being the discounted

8  value of the revenue Missouri would have collected after the

9  second quarter of 2023 into the future for about 30 years if

10  not for China's hoarding.

11        Additionally, Missouri has provided further direct

12  evidence of over $122 million of additional independent

13  damages from direct heightened costs Missouri was required to

14  expend to secure the limited more expensive PPE that survived

15  China's campaign of hoarding.

16        THE COURT:  Now, that's the most easy -- the

17  easiest element of damages for me to understand at least.

18        Why don't you explain again how you arrived at

19  that.

20        MR. FREEDLUND:  Yes, Your Honor.

21        THE COURT:  The increase in what had to be paid for

22  PPE in Missouri.

23        MR. FREEDLUND:  Yes, Your Honor.

24        So that is -- and not -- it's even more narrow than

25  in Missouri I would say.  It's paid by the Missouri state

1    government specifically.  So it's expenses paid by the

2    Missouri state government for the heightened PPE between the

3    end of April -- so, I believe, April 24, 2020, and

4    December -- end of December 2020.  So we're looking at a

5    snapshot.

6            We acknowledge that it's certainly underinclusive

7    because the State did not start tracking this information

8    until the end of April, so there was a period March to the

9    end of April 2020 that the State was purchasing our -- by our

10   estimations that it breaks down to about an additional 20

11   million and change that we're not asserting in this

12   particular lawsuit but was likely spent between the end of

13   March and the end of April just by breaking down kind of the

14   averages per day.

15           THE COURT:  So this is a figure, though, of what

16   Missouri had to pay for the PPE that -- if it were not for

17   the hoarding?

18           MR. FREEDLUND:  Yes, Your Honor.

19           THE COURT:  And when you say how much Missouri had

20   to pay, are you talking about the citizens or the Government

21   or what?

22           MR. FREEDLUND:  This is direct expenditures only by

23   the State.  So --

24           THE COURT:  Which provided the PPE to the citizens,

25   is that --

1    MR. FREEDLUND:  I believe so, yeah.  The citizens,

2  hospitals, different things like that.

3    THE COURT:  Okay.  Okay.

4    MR. FREEDLUND:  And -- and we talk about it a

5  little bit in our initial briefing.  I believe this is around

6  page 100 of our initial briefing.  This is also likely

7  underinclusive because we -- some of the state records say

8  that it's for medical expenses.  Medical expenses presumably

9  meant Covid expenses and purchasing of respirators and things

10  like that, but we -- anything that was not clearly marked as

11  Covid we set aside.

12    So this is underinclusive in a couple of respects,

13  but it's kind of our -- our assertion of direct expenditure

14  damages as opposed to lost net revenue, which is the 8.04

15  billion.

16    THE COURT:  Right.

17    MR. FREEDLUND:  And so combining all of that

18  together we get approximately $8.162 billion of damages.

19  That's the 8.04  plus the expenditure.  Both the federal and

20  the State antitrust provisions provide a treble damages

21  provision that the Court may award treble damages, which gets

22  us to the final amount of --

23    THE COURT:  24 billion something.

24    MR. FREEDLUND:  -- $24,488,825,457, Your Honor.

25    Missouri has demonstrated the liability and damages

1    of China, its alter egos, subdivisions, and

2    instrumentalities, and therefore respectfully requests that

3    the Court enter a judgment against defendants jointly and

4    severally in the amount of -- the amount I just stated, the

5    over $24 billion plus future accruing interest.

6            I'm happy to address any other questions the Court

7    may have if the Court would like to --

8            THE COURT:  Well, why don't we go to the how do you

9    want to introduce your evidence.  Do you want to --

10            MR. FREEDLUND:  Yes, sir.

11            So we have printed copies that we can submit to the

12    Court.

13            THE COURT:  Well --

14            MR. FREEDLUND:  We also per the scheduling order

15    filed everything already back in --

16            THE COURT:  Yeah.  So, if you wish, I've got the

17    list of exhibits here that were attachments to your briefing,

18    and that would be to the principal briefing on Document 79.

19            So are you asking for the admission of all those

20    exhibits?  Is that what you want to do?

21            MR. FREEDLUND:  A little bit different.  We're

22    asking -- so a couple of days after that for the scheduling

23    order we filed the written exhibits that we're asking --

24    there's nothing in here that wasn't attached.  I think

25    there's a couple of articles and things that we didn't

1    include in the written exhibits.  We would ask that those be

2    introduced into evidence rather than the attachments to

3    the --

4              THE COURT:  Well, you've also got this affidavit

5    from you about the Plaintiff's trial exhibits.  That's

6    Document 80.

7              MR. FREEDLUND:  Yes, Your Honor.

8              So the affidavit is just introducing what each of

9    the exhibits is in evidence and then that it's a true and

10   accurate copy of each of these exhibits.

