**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

THE STATE OF MISSOURI, ex rel. CATHERINE L. HANAWAY, in her official capacity as Missouri Attorney General,

Plaintiff,

v.

THE PEOPLE'S REPUBLIC OF CHINA, THE COMMUNIST PARTY OF CHINA, NATIONAL HEALTH COMMISSION OF THE PEOPLE'S REPUBLIC OF CHINA, MINISTRY OF EMERGENCY MANAGEMENT OF THE PEOPLE'S REPUBLIC OF CHINA, MINISTRY OF CIVIL AFFAIRS OF THE PEOPLE'S REPUBLIC OF CHINA, PEOPLE'S GOVERNMENT OF HUBEI PROVINCE, PEOPLE'S GOVERNMENT OF WUHAN CITY, WUHAN INSTITUTE OF VIROLOGY, and THE CHINESE ACADEMY OF SCIENCES,

Defendants.

Case No. 1:20-cv-00099-SNLJ

**MEMORANDUM OF LAW IN SUPPORT OF MOTION BY THE PEOPLE'S GOVERNMENT OF HUBEI PROVINCE AND THE CHINESE ACADEMY OF SCIENCES <u>TO VACATE DEFAULT JUDGMENT AND DISMISS THE ACTION</u>**

WHITE & CASE

701 Thirteenth Street, NW
Washington, DC 20005

August 31, 2026

*Counsel for the People's Government of Hubei Province and the Chinese Academy of Sciences*

# TABLE OF CONTENTS

Page

INTRODUCTION ....................................................................................................1

ARGUMENT.........................................................................................................3

I. The Default Judgment Must Be Vacated Under Rule 60(b)(4) Because This Court Lacks Subject-Matter Jurisdiction.................................................4

A. This Court Lacks Subject-Matter Jurisdiction Under The FSIA .........5

B. This Court Lacks Subject-Matter Jurisdiction Because The Case Presents A Non-Justiciable Political Question....................................8

II. The Default Judgment Must Be Vacated Under Rule 60(b)(4) Because This Court Lacks Personal Jurisdiction Over Defendants ..............................9

III. The Default Judgment Must Be Vacated Under Rule 60(b)(6) Due To “Extraordinary Circumstances”.........................................................11

CONCLUSION ....................................................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Acree v. Republic of Iraq*,
370 F.3d 41 (D.C. Cir. 2004) ........ 12

*Alberti v. Empresa Nicaraguense de La Carne*,
705 F.2d 250 (7th Cir. 1983) ........ 5

*Alfred L. Snapp & Son v. Puerto Rico, ex rel., Barez*,
458 U.S. 592 (1982) ........ 13

*Argentina v. Weltover*,
504 U.S. 607 (1992) ........ 5-6

*Baker v. Carr*,
369 U.S. 186 (1962) ........ 8

*Baldwin v. Credit Based Asset Servicing & Securitization*,
516 F.3d 734 (8th Cir. 2008) ........ 4

*Banco Nacional De Cuba v. Sabbatino*,
376 U.S. 398 (1964) ........ 13

*Bell Helicopter Textron v. Islamic Republic of Iran*,
734 F.3d 1175 (D.C. Cir. 2013) ........ 2, 4-5

*Bituminous Cas. v. Scottsdale Ins.*,
2012 WL 5985635 (E.D. Mo. Nov. 29, 2012) ........ 3

*Buck v. Davis*,
580 U.S. 100 (2017) ........ 12

*Campbell v. Bennett*,
47 F.4th 1362 (11th Cir. 2022) ........ 2, 10

*Cmty. Fin. Grp. v. Republic of Kenya*,
663 F.3d 977 (8th Cir. 2011) ........ 6

*Coney Island Auto Parts Unlimited v. Burton*,
607 U.S. 155 (2026) ........ 3-4

*Double D Spotting Serv. v. Supervalu, Inc.*,
136 F.3d 554 (8th Cir. 1998) ........ 14

*Drexel Burnham Lambert Grp. v. Comm. of Receivers for A.W. Galadari*,
12 F.3d 317 (2d Cir. 1993) ........ 6

*Eckert v. Titan Tire*,
514 F.3d 801 (8th Cir. 2008) .......... 13

*FG Hemisphere v. Dem. Republic of Congo*,
447 F.3d 835 (D.C. Cir. 2006) .......... 3

*First Fid. Bank v. Gov't of Antigua*,
877 F.2d 189 (2d Cir. 1989) .......... 3

*Garb v. Republic of Poland*,
440 F.3d 579 (2d Cir. 2006) .......... 5

*Grant ex rel. United States v. Zorn*,
107 F.4th 782 (8th Cir. 2024) .......... 12

*Greater St. Louis Constr. Laborers Welfare Fund v. A.L.L. Constr.*,
2014 WL 1648731 (E.D. Mo. Apr. 23, 2014) .......... 10

*Local 78, Asbestos, Lead & Hazardous Waste Laborers v. Termon Constr.*,
2003 WL 22052872 (S.D.N.Y. Aug. 30, 2003) .......... 10