11             THE COURT:  Okay.  Just authenticating them?

12             MR. FREEDLUND:  Yes, Your Honor.

13             THE COURT:  Okay.  So, again, I've got 32 exhibits?

14   More than that?  Let's see --

15             MR. FREEDLUND:  I have --

16             THE COURT:  No, 38.

17             MR. FREEDLUND:  -- 38 exhibits.

18             THE COURT:  38, yeah.

19             MR. FREEDLUND:  We would ask that Plaintiff's

20   Exhibits 1 through 38 be admitted into evidence, Your Honor.

21             THE COURT:  There being no objection, the Court

22   will receive all of those exhibits into evidence, although

23   some of these things like newspaper articles might be subject

24   to objection had somebody been here to object, but this is a

25   default judgment, and I have the discretion and authority to

1    admit all of these exhibits, which I will do.

2           (Plaintiff's Exhibits 1 through 38 were admitted

3    into evidence.)

4           MR. FREEDLUND:  Thank you, Your Honor.

5           I'm happy to address any other questions the Court

6    may have or discuss anything you want to.

7           THE COURT:  Do you want to introduce the

8    supplemental from your expert?

9           MR. FREEDLUND:  You're absolutely right, Your

10   Honor.

11          We would also move to attach and admit the

12   supplemental expert report as a supplement to our original

13   expert report, which was just admitted into evidence.

14          THE COURT:  From Dr. Haslag?

15          MR. FREEDLUND:  Yes, Your Honor.

16          THE COURT:  That's Document 87-1?

17          MR. FREEDLUND:  Yes, Your Honor.

18          THE COURT:  So that will be admitted too.

19          (Plaintiff's Exhibit Document 87-1 was admitted

20   into evidence.)

21          THE COURT:  Like I said, that was a very helpful

22   addendum.

23          MR. FREEDLUND:  Thank you, Your Honor.

24          THE COURT:  So, as I kind of indicated, I'm much

25   inclined to hold that the evidence is sufficient to prove all

1   of the allegations that you've raised.

2          You know, the only question I really have is that

3   legal question about how the statute applies to a foreign

4   nation as opposed to other entities like corporations or

5   associations.

6          And so with that do you have a -- do you want to

7   submit a proposed order and I'll take the case under

8   advisement?  Because I'm sure that I will have some edits to

9   what you wish to present.

10          MR. FREEDLUND:  Yes, Your Honor.  And we're happy

11   to submit a supplemental brief, if you would like, on the

12   question of the person just to provide --

13          THE COURT:  Why don't do you that.  I would

14   appreciate that.  As you can see, that that's a little

15   concern I have still.  It's a matter that the Eighth Circuit

16   did not directly address.

17          And so I feel I think in the exercise of caution if

18   you could submit supplemental briefing on that one issue, but

19   otherwise, as I said today, I think the evidence that you

20   have submitted is sufficient to generate a -- a judgment in

21   favor of the State of Missouri.  So...

22          MR. FREEDLUND:  Thank you, Your Honor.

23          Would you like -- is there a date you would like

24   the supplemental briefing?

25          THE COURT:  At your convenience.  This has been

1      going on quite a while.  So do you want a month so?

2                  MR. FREEDLUND:  That sounds great.

3                  And then we would, Your Honor,  I think submit both

4      the supplemental briefing and --

5                  THE COURT:  And the proposed order and judgment?

6                  MR. FREEDLUND:  -- the proposed order and judgment

7      at the same time.

8                  THE COURT:   Yeah, that's fine.

9                  MR. FREEDLUND:  Thank you, Your Honor.

10                 THE COURT:  And when I get that, I'm inclined to,

11     as I mentioned, to grant judgment in favor of the State.

12                 MR. FREEDLUND:  Thank you, Your Honor.

13                 THE COURT:  All right.  With that is there anything

14     further?

15                 MR. FREEDLUND:  Nothing from the Plaintiff, Your

16     Honor.

17                 THE COURT:  Okay.  Well, thank you all for your

18     courtesy, and court is adjourned then.

19                 (PROCEEDINGS CONCLUDED AT 2:40 P.M.)

20

21

22

23

24

25

1                    C E R T I F I C A T E

2

3        I, Alison M. Garagnani, Registered Merit Reporter and

4   Certified Realtime Reporter, hereby certify that I am a duly

5   appointed Official Court Reporter of the United States

6   District Court for the Eastern District of Missouri.

7        I further certify that the foregoing is a true and

8   accurate transcript of the proceedings held in the

9   above-entitled case.  And I further certify that the

10  foregoing pages contain an accurate reproduction from taped

11  proceedings had on that date, transcribed to the best of my

12  ability.

13       I further certify that this transcript contains pages 1

14  through 32 inclusive and that this reporter takes no

15  responsibility for missing or damaged pages of this

16  transcript when same transcript is copied by any party other

17  than this reporter.

18            Dated Cape Girardeau, Missouri, this 3rd day of

19  April, 2025.

20

21  -------------------------------------------
    /s/Alison M. Garagnani
22  Alison M. Garagnani, CCR, CSR, RMR.
    Official Court Reporter
23

24

25