*Missouri ex rel. Bailey v. People's Republic of China*,
90 F.4th 930 (8th Cir. 2024) .......... 1-2, 5, 6

*Morgan Distrib. v. Unidynamic*,
868 F.2d 992 (8th Cir. 1989) .......... 9

*Mwani v. Al Qaeda*,
600 F. Supp. 3d 36 (D.D.C. 2022) .......... 10

*Oberstar v. FDIC.*,
987 F.2d 494 (8th Cir. 1993) .......... 3

*Owens v. Republic of Sudan*,
864 F.3d 751 (D.C. Cir. 2017), *rev'd on other grounds sub nom.*,
*Opati v. Republic of Sudan*, 590 U.S. 418 (2020) .......... 11

*Peralta v. Heights Med. Ctr.*,
485 U.S. 80 (1988) .......... 9

*Practical Concepts v. Republic of Bolivia*,
811 F.2d 1543 (D.C. Cir. 1987) .......... 4

*Raymond v. United States*,
933 F.3d 988 (8th Cir. 2019) .......... 11

*Republic of Sudan v. Harrison*,
587 U.S. 1 (2019) .......... 9

*Ryko Mfg. v. Eden Servs.*,
823 F.2d 1215 (8th Cir. 1987) .......... 14

*Sitzer v. Nat'l Ass'n of Realtors*,
420 F. Supp. 3d 903 (W.D. Mo. 2019) .......... 15

*Spectrum Stores v. Citgo Petroleum*,
632 F.3d 938 (5th Cir. 2011) .......... 8-9, 13

*Strange v. Islamic Republic of Iran*,
2016 WL 10770678 (D.D.C. May 6, 2016) .......... 10

*Terenkian v. Republic of Iraq*,
694 F.3d 1122 (9th Cir. 2012) .......... 7

*Tex. Indus. v. Radcliff Materials*,
451 U.S. 630 (1981) .......... 12

*Topchian v. JPMorgan Chase Bank, N.A.*,
760 F.3d 843 (8th Cir. 2014) .......... 14

*Trace X Chem. v. Canadian Indus.*,
738 F.2d 261 (8th Cir. 1984) .......... 14, 15

*Underhill v. Hernandez*,
168 U.S. 250 (1897) .......... 13

*United States v. Empire Gas*,
537 F.2d 296 (8th Cir. 1976) .......... 14

*Virtual Countries v. Republic of South Africa*,
300 F.3d 230 (2d Cir. 2002) .......... 7

*Watkins v. Lundell*,
169 F.3d 540 (8th Cir. 1999) .......... 11-12

*Zschernig v. Miller*,
389 U.S. 429 (1968) .......... 9, 13

## STATUTES AND RULES

28 U.S.C. § 1330(b) .......... 9

28 U.S.C. § 1391(f)(4) .......... 4

28 U.S.C. § 1605(a)(2) .......... 5

28 U.S.C. § 1606 .......... 3, 12

28 U.S.C. § 1608 ........................................................................................1, 5, 9-10, 11

28 U.S.C. § 1610(c) ........................................................................................ 4

Fed. R. Civ. P. 4(j) ........................................................................................ 9

Fed. R. Civ. P. 5(a)(2) ........................................................................................2, 9-10

Fed. R. Civ. P. 12(h)(3) ........................................................................................ 1

Fed. R. Civ. P. 60(b) ........................................................................................3, 4, 11-12

**OTHER AUTHORITIES**

International Health Regulations, Article 3, May 23, 2005, 2509 U.N.T.S. 79, 83 ..... 13

1 Moore’s Federal Practice - Civil § 5.03 (2026) ........................................................9-10

# INTRODUCTION

The State of Missouri seeks to hold various Chinese-government entities, including Hubei Province and CAS, liable for alleged injuries to Missouri and its residents from the COVID-19 pandemic. Even before any Defendant appeared, and accepting the Complaint's inflammatory allegations as true, proceedings in this Court and the Eighth Circuit resulted in the dismissal of almost all of Missouri's claims for lack of subject-matter jurisdiction. Only the PPE-hoarding allegations survived, and they later transmogrified into new antitrust claims — never served on Defendants — and a ***$24.5 billion default judgment*** against all Defendants.

Now that Missouri has taken steps to effect service of that default judgment, Hubei Province and CAS make a limited appearance and move to vacate the default judgment and to dismiss Missouri's remaining claims for lack of subject-matter and personal jurisdiction.

In concluding that the PPE-hoarding claim sufficiently alleged subject-matter jurisdiction under the FSIA's "commercial activity" exception, the Eighth Circuit made clear it had merely concluded that the *allegations* supporting the claim were sufficient, not that subject-matter jurisdiction was definitively established. *E.g.*, *Missouri ex rel. Bailey v. People's Republic of China*, 90 F.4th 930, 939 (8th Cir. 2024) ("[W]hat we can say at this point is that Missouri has plausibly *alleged* that the defendants' anticompetitive behavior had 'a direct effect in the United States.'" (emphasis in original)). In allowing the claim "to proceed beyond a jurisdictional dismissal on the pleadings," the Eighth Circuit admonished: "Missouri must still prove it[.]" *Id.* For good measure, the Eighth Circuit then cited Rule 12(h)(3), which requires dismissal if a district court determines "at any time" that it lacks subject-matter jurisdiction, and 28 U.S.C. § 1608(e), which prohibits a default judgment against a foreign state unless the plaintiff "establishes his claim or right to relief by evidence satisfactory to the court." *Id.* at 939-40. The Eighth Circuit remanded "for further proceedings consistent with

this opinion." *Id.* at 940.

Yet on remand Missouri did not try to establish this Court's subject-matter jurisdiction under the FSIA "by evidence satisfactory to the court," nor did this Court make any findings or conclusions about subject-matter jurisdiction after the § 1608(e) hearing. *See* ECF 79 at 3, 5; ECF 94 at 29; ECF 95. Neither Missouri nor this Court addressed what "Missouri must still prove" to establish subject-matter jurisdiction. In fact, the record developed on remand establishes that this Court *lacks* subject-matter jurisdiction because the FSIA's "commercial activity" exception *does not* apply. This Court therefore must vacate the default judgment and dismiss this action in its entirety. *See, e.g.*, *Bell Helicopter Textron v. Islamic Republic of Iran*, 734 F.3d 1175, 1186 (D.C. Cir. 2013) (affirming vacatur of default judgment under Rule 60(b)(4) and dismissal of the action where § 1608(e) hearing record showed "commercial activity" exception did not apply). The record also establishes that this Court lacks subject-matter jurisdiction because this action presents a non-justiciable political question and encroaches on prerogatives entrusted solely to the Federal Government's Political Branches.

The default judgment also must be vacated for the additional reason that this Court lacks personal jurisdiction over Hubei Province and CAS. Missouri never served *any* Defendant with the new antitrust claims underlying the default judgment. *See, e.g.*, *Campbell v. Bennett*, 47 F.4th 1362, 1366-67 (11th Cir. 2022) (vacating judgment as void for failure to serve new claim under Rule 5(a)(2)). Missouri did not even properly serve CAS with the original Complaint.

Beyond the threshold lack of jurisdiction, the default judgment should be vacated given its extraordinary circumstances, including the geopolitical implications of imposing an unprecedented "treble damages" award against China at the behest of a state government for alleged pandemic-related injuries. The default judgment violates the Act of State Doctrine by adjudicating the official acts of a foreign country in its own

territory. The default judgment also imposes liability based on antitrust claims that were never pleaded or served on Defendants, and it misapplies the elements of those claims. Compounding the errors, the default judgment imposes "treble damages" even against foreign-state Defendants immune from such punitive measures under the FSIA. 28 U.S.C. § 1606. More generally, the default judgment never specifies which Defendants engaged in what conduct, instead lumping all Defendants together, without any legal or factual basis for doing so.

All told, the Court must vacate its default judgment, along with the entry of default, and dismiss this action in its entirety.

## ARGUMENT

Courts have long recognized the "strong judicial policy against default judgments" in favor of "adjudication on the merits." *Oberstar v. FDIC.*, 987 F.2d 494, 504 (8th Cir. 1993) (quoted in *Bituminous Cas. v. Scottsdale Ins.*, 2012 WL 5985635, at *3 (E.D. Mo. Nov. 29, 2012) (Limbaugh, Jr., J.)). This policy is especially strong in cases against foreign states. *See FG Hemisphere v. Dem. Republic of Congo*, 447 F.3d 835, 838 (D.C. Cir. 2006) (reversing denial of Rule 60(b) motion, and emphasizing "foreign sovereign's interest — and our interest in protecting that interest — in being able to assert defenses based on its sovereign status"); *First Fid. Bank v. Gov't of Antigua*, 877 F.2d 189, 196 (2d Cir. 1989) ("Courts go to great lengths to avoid default judgments against foreign sovereigns or to permit those judgments to be set aside.").

Hubei Province and CAS move to vacate the default judgment under Rule 60(b), which authorizes relief from a final judgment if the judgment is "void" (Rule 60(b)(4)) or for "any other reason that justifies relief" (Rule 60(b)(6)). The Supreme Court recently confirmed as a general matter that a Rule 60(b) motion, including under Rule 60(b)(4), must be filed "within a reasonable time," adding that "in the context of a default judgment, it might be reasonable for a defendant not to seek relief before

learning about a plaintiff's attempted enforcement." *Coney Island Auto Parts Unlimited v. Burton*, 607 U.S. 155, 160 (2026). Hubei Province and CAS are comfortably within a reasonable period, particularly given the strong policy against default judgments against foreign states: Missouri, signaling that this action is not merely symbolic, recently requested service of the default judgment (ECF 102), but has not yet sought an order allowing enforcement under 28 U.S.C. § 1610(c).

## I. THE DEFAULT JUDGMENT MUST BE VACATED UNDER RULE 60(b)(4) BECAUSE THIS COURT LACKS SUBJECT-MATTER JURISDICTION

The Eighth Circuit has recognized that a judgment is "void," and thus must be vacated under Rule 60(b)(4), "if the rendering court lacked jurisdiction." *Baldwin v. Credit Based Asset Servicing & Securitization*, 516 F.3d 734, 737 (8th Cir. 2008).

Federal courts in the District of Columbia, where venue always lies in FSIA cases (28 U.S.C. § 1391(f)(4)), have developed extensive case law addressing Rule 60(b)(4) motions by foreign states. In *Practical Concepts v. Republic of Bolivia*, the D.C. Circuit observed a general principle it held applicable to foreign-state defendants: "[T]he defendant may refrain from appearing, thereby exposing himself to the risk of a default judgment. When enforcement of the default judgment is attempted, however, he may assert his jurisdictional objection." 811 F.2d 1543, 1547 (D.C. Cir. 1987).

*Bell Helicopter* applied that principle after Iran moved to vacate a default judgment. 734 F.3d at 1181-82. The D.C. Circuit agreed with the district court that the § 1608(e) hearing record did not in fact support the "commercial activity" exception that the default judgment relied on to overcome Iran's presumptive immunity. *Id*. at 1182-86 (finding no "direct effect" in United States). The D.C. Circuit thus affirmed the district court's vacatur of the default judgment as void and affirmed dismissal of the Complaint for lack of subject-matter jurisdiction. *Id*. The same result is warranted here.

**A. This Court Lacks Subject-Matter Jurisdiction Under The FSIA**

Crediting — for purposes of this Motion — the evidence Missouri has submitted to this Court, the record refutes rather than supports Missouri's contention that Defendants engaged in "commercial activity" having a "direct effect" in the United States. 28 U.S.C. § 1605(a)(2). Like the plaintiffs in *Bell Helicopter*, Missouri fails to satisfy its burden of establishing an exception to FSIA immunity. *See Bell Helicopter*, 734 F.3d at 1181-86; *Bailey*, 90 F.4th at 939 ("Missouri must still prove it[.]"); 28 U.S.C. § 1608(e) (requiring plaintiff to "establish[] his claim or right to relief by evidence satisfactory to the court").

***Commercial Activity.*** The Eighth Circuit looked to Missouri's *allegations* of PPE "production, purchasing, and import and export," and supposed takeovers of "factories that made masks on behalf of American companies," and accepted that, as alleged, "defendants' anticompetitive actions were commercial in 'nature.'" 90 F.4th at 938. But Missouri's subsequent evidence reflects not commercial acts (like *buying* PPE businesses) but sovereign acts (*expropriating* or *nationalizing* businesses). *See, e.g.*, Pl. Ex. 6, ECF 79-1 at 372 (reflecting China acted not commercially but "understandabl[y] as part of its efforts to address an internal health crisis"); Pl. Ex. 9, ECF 80-9 at 33 (contending that, in response to pandemic, China "nationalized control" of entire "medical supply chain"); *see also Garb v. Republic of Poland*, 440 F.3d 579, 586-87 (2d Cir. 2006) ("Expropriation is a decidedly sovereign — rather than commercial — activity."); *Alberti v. Empresa Nicaraguense de La Carne*, 705 F.2d 250, 254 (7th Cir. 1983) (recognizing "nationalization" as "quintessential government act").

Missouri's evidence further indicates that China "directed its bureaucracy, local governments and industry to secure critical technology, medical supplies" and "[t]o ensure sufficient domestic supplies to counter COVID-19." ECF 79-1 at 372. Such regulatory action is sovereign conduct that no private player could take. *See Argentina v. Weltover*, 504 U.S. 607, 614-15 (1992) (holding that foreign state's acts are

"commercial" when it "acts, not as a regulator of a market, but in the manner of a private player within it"); *Cmty. Fin. Grp. v. Republic of Kenya*, 663 F.3d 977, 980-81 (8th Cir. 2011) ("right to regulate imports and exports is a sovereign prerogative").

Missouri's evidence also reflects that PPE purchasing, at least at any scale to affect the market, was conducted by *non*-state actors at China's sovereign directive. *See, e.g.*, ECF 80-9 at 33-34 (reporting purchases "at the direction of the PRC government" by non-state entities "Risland" and "Greenland Australia"). Any marginal PPE importing *by Defendants* was not the "anticompetitive behavior" forming the "gravamen" of Missouri's case, *Bailey*, 90 F.4th at 938-39, but "tangential commercial activities" with "only an attenuated connection" to the basis of the claim, i.e., allegedly "cornering" the PPE. *Drexel Burnham Lambert Grp. v. Comm. of Receivers for A.W. Galadari*, 12 F.3d 317, 330 (2d Cir. 1993) (declining to "rewrite[]" commercial-activity exception to authorize jurisdiction over "essentially sovereign" acts).

***Direct Effect***. The Eighth Circuit recognized that the "direct effect" inquiry presented the "closest call" and emphasized that Missouri had only *alleged* that Defendants' purported anticompetitive conduct had a "direct effect in the United States." 90 F.4th at 937-39 ("To be direct, an effect must 'follow as an *immediate* consequence of the defendants' activity." (quoting *Weltover*, 504 U.S. at 618) (cleaned up) (emphasis in *Bailey*)). Missouri's subsequent evidence forecloses any finding of a direct effect.

Missouri put forward no evidence that any Defendant broke any contract to ship PPE to the United States during the relevant period. *See generally* Pl.'s Trial Br., ECF 79; *see also* Pl. Ex. 16, ECF 79-2 at 251-301 (listing all Missouri vendors for PPE during relevant period, none of which is identified as a Chinese company). Missouri's direct-effect theory rests on unsupported speculation that, had China not allegedly stockpiled PPE during its health emergency, then more PPE might eventually have reached

Missouri and at a lower price. Pl.'s Trial Br. 94, 107. But such "distant[,] potential" impact cannot satisfy the requirement that an effect be "immediate" to be "direct." *Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1139 (9th Cir. 2012) (holding no direct effect absent contract requiring U.S. performance). Any U.S. impact would be impermissibly "mediated by numerous actions by third parties." *Virtual Countries v. Republic of South Africa*. 300 F.3d 230, 237-38 (2d Cir. 2002) (finding effect not direct where it "depended crucially on variables independent of the [foreign state]"); *see Terenkian*, 694 F.3d at 1139 (holding any U.S.-market effect cut off by intervening necessities of "finding potential U.S. purchasers and negotiating mutually acceptable agreements"). Missouri's evidence indicates that, in the March 2020 timeframe, China delivered PPE to various countries around the world, meaning that any additional PPE may have never reached U.S. shores at all. Pl. Ex. 45, ECF 79-4 at 42; Pl. Ex. 6, ECF 79-1 at 357. Missouri put forward no evidence of anything but downstream, disparate market effects — a "tangled causal web" that cannot "provide the requisite immediacy to establish jurisdiction." *Virtual Countries*, 300 F.3d at 237-38.

Missouri's evidence also identifies extensive intervening acts that further undermine any "direct" effect in the United States. *Terenkian*, 694 F.3d at 1133. For example: "As the virus spread to other countries, their demand for PPE also increased and resulted in additional pressure on dwindling supplies." Pl. Ex. 24, ECF 79-2 at 476. "In response" to these pressures, "[b]y March 2020, numerous governments around the world had placed export restrictions on PPE, which in turn contributed to higher costs." Pl. Ex. 24, ECF 79-2 at 476 (discussing export restrictions, including by India, France, and Germany). The United States itself removed PPE from the domestic market through policies like promoting PPE exports to China, donating PPE abroad, and imposing tariffs on Chinese imports including PPE. *E.g.*, Juliet Eilperin et al., *U.S. sent millions of face masks to China early this year, ignoring pandemic warning signs*,

Wash. Post, Apr. 18, 2020 (cited at Compl. ¶ 134 n.76); Pl. Ex. 24, ECF 79-2 at 476 ("[T]hrough early 2020 the US was using trade policy to protect domestic medical supply manufacturers from otherwise-less-expensive imports with import tariffs, thus raising the price of PPE faced by US hospitals and consumers.").

Missouri's evidence, in short, forecloses its reliance on the "commercial activity" exception.

**B. This Court Lacks Subject-Matter Jurisdiction Because The Case Presents A Non-Justiciable Political Question**

Missouri's PPE-hoarding claim, however styled, is also barred by the political-question doctrine, which deprives courts of subject-matter jurisdiction where there is, for example, "a lack of judicially discoverable and manageable standards for resolving [the issue]," "the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion," or "the potentiality of embarrassment from multifarious pronouncements." *Baker v. Carr*, 369 U.S. 186, 217 (1962).

As the Fifth Circuit held in *Spectrum Stores v. Citgo Petroleum*, claims recasting a foreign state's resource-allocation decisions as antitrust violations are non-justiciable because the antitrust laws "are decidedly inadequate to provide judicially manageable standards for resolving such momentous foreign policy questions." 632 F.3d 938, 952 (5th Cir. 2011) (dismissing antitrust claims alleging OPEC countries colluded to "control[] the spigot" of oil production and "raise" U.S. gas prices). No statute or case law supplies a metric for judging whether China's pandemic-era "nationaliz[ation of] control" of its medical supply chain, as reflected in Missouri's evidence, was unlawful hoarding or legitimate public-health policy. *See id.* Resolving that question requires an "initial policy determination" of whether Defendants' alleged conduct wrongfully breached a duty to Missouri's citizens or properly fulfilled a duty to China's citizens — precisely the "value judgment . . . textually committed to the political branches" that courts are forbidden from making. *Id.* at 951, 953. Imposing $24.5 billion in antitrust

liability would also "express[] a lack of the respect owed to the Executive Branch" and its diplomatic engagement with China. *Id.* at 946; *see also Zschernig v. Miller*, 389 U.S. 429, 432 (1968) (forbidding "intrusion" by U.S. state into "field of foreign affairs which the Constitution entrusts to the President and the Congress").

## II. THE DEFAULT JUDGMENT MUST BE VACATED UNDER RULE 60(b)(4) BECAUSE THIS COURT LACKS PERSONAL JURISDICTION OVER DEFENDANTS

To establish personal jurisdiction, the FSIA requires both the satisfaction of an immunity exception and proper service of process under § 1608. 28 U.S.C. § 1330(b). Absent proper service, a court *must* vacate a default judgment. *See Peralta v. Heights Med. Ctr.*, 485 U.S. 80, 84 (1988) ("[A] judgment entered without notice or service is constitutionally infirm"); *Republic of Sudan v. Harrison*, 587 U.S. 1, 3, 19 (2019) (holding that default judgment against foreign state was void where plaintiffs failed to comply with the FSIA's "strict requirements" for service); *see also* Order 6 (Jan. 6, 2022), ECF 47 (holding that default judgment would be improper as to any Defendant not properly served). The default judgment here finds Defendants liable for monopolization under the Sherman Act, 15 U.S.C. § 2, and state antitrust law, Mo. Rev. Stat. § 416.031.2 (Mem. & J. 20-27, ECF 95) — claims that were not pled in the Complaint and that were first asserted in Missouri's post-appeal trial brief, a document that was never served on any Defendant. *See generally* Compl.; Pl.'s Trial Br.

Missouri's new claims should have been pled, if at all, in an amended complaint. *Morgan Distrib. v. Unidynamic*, 868 F.2d 992, 995 (8th Cir. 1989) (rejecting notion "that a party could unilaterally amend a complaint at will . . . without filing an amendment, and simply by raising a point in a brief"). Furthermore, any newly asserted claims should have been served on Defendants under 28 U.S.C. § 1608(a) and (b). *See* Fed. R. Civ. P. 5(a)(2) (requiring service of new claims under Rule 4); Fed. R. Civ. P. 4(j) (requiring all service of foreign states under 28 U.S.C. § 1608); *see also* 1 Moore's

Federal Practice – Civil § 5.03[4] (2026) (explaining that Rule 5(a)(2) entitles a defendant in default to service of "any pleading *or similar paper* which asserts a new or additional claim for relief against [it]") (emphasis added).

Missouri's new antitrust claims invoke "substantially different elements" than its original "breach-of-duty" tort claim (Compl. Count IV) — the precise kind of "substantial change" requiring service under Rule 5(a)(2) and 28 U.S.C. § 1608. *Strange v. Islamic Republic of Iran*, 2016 WL 10770678, at *3-4 (D.D.C. May 6, 2016) (holding that new statutory claims with "substantially different elements" and "separate grounds" for liability against foreign state constituted "substantial changes" requiring service under Rule 5(a)(2)). These new claims exposed Defendants to materially different liability, including treble damages (totaling $24.5 billion), which in and of itself constitutes a "substantial change." *See Mwani v. Al Qaeda*, 600 F. Supp. 3d 36, 51-52 (D.D.C. 2022) (holding that new claims seeking "hundreds of millions of dollars" required service under Rule 5(a)(2)); *Greater St. Louis Constr. Laborers Welfare Fund v. A.L.L. Constr.*, 2014 WL 1648731, at *5 (E.D. Mo. Apr. 23, 2014) (denying default judgment where plaintiffs sought damages beyond those pled in complaint because defendant lacked "fair notice"); *contra* Pl.'s 3d Suppl. Br. 9-12, ECF 94.

Missouri undisputedly did not effect such service on Defendants of its Sherman Act and Missouri state-law antitrust claims, and so the default judgment is void. *See, e.g.*, *Campbell*, 47 F.4th at 1366-67 (holding that "new claim" for joint and several liability required service under Rule 5(a)(2), and vacating judgment as void for lack of notice); *Local 78, Asbestos, Lead & Hazardous Waste Laborers v. Termon Constr.*, 2003 WL 22052872, at *5 (S.D.N.Y. Aug. 30, 2003) (vacating default judgment as void for failure to serve amended complaint raising new causes of action under Rule 5(a)).

Further, as to CAS, Missouri never properly served it with even the original Complaint. This Court soundly observed that Missouri's purported service on CAS by

email "appear[ed]" to be "ineffective" under the FSIA. Order 2 (Apr. 10, 2024), ECF 74. Missouri purports (*see* ECF 54 at 35-36; ECF 75 at 4-7) to have served CAS under § 1608(b)(3)(C), *i.e.*, as directed by court order "consistent with the law of the place where service is to be made." Contrary to Missouri's representations, China's Civil Procedure Law does *not* "generally permit[] the service of legal documents by email." Pl.'s Apr. 30, 2024 Mem. 6, ECF 75 (citing Law Library of Congr., Service of Process 38-39, https://tile.loc.gov/storage-services/service/ll/llglrd/2020720028/2020720028.pdf (citing Civil Procedure Law of the People's Republic of China (as amended June 27, 2017), art. 87, available at https://cicc.court.gov.cn/html/1/219/199/200/644.html)). Rather, Missouri's own authority states that email service is permitted only (1) by a Chinese court, (2) with "consent" of the party to be served, (3) to an email address the consenting party provided to receive service, *and* (4) in a manner enabling confirmation of receipt. Law Library of Congr., Service of Process 38-39. Not one requirement was met here. Missouri's authority also states that foreign entities are prohibited from serving process in China *at all* absent authorization, *id.* — authorization that Missouri concedes is lacking. Pl.'s Feb. 14, 2022 Mem. 4, ECF 54.

## III. THE DEFAULT JUDGMENT MUST BE VACATED UNDER RULE 60(b)(6) DUE TO "EXTRAORDINARY CIRCUMSTANCES"

Rule 60(b)(6) authorizes vacatur under "extraordinary circumstances." *Raymond v. United States*, 933 F.3d 988, 991 (8th Cir. 2019). Relief is particularly warranted where, as here, the default judgment imposes on a foreign sovereign enormous damages premised on novel questions of law with potential foreign-relations consequences. *See, e.g.*, *Owens v. Republic of Sudan*, 864 F.3d 751, 813 (D.C. Cir. 2017) (vacating default judgment due to "size of the awards (totaling $4.3 billion)," "novel question," and "potential effect on U.S. diplomacy and foreign relations"), *rev'd on other grounds sub nom.*, *Opati v. Republic of Sudan*, 590 U.S. 418 (2020); *Watkins v. Lundell*, 169 F.3d 540, 544-47 (8th Cir. 1999) (holding that "exceptional

circumstances" existed to vacate default judgment that awarded "excessive" damages).

The circumstances here are certainly extraordinary "when one considers the stakes." *Acree v. Republic of Iraq*, 370 F.3d 41, 58 (D.C. Cir. 2004) (vacating "nearly-billion dollar default judgment against a foreign government"). The default judgment requires China and its political subdivisions, agencies and instrumentalities to pay more than ***$24 billion*** — trebled from a base finding of over $8 billion in compensatory damages — plus compounding post-judgment interest. Mem. & J. 31-32. Beyond "extraordinary" in size, these treble damages amount to punitive damages barred by the FSIA. *See* 28 U.S.C. § 1606 ("[A] foreign state except for an agency or instrumentality thereof shall not be liable for punitive damages[.]"); *Grant ex rel. United States v. Zorn*, 107 F.4th 782, 798 (8th Cir. 2024) ("treble damages serve 'punitive objectives'" (citation omitted)); *Tex. Indus. v. Radcliff Materials*, 451 U.S. 630, 639 (1981) ("The very idea of treble damages reveals an intent to punish past, and to deter future, unlawful conduct"). This Court cannot "ignore the magnitude of [the] default judgment or its impact on the United States' conduct of foreign policy where the law is indisputably clear that" Missouri was "not legally entitled to this judgment." *Acree*, 370 F.3d at 60.

Also "extraordinary" are the highly politicized and unsupported accusations that a foreign state "corner[ed]" the worldwide PPE market allegedly through "a sinister campaign of malfeasance and deception." Compl. ¶¶ 5, 134. Holding a foreign state liable for ensuring that its population is adequately supplied with PPE in the face of a potentially existential health crisis risks grave injustice and threatens to expose the United States itself to reciprocal judgments abroad, destabilizing the comity principles the FSIA was enacted to preserve.

Further, Defendants can raise several "good claim[s] or defense[s]," including, but not limited to, those previewed here. *Buck v. Davis*, 580 U.S. 100, 126 (2017) (stating "precondition of Rule 60(b)(6) relief").

**The Act of State Doctrine Bars Adjudication of This Case.** This Court may not "sit in judgment" on whether China's alleged official acts "done within its own territory" were unlawful under Missouri law. *Banco Nacional De Cuba v. Sabbatino*, 376 U.S. 398, 416 (1964) (quoting *Underhill v. Hernandez*, 168 U.S. 250, 252 (1897)); *see also Spectrum*, 632 F.3d at 954-56 (affirming dismissal of antitrust claims alleging collusive output restrictions by OPEC countries on alternative ground that merits decision would require "sit[ting] in judgment" of foreign sovereigns' acts).

The United States and China have both recognized and agreed that "States have, in accordance with the Charter of the United Nations and the principles of international law, the sovereign right to legislate and to implement legislation in pursuance of their health policies." International Health Regulations art. 3, ¶ 4, May 23, 2005, 2509 U.N.T.S. 79, 83. Holding Defendants liable for allegedly hoarding PPE necessarily invalidates China's sovereign healthcare policies. *See Alfred L. Snapp & Son v. Puerto Rico, ex rel., Barez*, 458 U.S. 592, 602, 607 (1982) (holding that state "has a quasi-sovereign interest in the health and well-being — both physical and economic — of its residents," that "stand[s] apart" from its commercial "proprietary interests").

For analogous reasons, the foreign-affairs preemption doctrine requires the Court to dismiss Missouri's PPE-hoarding claim because enforcement of the state law would "impact foreign relations." *Zschernig*, 389 U.S. at 441 (dismissing claim under state inheritance law even if not a "gross . . . intrusion in the federal domain").

**Missouri Fails to State an Antitrust Claim.** By failing to amend its Complaint to add its antitrust claims, Missouri failed to afford Defendants required notice of the claims, thereby requiring dismissal. *See Eckert v. Titan Tire*, 514 F.3d 801, 807 (8th Cir. 2008) (affirming dismissal of ERISA claim where claimant "failed to include an ERISA claim as a separate count, failed to invoke ERISA as part of its claim for relief and failed to do anything indicating its intent to pursue a claim based on ERISA"); *see*

*also supra* § II. Missouri mistakenly relies on *Topchian v. JPMorgan Chase Bank, N.A.* (*see generally* ECF 94) to justify its failure to amend; that case, however, applied a lower pleading standard for a *pro se* plaintiff. 760 F.3d 843, 848-49 (8th Cir. 2014). *Topchian* has no bearing here, where the Plaintiff is Missouri's Attorney General.

Even were these tardy antitrust claims cognizable as properly pled and noticed, Missouri fails to plead or establish the elements of an antitrust claim against any Defendant.

*First*, Missouri never alleges the relevant "product market," which includes "all reasonably interchangeable products." *Double D Spotting Serv. v. Supervalu, Inc.*, 136 F.3d 554, 560 (8th Cir. 1998). Missouri asserts that China hoarded "personal protection equipment" but mentions only "masks" (Compl. ¶¶ 130-38, 174-81), without specifying the relevant market — e.g., disposable masks, N95 respirator masks, or other PPE. Missouri claims damages for products never mentioned in the Complaint and plainly not interchangeable, like "textile face masks," "protective eyewear," and "protective garments for surgical and medical use." Mem. & J. 30 (citing Pl. Ex. 8, ECF 80-8).

*Second*, Missouri makes no factual allegation that any Defendant ever "possessed monopoly power" in any "relevant market." *Trace X Chem. v. Canadian Indus.*, 738 F.2d 261, 265 (8th Cir. 1984). Even as to "masks" generically, the media report Missouri relies on (Compl. ¶¶ 130-32 & n. 72-74) states that China produced only "half of the world's masks" before COVID and a "smaller number of N95 respirator masks." Pl. Ex. 45, ECF 79-4 at 37, 39. Monopoly power cannot be inferred from market share of even 50%. *United States v. Empire Gas*, 537 F.2d 296, 305 (8th Cir. 1976). Nor does Missouri allege that Defendants exploited any "barriers either to the entry of new firms or to increased output by existing firms" supplying masks or other PPE. *Ryko Mfg. v. Eden Servs.*, 823 F.2d 1215, 1232 (8th Cir. 1987); *see* Pl. Ex. 45, ECF 79-4 at 37, 42 (reporting "12-fold" increase in China's mask production, that

"[h]undreds of small companies have started making masks," including for export, and that a GM joint venture in China built mask-making machines for "bulk production").

*Third*, the Complaint fails to allege that any Defendant "used its monopoly power to foreclose competition, gain a competitive advantage, or destroy a competitor." *Trace X Chem.*, 738 F.2d at 265. To the contrary, Missouri's evidence shows that expanded PPE production in China and increased imports were driven by health and humanitarian concerns — concerns the U.S. government shared when the Commerce Department expedited mask sales to China, and the State Department donated PPE to China as late as March 2020 to help slow the pandemic. *See* Eilperin, *U.S. sent millions of face masks to China early this year, ignoring pandemic warning signs* (cited at Compl. ¶ 134 n.76). China's own donations of masks to other hard-hit countries belie any monopolistic intent. *See* Pl. Ex. 45, ECF 79-4 at 42.

Missouri's state-law antitrust claim, which the Court analyzed under the Sherman Act standard, fails for the same reasons. *See* Mem. & J. 27 (citing *Sitzer v. Nat'l Ass'n of Realtors*, 420 F. Supp. 3d 903, 919 (W.D. Mo. 2019)).

* * *

Given the extraordinary circumstances of a $24.5 billion default judgment against foreign-state Defendants for sovereign conduct arising from the COVID-19 pandemic and the potentially meritorious defenses that this Court should have the opportunity to consider, vacatur of the judgment is warranted under Rule 60(b)(6).

## CONCLUSION

For all the foregoing reasons, this Court should vacate the default judgment and dismiss this action in its entirety with prejudice.

Dated: August 31, 2026
Washington, DC

Respectfully submitted,

WHITE & CASE

/s/ *Christopher M. Curran*

Christopher M. Curran, 408561(DC)
Nicolle Kownacki, 1005627(DC)
Reuben J. Sequeira, 992307(DC)
Michael Mahaffey, 1617843 (DC)
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005
Telephone: +1 202 626 3600
ccurran@whitecase.com
nkownacki@whitecase.com
rsequeira@whitecase.com
michael.mahaffey@whitecase.com

*Counsel for the People's Government of Hubei Province and the Chinese Academy of Sciences*