**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI SOUTHEASTERN DIVISION**

| | |
|---|---|
| **THE STATE OF MISSOURI, *ex rel.* CATHERINE L. HANAWAY, in her official capacity as Attorney General of the State of Missouri,**<br><br>Plaintiff,<br><br>v.<br><br>**THE PEOPLE'S REPUBLIC OF CHINA; THE COMMUNIST PARTY OF CHINA; NATIONAL HEALTH COMMISSION OF THE PEOPLE'S REPUBLIC OF CHINA; MINISTRY OF EMERGENCY MANAGEMENT OF THE PEOPLE'S REPUBLIC OF CHINA; MINISTRY OF CIVIL AFFAIRS OF THE PEOPLE'S REPUBLIC OF CHINA; PEOPLE'S GOVERNMENT OF HUBEI PROVINCE; PEOPLE'S GOVERNMENT OF WUHAN CITY; WUHAN INSTITUTE OF VIROLOGY; and CHINESE ACADEMY OF SCIENCES,**<br><br>Defendants. | **Case No. 1:20-cv-00099-SNLJ**<br><br>**LIMITED APPEARANCE BY THE MINISTRY OF EMERGENCY MANAGEMENT** |

**MEMORANDUM IN SUPPORT OF THE MINISTRY OF EMERGENCY MANAGEMENT'S MOTION TO VACATE DEFAULT JUDGMENT**

September 3, 2026

## TABLE OF CONTENTS


I. Preliminary Statement ........ 1

II. Factual And Procedural Background ........ 4

A. Missouri's Common-Law Complaint Included No Antitrust Claims ........ 4

B. On Remand, The Eighth Circuit Narrowed the Case to One Theory and Required Proof ........ 4

C. Missouri Asserted New, Unserved Statutory Antitrust Claims for Trebled Damages ........ 6

D. Missouri Offered No Evidence of Direct Effects in the United States ........ 6

1. Missouri Relied on Indirect Effects Bailey Rejected, Which It Failed to Prove in Any Event ........ 6

2. Missouri Offered No Evidence of a Missouri Price Increase or Impaired Treatment ........ 8

E. Missouri Offered No Proof of Any Commercial Activity by Any Defendant ........ 9

F. The Judgment Awarded Missouri Trebled Damages on Its Unpleaded Antitrust Claims ........ 10

G. Missouri Has Not Commenced Enforcement ........ 10

III. Governing Standards ........ 11

A. A Judgment Entered Without Jurisdiction Is Void, and Vacatur Is Mandatory ........ 11

B. This Motion Is Made Within a Reasonable Time ........ 12

IV. Argument ........ 13

A. The Judgment Is Void Because Missouri Did Not Establish the FSIA's Commercial-Activity Exception ........ 13

1. Missouri Failed to Prove Any Direct Effect Bailey Upheld as Sufficient ........ 14

2. Missouri Did Not Prove Commercial Activity by Any Defendant ........ 15

B. The Judgment Is Void Because the Court Lacked Personal Jurisdiction with Respect to the Unserved Antitrust Claims .................... 16

C. The Judgment Is Also Void Because Missouri's Claims Present Nonjusticiable Political Questions .......................................................... 17

D. The Action Must Be Dismissed as to All Defendants Because Its Defects Are Jurisdictional ................................................................ 20

1. Missouri's Failure of Proof Requires Dismissal ............................ 20

2. A Jurisdictional Defect Requires Dismissal as to Every Defendant, Moving or Not .......................................................... 21

E. Good Cause Supports Setting Aside the Entries of Default Under Rule 55(c) ......................................................................... 22

1. A Sovereign's Nonappearance in Reliance on Immunity Is Not Culpable Conduct ............................................................. 22

2. Missouri Will Suffer No Cognizable Prejudice ............................. 23

3. Defendants Have Meritorious Defenses ....................................... 23

V. Conclusion ........................................................................................ 25

## TABLE OF AUTHORITIES

**Cases**

*Agudas Chasidei Chabad of U.S. v. Russian Fed'n*,
110 F.4th 242 (D.C. Cir. 2024), *cert. denied*, 146 S. Ct. 1586 (2026)........................... 11

*Agudas Chasidei Chabad of U.S. v. Russian Fed'n*,
798 F. Supp. 2d 260 (D.D.C. 2011) ........................................................................ 13

*Aurum Asset Managers, LLC v. Bradesco Companhia de Seguros*,
441 F. App'x 822 (3d Cir. 2011)............................................................................ 11

*Baker v. Carr*,
369 U.S. 186 (1962) .................................................................................. 17, 18, 19

*Bell Helicopter Textron, Inc. v. Islamic Republic of Iran*,
734 F.3d 1175 (D.C. Cir. 2013) ...................................................................... 11, 21

*Bituminous Cas. Corp. v. Scottsdale Ins. Co.*,
2012 U.S. Dist. LEXIS 169168 (E.D. Mo. Nov. 29, 2012) ........................................... 23

*BLOM Bank SAL v. Honickman*,
605 U.S. 204 (2025) ............................................................................................ 24

*Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*,
581 U.S. 170 (2017) ...................................................................................... 13, 20

*BP Chems. Ltd. v. Jiangsu SOPO Corp.*,
420 F.3d 810 (8th Cir. 2005)................................................................................ 15

*Breezee v. Islamic Republic of Iran*,
2025 U.S. Dist. LEXIS 133485 (D.D.C. July 14, 2025).......................................... 16, 17

*Brewer v. Socialist People's Republic of Iraq*,
890 F.2d 97 (8th Cir. 1989).................................................................................. 21

*Campbell v. Bennett*,
47 F.4th 1362 (11th Cir. 2022).............................................................................. 17

*Carpenter v. Countrywide Home Loans, Inc.*,
250 S.W.3d 697 (Mo. banc 2008) .......................................................................... 24

*CC/Devas (Mauritius) Ltd. v. Antrix Corp.*,
605 U.S. 223 (2025) ............................................................................................ 16

*Cmty. Fin. Grp., Inc. v. Republic of Kenya*,
663 F.3d 977 (8th Cir. 2011)............................................................................ 15, 20

*Coney Island Auto Parts Unlimited, Inc. v. Burton Tr. for Vista-Pro Auto., LLC*,
607 U.S. 155 (2026) ............................................................................................ 12

*D'Augusta v. Am. Petroleum Inst.*,
117 F.4th 1094 (9th Cir. 2024), *cert. denied*, 145 S. Ct. 1478 (2025) .......................... 19

*Doe I v. Nixon*,
2010 U.S. Dist. LEXIS 114189 (E.D. Mo. Oct. 27, 2010), *aff'd*,
716 F.3d 1041 (8th Cir. 2013) .................................................................................. 21

*FG Hemisphere Associates, LLC v. Democratic Republic of Congo*,
447 F.3d 835 (D.C. Cir. 2006) .................................................................................. 12

*Freiberg v. Muskie*,
651 F.2d 608 (8th Cir. 1981) .................................................................................... 18

*Gen. Elec. Capital Corp. v. Grossman*,
991 F.2d 1376 (8th Cir. 1993) .................................................................................. 15

*Gregorian v. Izvestia*,
871 F.2d 1515 (9th Cir. 1989) .................................................................................. 22

*Hagen v. Sisseton-Wahpeton Cmty. Coll.*,
205 F.3d 1040 (8th Cir. 2000) .................................................................................. 21

*Hawaii v. Standard Oil Co. of Cal.*,
405 U.S. 251 (1972) ................................................................................................ 24

*Hill v. Republic of Iraq*,
328 F.3d 680 (D.C. Cir. 2003) .................................................................................. 14

*InfoDeli, LLC v. W. Robidoux, Inc.*,
136 F.4th 792 (8th Cir. 2025) .................................................................................. 17

*Jackson v. People's Republic of China*,
794 F.2d 1490 (11th Cir. 1986) ................................................................................ 22

*Jerez v. Republic of Cuba*,
775 F.3d 419 (D.C. Cir. 2014) ......................................................................... 11, 12, 13

*Jo Ann Howard & Assocs., P.C. v. Nat'l City Bank*,
11 F.4th 876 (8th Cir. 2021) .................................................................................... 21

*Johnson v. Arden*,
614 F.3d 785 (8th Cir. 2010) .................................................................................... 11

*Johnson v. Dayton Elec. Mfg. Co.*,
140 F.3d 781 (8th Cir. 1998) ............................................................................... 22, 23

*Joo v. Japan*,
413 F.3d 45 (D.C. Cir. 2005) .................................................................................. 19

*Kangol LLC v. Hangzhou Chuanyue Silk Import & Export Co.*,
177 F.4th 793 (7th Cir. 2026) .................................................................................. 12

*Kansas City S. Ry. Co. v. Great Lakes Carbon Corp.*,
624 F.2d 822 (8th Cir. 1980) ........................................ 11

*Kemp v. United States*,
596 U.S. 528 (2022) ........................................ 24

*Kenny v. Islamic Republic of Iran*,
2024 U.S. Dist. LEXIS 174176 (D.D.C. Sept. 26, 2024) ........................................ 16

*Khochinsky v. Republic of Poland*,
1 F.4th 1 (D.C. Cir. 2021) ........................................ 23

*Liljeberg v. Health Servs. Acquisition Corp.*,
486 U.S. 847 (1988) ........................................ 24

*Missouri ex rel. Bailey v. People's Republic of China*,
90 F.4th 930 (8th Cir. 2024) ........................................ *passim*

*Mwani v. Al Qaeda*,
600 F. Supp. 3d 36 (D.D.C. 2022) ........................................ 17

*Oetjen v. Central Leather Co.*,
246 U.S. 297 (1918) ........................................ 18

*Osborn v. United States*,
918 F.2d 724 (8th Cir. 1990) ........................................ 20

*Owens v. Republic of Sudan*,
864 F.3d 751 (D.C. Cir. 2017), *vacated in part on other grounds sub nom.*
*Opati v. Republic of Sudan*, 590 U.S. 418 (2020) ........................................ 14

*PIRS Capital, LLC v. Williams*,
54 F.4th 1050 (8th Cir. 2022) ........................................ 11

*Practical Concepts, Inc. v. Republic of Bolivia*,
811 F.2d 1543 (D.C. Cir. 1987) ........................................ 12, 23

*Printed Media Servs., Inc. v. Solna Web, Inc.*,
11 F.3d 838 (8th Cir. 1993) ........................................ 17

*Republic of Argentina v. Weltover, Inc.*,
504 U.S. 607 (1992) ........................................ 5, 14, 15

*Romer v. Carlucci*,
847 F.2d 445 (8th Cir. 1988) ........................................ 18

*Schneider v. Kissinger*,
412 F.3d 190 (D.C. Cir. 2005) ........................................ 19

*Spectrum Stores, Inc. v. Citgo Petroleum Corp.*,
632 F.3d 938 (5th Cir. 2011) ........................................ 18, 19

*Strahan v. Phibbs*,
2024 U.S. Dist. LEXIS 158666 (E.D. Mo. Sept. 4, 2024) ........ 11, 21

*SuperTurf, Inc. v. Monsanto Co.*,
660 F.2d 1275 (8th Cir. 1981) ........ 24

*United States v. 7215 Longboat Drive*,
750 F.3d 968 (8th Cir. 2014) ........ 12

*Vermont Agency of Natural Res. v. United States ex rel. Stevens*,
529 U.S. 765 (2000) ........ 24

*Virtual Countries, Inc. v. Republic of South Africa*,
300 F.3d 230 (2d Cir. 2002) ........ 14

*Weisgram v. Marley Co.*,
528 U.S. 440 (2000) ........ 21

*W.S. Kirkpatrick & Co. v. Env't Tectonics Corp., Int'l*,
493 U.S. 400 (1990) ........ 24

*Wye Oak Technology, Inc. v. Republic of Iraq*,
109 F.4th 509 (D.C. Cir. 2024), *cert. denied*, 146 S. Ct. 396 (2025) ........ 14, 21

**Statutes**

15 U.S.C. § 2 ........ 24

15 U.S.C. § 7 ........ 24

15 U.S.C. § 12 ........ 24

15 U.S.C. § 15 ........ 10

15 U.S.C. § 15c ........ 10

28 U.S.C. § 1330 ........ 2

28 U.S.C. § 1330(a) ........ 13

28 U.S.C. § 1330(b) ........ 3, 16

28 U.S.C. §§ 1602–1611 ........ 2

28 U.S.C. § 1604 ........ 13

28 U.S.C. § 1605(a)(2) ........ 2, 4, 15

28 U.S.C. § 1605(a)(5) ........ 4

28 U.S.C. § 1606 ........ 24

28 U.S.C. § 1608 ........ 10, 16

28 U.S.C. § 1608(e) ........ 4, 10, 13

28 U.S.C. § 1610(c) ........ 10, 13

FED. R. CIV. P. 4 .......... 17

FED. R. CIV. P. 5(a)(2) .......... 17

FED. R. CIV. P. 12(b)(1) .......... 18, 19

FED. R. CIV. P. 12(h)(3) .......... *passim*

FED. R. CIV. P. 54(c) .......... 17

FED. R. CIV. P. 55 .......... 12

FED. R. CIV. P. 55(c) .......... 1, 3

FED. R. CIV. P. 60(b) .......... 21

FED. R. CIV. P. 60(b)(4) .......... *passim*

FED. R. CIV. P. 60(b)(6) .......... 24

FED. R. CIV. P. 60(c)(1) .......... 12

MO. REV. STAT. § 416.031.2 .......... 10

**Other Authorities**

Br. for Amicus Curiae United States,
*767 Third Avenue Associates v. Consulate General of Socialist Federal Republic of Yugoslavia*, 218 F.3d 152 (2d Cir. 2000) (No. 99-9011) .......... 18

Br. for the United States as Amicus Curiae Supporting Petitioners,
*CC/Devas (Mauritius) Ltd. v. Antrix Corp.*,
605 U.S. 223 (2025) (Nos. 23-1201, 24-17) .......... 23

Br. of Appellant, *Missouri ex rel. Bailey v. People's Republic of China*,
90 F.4th 930 (8th Cir. 2024) (No. 22-2495) .......... 5

Br. of the United States as Amicus Curiae Supporting Affirmance,
*Spectrum Stores, Inc. v. Citgo Petroleum Corp.*,
632 F.3d 938 (5th Cir. 2011) (No. 09-20084) .......... 19

Exec. Order No. 13,909,
85 Fed. Reg. 16,227 (Mar. 23, 2020) .......... 18

Exec. Order No. 13,911,
85 Fed. Reg. 18,403 (Apr. 1, 2020) .......... 18

Mo. Exec. Order No. 20-02 (Mar. 13, 2020) .......... 4

Prioritization and Allocation of Certain Scarce or Threatened Health and Medical Resources for Domestic Use,
85 Fed. Reg. 20,195 (Apr. 10, 2020) .......... 18

Statement of Interest of the United States,
*Jackson v. People's Republic of China*, No. 79-C-1272-E (N.D. Ala. Aug. 18, 1983), *reprinted in* 22 I.L.M. 1077 (1983) ..... 22

Suppl. Br. on Remand for Amicus Curiae the United States,
*Joo v. Japan*, 413 F.3d 45 (D.C. Cir. 2005) (No. 01-7169) ..... 20

Defendant the Ministry of Emergency Management of the People's Republic of China ("**Ministry**"), entering a limited appearance through undersigned counsel, respectfully submits this memorandum in support of its motion under Federal Rule of Civil Procedure ("**Rule**") 60(b)(4) to vacate the default judgment entered March 7, 2025 (Doc. 95), reported at 769 F. Supp. 3d 877 ("**Judgment**"), set aside the Clerk's entries of default (Docs. 29, 44) under Rule 55(c), and dismiss for lack of subject-matter jurisdiction under Rule 12(h)(3).[1]

## I. PRELIMINARY STATEMENT

The COVID-19 pandemic caused immense losses in Missouri and worldwide. This motion does not diminish them. It asks whether a $24.5 billion default judgment can stand when it was entered without jurisdiction against sovereign defendants, on claims never pleaded or served, and on questions the Constitution commits to the political branches. It cannot.

Missouri's Attorney General obtained on behalf of the State of Missouri ("**Missouri**") a default judgment with trebled damages against the People's Republic of China ("**PRC**") and eight other defendants ("**Defendants**"), exclusively on novel antitrust claims that were never pleaded or served. Doc. 95. Missouri attacked China's official pandemic response, claiming Defendants directed Chinese companies to hoard personal protective equipment ("**PPE**") by banning exports except for substandard PPE while increasing purchases of foreign PPE and nationalizing China's production of PPE.[2]

---

[1] The Ministry reserves and does not waive its rights, privileges, immunities (especially sovereign immunity), and defenses, including insufficient service of process, lack of subject-matter and personal jurisdiction, failure to state a claim, and improper venue.

[2] The Ministry firmly denies the Complaint's allegations regarding the Defendants' conduct during the pandemic. Recitation of those allegations, and of the Judgment's findings that rest on them, should not be construed as acceptance of their truth.

Missouri's claims contravened the fundamental principles of sovereign immunity recognized among nations and embodied in the Foreign Sovereign Immunities Act ("**FSIA**"). The Judgment asserted jurisdiction over sovereign Defendants without factual or legal basis; and the proceedings have infringed the national interests and the dignity of China.

After a default hearing, the Court entered default judgment against all nine Defendants, jointly and severally, for $8,162,941,819 in actual damages, trebled to $24,488,825,457. The Judgment is void and must be vacated under Rule 60(b)(4), for three reasons:

***First***, the Court lacks subject-matter jurisdiction under the FSIA, 28 U.S.C. §§ 1330, 1602–1611, under which each Defendant is presumptively immune from suit. Missouri sought to establish jurisdiction under the FSIA's exception for claims arising out of foreign "commercial activity" causing a "direct effect" in the United States, 28 U.S.C. § 1605(a)(2). But Missouri based 98.5% of its claim on ***indirect*** economic effects: its lost taxes from reduced GDP, allegedly stemming from government lockdowns and business and school closures. The Eighth Circuit rejected these exact effects as "remote and attenuated," because they relied on "intervening" steps and actors, including the government officials that issued stay-at-home orders and the Missourians who complied with them. *Missouri ex rel. Bailey v. People's Republic of China*, 90 F.4th 930, 937–39 (8th Cir. 2024). Missouri meanwhile offered no evidence of higher PPE prices or impaired treatment from PPE shortages—the only alleged direct effects *Bailey* held adequate—and it offered no evidence of any commercial act by any Defendant. *Bailey* held only that Missouri sufficiently ***alleged*** the commercial activity exception; it expressly required Missouri to "prove" its allegations, which it did not do.

***Second***, the Court lacked personal jurisdiction over Defendants on the Judgment's statutory antitrust claims. Under the FSIA, personal jurisdiction is claim-specific: 28 U.S.C. § 1330(b) confers it only over claims that satisfy an FSIA exception and are properly served. Count IV of Missouri's Complaint, Doc. 1 ("**Complaint**")—the PPE hoarding claim that survived *Bailey*—alleged only common-law negligence. Missouri's antitrust claims and treble-damages demand first appeared in its default-hearing briefs and were never served on Defendants.

***Third***, Missouri's claims presented nonjusticiable political questions. These claims required the Court to sit in judgment on a foreign sovereign's management of a pandemic exclusively within its own territory—matters the Constitution commits to the political branches. The political question doctrine deprives the Court of subject-matter jurisdiction. Vacating the Judgment vindicates not only China but the United States, whose own standing in foreign courts, sovereign immunity, and reciprocal treatment depend on the faithful application of the FSIA.

The Clerk's entries of default should also be set aside under Rule 55(c): Defendants' nonappearance was based upon reasonable reliance on their asserted immunity, which settled case law holds non-contumacious; Missouri suffers no prejudice from litigating on its evidentiary record; and Defendants hold numerous meritorious defenses, among them bars against Missouri's application of antitrust statutes to a foreign sovereign, impermissible damages claims, the act-of-state doctrine, and, as to Count IV as pleaded, the absence of any cognizable duty.

For these reasons, the Court should vacate the Judgment, set aside the entries of default against all Defendants, and dismiss this action for lack of subject-matter jurisdiction.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Missouri's Common-Law Complaint Included No Antitrust Claims

Missouri filed the Complaint on April 21, 2020—less than six weeks after declaring a state of emergency, Mo. Exec. Order No. 20-02 (Mar. 13, 2020). Doc. 1. It pleaded only four common-law counts. *Id.* Count IV (Breach of Duty) alone addressed PPE, claiming "Defendants had a duty not to hoard [it]" and Defendants' hoarding "adversely impaired the ability of health care providers throughout the world, including . . . in Missouri, from safely and effectively treating patients with the virus." Doc. 1 ¶¶ 137–38, 176 & at 44–46. The Complaint invoked no antitrust statute and sought no trebled damages.

### B. On Remand, The Eighth Circuit Narrowed the Case to One Theory and Required Proof

This Court dismissed Missouri's entire Complaint for lack of subject-matter jurisdiction under the FSIA. Docs. 61–62. Missouri appealed, contending its Complaint satisfied the FSIA's exceptions for noncommercial torts (28 U.S.C. § 1605(a)(5)) and foreign commercial activities with direct effects in the United States (28 U.S.C. § 1605(a)(2)). The Eighth Circuit affirmed as to Counts I–III but reinstated Count IV—Missouri's negligent PPE hoarding claim—as plausibly alleging the commercial-activity exception. *Bailey*, 90 F.4th at 934–40.[3] With respect to both commercial activity and direct effects, the Eighth Circuit emphasized that "***Missouri must still prove it***." *Bailey*, 90 F.4th at 939–40 (citing Fed. R. Civ. P. 12(h)(3) and 28 U.S.C. § 1608(e)).[4]

[3] The Ministry respectfully disagrees with, and preserves for any appeal, *Bailey*'s determination that Count IV sufficiently alleged the commercial-activity exception.

[4] All emphases are added unless otherwise noted.

The Eighth Circuit held Counts I–III failed to allege direct effects, explaining that a direct effect must "follow as an immediate consequence of the defendants' activity" with no "intervening act break[ing] the chain of causation leading from the asserted wrongful act to its impact in the United States." *Bailey*, 90 F.4th at 937 (cleaned up).[5] The alleged harms in these Counts—"loss of jobs, loss of income, [and] loss of business opportunities" resulting from "widespread school closures, and visitation restrictions in hospitals and nursing homes"—were too "remote and attenuated." *Id.* The Eighth Circuit elaborated that once the virus was in Missouri:

> It took several more steps from there for Missouri's economy to suffer. Infections had to reach a high enough level in the United States and Missouri for ***federal, state, and local governments to issue stay-at-home orders. Missourians then had to follow them***. ***Only then did schools and businesses close, state expenditures grind to a halt, and medical facilities close their doors to visitors***.

*Bailey*, 90 F.4th at 937.

The Eighth Circuit found Count IV adequately alleged commercial activity, because "[t]aking over mask-producing factories," "buying up a substantial portion of the world's supply of [PPE]," and "selling those items for a profit" are "the actions of 'a private player' in the market." *Bailey*, 90 F.4th at 938 (quoting *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 614 (1992)).[6] Noting that Count IV's alleged direct effects—higher PPE prices and shortages causing impaired treatment—were the "closest

[5] The dissent argued that direct effects were not alleged, and would have affirmed the dismissal of the entire Complaint. *Bailey*, 90 F.4th at 940–41 (Smith, C.J., concurring in part and dissenting in part).

[6] Missouri did not argue on appeal, nor did *Bailey* uphold, its later antitrust claims. Missouri presented Count IV solely as a common-law negligence claim, and *Bailey* reinstated it as such. Br. of Appellant at 26, *Missouri ex rel. Bailey v. People's Republic of China*, 90 F.4th 930 (8th Cir. 2024) (No. 22-2495); *Bailey*, 90 F.4th at 934–40.

call," it found they were adequately alleged because they required no intervening steps. *Id.* at 938. "[N]o one else other than the defendants had to act to create those effects," and they "depended little, if at all, 'on variables independent' of the defendants' conduct." *Id.* at 939.

### C. MISSOURI ASSERTED NEW, UNSERVED STATUTORY ANTITRUST CLAIMS FOR TREBLED DAMAGES

On remand, Missouri filed two default-hearing briefs, thirty-eight exhibits including an expert damages report, and a supplemental expert report. Docs. 79–80, 80-1, 87, 87-1. Missouri pressed its new statutory antitrust claims, relegating its Count IV negligence claim to the alternative. Doc. 87 at 2–15, 26. When the Court ordered briefing on whether Count IV "can also encompass statutory causes of action for state and federal antitrust violations," Doc. 92 at 1, Missouri called its statutory claims "alternative theories" and conditionally "move[d] for leave to slightly amend." Doc. 94 at ii, 2–3, 12. Leave was never granted, and Missouri neither filed nor served an amended complaint.

### D. MISSOURI OFFERED NO EVIDENCE OF DIRECT EFFECTS IN THE UNITED STATES

Despite impressive volume, Missouri's record contains no evidence of either fact *Bailey* required it to prove: a direct effect in the United States, or a commercial act by any Defendant.

#### 1. Missouri Relied on Indirect Effects *Bailey* Rejected, Which It Failed to Prove in Any Event

Missouri banished the direct-effects theory *Bailey* upheld to the margins of its case. For 98.5% of its claimed base damages of $8,162,941,819, Missouri did not claim or attempt to prove higher PPE prices or impaired treatment caused by PPE shortages, as *Bailey* required. 90 F.4th at 938. Instead, Missouri reintroduced the same chain of indirect pandemic effects—from "stay-at-home orders," which "Missourians then had to

follow," leading to business and school closures, reduced GDP, and ultimately lost state taxes—*Bailey* had rejected as "remote and attenuated." 90 F.4th at 937. *See* Doc. 87-1 at 1 (tracing lost taxes "directly to ***sequestration and lockdown policies implemented at the Federal level***"); Doc. 87 at 24.

These indirect effects were also unproved, speculative, and based on an unreliable model, for the following reasons:

- **Conflating imports with domestic supply**. Missouri's expert misconstrued a report stating that before the pandemic, China supplied "over 70% of U.S. ***imports*** of textile face masks." Doc. 87-1 at 3; Doc. 80-8 at 3. He wrongly claimed China produced 70% of the United States' ***total pre-pandemic supply*** of PPE—not merely of textile face mask imports, contrary to the report's own disclaimer—overstating China's share by as much as tenfold. Doc. 87-1 at 3–4, 7; Doc. 80-8 at 3 & n.11, 65–66 (Table D-1: imports from China as a share of U.S. supply in PPE-related categories, 6%–36%).

- **No data on PPE shortages**. The expert had no data on any actual PPE shortage, yet assumed without evidence a 70% shortage—both misstating the report and assuming no replacements from other sources. Doc. 87-1 at 3–4.

- **Assuming equal infection risk for hospital workers and the general public**. The expert applied to the ***general population*** a study finding a 50% infection-risk reduction from ***emergency trauma health-care workers'*** use of PPE—ignoring the health-care workers' higher exposure risk. Doc. 87-1 at 3 & n.2, 7.

- **No basis for assumption that increased infections caused lockdowns**. The expert acknowledged "no counterfactual that would help us identify the incidence rate that would have triggered lockdown policies," Doc. 87-1 at 9, and conceded national lockdown measures were imposed "before we saw a large increase in the number of cases." *Id.* at 10.

Based on these assumptions, Missouri's expert projected speculative future losses ***through 2051*** of ***over $7.65 billion—95.2%*** of Missouri's claimed tax losses—based on school closings of only a 0.2 school-year—1.8 months. Doc. 87 at 24; Doc. 87-1 at 13–14. *Bailey* expressly held "widespread school closures" too remote and attenuated to be "direct"—yet they account for nearly all of the Judgment. 90 F.4th at 937.

### 2. Missouri Offered No Evidence of a Missouri Price Increase or Impaired Treatment

Only the remaining 1.5% of the Judgment's base damages—$122,941,819—was facially related to PPE prices (Missouri asserted an "exponential increase in the price of PPE," Doc. 79 at 110), and no part was based on impaired treatment caused by PPE shortages—the only "direct effect" allegations *Bailey* sustained. 90 F.4th at 938. Yet Missouri offered no evidence of the prices it paid.[7] Missouri based its price-related claim on Exhibit 15, a ledger of its COVID-19 expenditures and reimbursements paid solely to its ***non-Chinese vendors*** (to say nothing of any Defendant) by date, vendor, and amount, with no quantities, unit prices, or means to calculate any overcharge, Doc. 80-15.[8] Nor did Missouri provide any pre-pandemic Missouri baseline prices against which to measure any price increase. Missouri demanded, and the Judgment awarded, "the full amount of the funds spent on PPE expenses," not a segregated portion attributable to higher prices. Doc. 79 at 110; Doc. 95 at 30–31.[9]

Nor did Missouri offer any evidence that because of PPE shortages, Missouri health care providers were unable to "safely and effectively treat[] patients with the virus," as Missouri alleged, *Bailey*, 90 F.4th at 938 (quoting the Complaint), or that its citizens "got sick, missed work, and died because of the PPE shortage." Doc. 79 at 110.[10]

---

[7] Neither of its expert's reports even uses the word "price" except in the titles of the expert's publications. Docs. 80-1, 87-1.

[8] Missouri's other exhibits report general price increases outside Missouri, but Missouri never applied any of them to a Missouri purchase or derived an overcharge from them. Docs. 80-22 at 1898; 80-26 at 1–4; 80-27 at 114; 80-23 at 6.

[9] Missouri's study attributes PPE shortages and price increases elsewhere to concurrent causes—hospital budgeting practices, "panicked marketplace behavior," federal inventory failures, and export restrictions by "numerous governments around the world." Doc. 80-23 at 1–2, 6.

[10] Missouri's mortality study attributes COVID-19 death rates to age, vaccination rates, poverty, and rural residence, but never mentions PPE. Doc. 80-14 at 2–4. Missouri's

And by January 2021, Missouri's own warehouse data showed the State had received substantially more PPE than it distributed. Doc. 80-36 at 10. The Eighth Circuit required Missouri to "prove" the direct effects it claimed, and it did not.

### E. MISSOURI OFFERED NO PROOF OF ANY COMMERCIAL ACTIVITY BY ANY DEFENDANT

Missouri sought to prove Defendants' commercial activity—"[t]aking over mask-producing factories," "buying up a substantial portion of the world's supply of [PPE]," and "selling those items for a profit," *Bailey*, 90 F.4th at 938—with evidence broadly attributing general PPE-related acts to "China." Missouri's evidence attributed the factory-takeover directives *Bailey* identified to non-Defendant PRC agencies. *See* Doc. 80-7 at 15 (non-Defendant agency allegedly "commandeered medical manufacturing and logistics down to the factory level"). It attributed the alleged hoarding directives to a second non-Defendant agency that supposedly "directed its bureaucracy, local governments and industry" to secure medical supplies from the global market. *Id.*[11]

Missouri also offered no evidence that any Defendant engaged in any purchases or sales of PPE in furtherance of these directives. The overseas purchases of PPE were allegedly made by "***non-traditional buyers***," ***Chinese-owned property developers***, and "***civic-minded entrepreneurs and aid groups***." Docs. 80-9 at 34; 80-7 at 16; 80-29 at 4. The export restrictions Missouri's evidence reflects were informal: 3M and Medicom "informed the media that all masks produced in their facilities in China were ***procured to***

hospital-association survey reported that none of the fifty-nine responding hospitals had zero days on hand in any PPE category. Doc. 80-38 at 1.

[11] Missouri's only exhibit naming a Defendant as the hoarder ("[t]he CCP hoarded" PPE, Doc. 80-24 at 22) cites only a congressional staff report's unsourced summary, *id.* at 61 (citing Doc. 80-9 at 5), and attributes such acts to "Beijing" and "Chinese authorities." *Id. at 22.* But the staff report itself attributes the directives to non-Defendant agencies. Doc. 80-9 at 33–34.

***meet domestic demand***," and "***China imposed no formal export restrictions on the export of PPE***." Doc. 80-8 at 3.

### F. THE JUDGMENT AWARDED MISSOURI TREBLED DAMAGES ON ITS UNPLEADED ANTITRUST CLAIMS

At the default hearing, Missouri submitted its case on its papers. Doc. 96 at 28:8–29:20. On March 7, 2025, the Court entered the judgment Missouri had proposed. Doc. 95; *compare* Doc. 90-1. The Judgment defined all nine Defendants as "China" and held them jointly and severally liable. Doc. 95 at 1–2, 31–32. It identified no specific PPE transaction by any Defendant. It found Defendants adopted "regulatory measure[s]"—nationalized control of production, commandeered manufacturing, and export restraints—the claimed effects of which appeared only in country-level trade data. Doc. 95 at 1–2, 11, 13–14, 31–32.

The Judgment did not mention negligence—the only theory Count IV pleaded. Instead, it awarded trebled antitrust damages under 15 U.S.C. §§ 15 and 15c and Mo. Rev. Stat. § 416.031.2: $8.04 billion in projected lost tax revenue plus $122,941,819 in PPE expenditures, trebled from $8,162,941,819 to $24,488,825,457. *Id.* at 20–32.

### G. MISSOURI HAS NOT COMMENCED ENFORCEMENT

On March 25, 2026—over a year after Judgment was entered—Missouri submitted a corrected request to transmit the Judgment to the PRC and five other foreign-state Defendants. Docs. 97 at 1; 100 at 1; 102 at 1; *see* § 1608(e) (requiring any default judgment to be sent to the foreign state or political subdivision in the manner prescribed by § 1608). The docket reflects no return of transmittal and no request for the required determination under 28 U.S.C. § 1610(c) that a reasonable period has elapsed. Missouri has commenced no attachment or execution proceeding.

## III. GOVERNING STANDARDS

### A. A JUDGMENT ENTERED WITHOUT JURISDICTION IS VOID, AND VACATUR IS MANDATORY

Rule 60(b)(4) requires a void judgment to be vacated. A judgment is void "if the issuing court lacked subject-matter jurisdiction, regardless of whether there existed an 'arguable basis' for jurisdiction," *Bell Helicopter Textron, Inc. v. Islamic Republic of Iran*, 734 F.3d 1175, 1181 (D.C. Cir. 2013), or if the court lacked personal jurisdiction. *Strahan v. Phibbs*, No. 1:21-CV-28-SNLJ, 2024 U.S. Dist. LEXIS 158666, at *4 (E.D. Mo. Sept. 4, 2024) (Limbaugh, Jr., J.). *Accord Agudas Chasidei Chabad of United States v. Russian Federation*, 110 F.4th 242, 256 (D.C. Cir. 2024) (arguable-basis standard inapplicable to a party that "did not 'appear[] in the challenged proceeding'"), *cert. denied*, 146 S. Ct. 1586 (2026).[12]

Relief from a void judgment is not discretionary. *Johnson v. Arden*, 614 F.3d 785, 799 (8th Cir. 2010); *accord Strahan*, at *4 ("If there is no jurisdiction over a case, the judgment is void, and the court must relieve a party of final judgment."). This Circuit "has long preferred merits dispositions over default judgments," *United States v. 7215*

---

[12] The "arguable basis" standard applies to parties that had "an opportunity to litigate," which "means not only awareness of the litigation but the defendant's actually appearing in it." *Jerez v. Republic of Cuba*, 775 F.3d 419, 422 (D.C. Cir. 2014). *Accord Aurum Asset Managers, LLC v. Bradesco Companhia de Seguros*, 441 F. App'x 822, 825 (3d Cir. 2011) (standard under which "a party would be unable to assert lack of jurisdiction by declining to appear" "cannot be the law"). *Cf. Kansas City Southern Railway Co. v. Great Lakes Carbon Corp.*, 624 F.2d 822, 823–26 (8th Cir. 1980) (en banc) (where ***non-sovereign*** parties had appeared and litigated in the rendering court, vacatur required "a plain usurpation of power" amounting to "a total want of jurisdiction"); *PIRS Capital, LLC v. Williams*, 54 F.4th 1050, 1052–54 (8th Cir. 2022) (applying "arguable basis" formulation in an adversary proceeding against a lender who had filed a proof of claim and whose employee signed for the summons and complaint). Yet even under the "arguable-basis" test the Judgment is void, given Missouri's reliance on direct effects *Bailey* rejected as a matter of law and its failure to offer any evidence of the effects *Bailey* approved.

*Longboat Drive*, 750 F.3d 968, 975 (8th Cir. 2014), and "foreign sovereigns [have] a special protection akin to that assured the federal government by" Rule 55. *Jerez v. Republic of Cuba*, 775 F.3d 419, 423 (D.C. Cir. 2014).

Once the Court finds it lacks subject-matter jurisdiction, it "must dismiss the action." Rule 12(h)(3).

### B. This Motion Is Made Within a Reasonable Time

The Ministry's motion is timely. Rule 60(c)(1) requires a Rule 60(b)(4) motion to be made "within a reasonable time." *Coney Island Auto Parts Unlimited, Inc. v. Burton Tr. for Vista-Pro Auto., LLC*, 607 U.S. 155, 157, 162 (2026). That inquiry turns on the circumstances; in a default case "it might be reasonable for a defendant not to seek relief before learning about a plaintiff's attempted enforcement." *Id.* at 159–60.

In sovereign-default cases, courts have measured "reasonable time" from the first concrete threat of enforcement. *FG Hemisphere Associates, LLC v. Democratic Republic of Congo*, 447 F.3d 835, 839–40 (D.C. Cir. 2006) (measuring timeliness of the sovereign's appearance from the date of the notice of the motion to execute, not from its earlier default). A sovereign "defendant may refrain from appearing . . . . When enforcement of the default judgment is attempted, however, he may assert his jurisdictional objection." *Practical Concepts, Inc. v. Republic of Bolivia*, 811 F.2d 1543, 1547 (D.C. Cir. 1987) (Bolivia's jurisdictional objection, first asserted when execution was attempted, was properly considered). *See also Kangol LLC v. Hangzhou Chuanyue Silk Import & Export Co.*, 177 F.4th 793, 797–98 (7th Cir. 2026) (private-defendant default; motion to vacate default judgment timely when filed within two months of the plaintiff's first execution attempt).

Here, Missouri has commenced no enforcement proceeding. *Supra* § II(G).[13] Even measured from entry of the Judgment, the timing of the Ministry's appearance is reasonable: the Ministry was entitled to rely on its sovereign immunity, *infra* § IV(E)(1), and Missouri itself let more than a year pass before submitting a corrected transmittal request. Docs. 97, 100, 102. Missouri suffers no prejudice: its proof was entirely documentary. Doc. 96; *infra* § IV(E)(2). This motion is made within a reasonable time.

## IV. ARGUMENT

### A. THE JUDGMENT IS VOID BECAUSE MISSOURI DID NOT ESTABLISH THE FSIA'S COMMERCIAL-ACTIVITY EXCEPTION

The Judgment is void, because this Court lacks subject-matter jurisdiction under the FSIA. Even crediting Missouri's evidence, the record does not establish the commercial-activity exception, both as a matter of law and failure of proof. Foreign sovereigns are presumptively immune; the Court has subject-matter jurisdiction only over a "claim for relief" as to which one of the FSIA's statutory exceptions is established, 28 U.S.C. §§ 1330(a), 1604; *Bailey*, 90 F.4th at 934–36.

Under 28 U.S.C. § 1608(e), "[n]o judgment by default shall be entered" against a sovereign "unless the claimant establishes his claim or right to relief by evidence satisfactory to the court." That requirement, however, is "a supplement to, not a substitute for," a non-appearing sovereign's right to "de novo assessment of his jurisdictional objections." *Jerez*, 775 F.3d at 423. The Eighth Circuit held that, while Missouri's Count IV ***alleged*** jurisdiction, "Missouri must still ***prove*** it." *Bailey*, 90 F.4th at 939; *accord*

[13] Under the FSIA, a default judgment must be transmitted pursuant to 28 U.S.C. § 1608(e) and a "reasonable period of time" must elapse before any attachment or execution may be ordered, 28 U.S.C. § 1610(c), in order for the foreign state to have "an adequate opportunity to respond." *Agudas Chasidei Chabad of United States v. Russian Federation*, 798 F. Supp. 2d 260, 267 (D.D.C. 2011).

*Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*, 581 U.S. 170, 174 (2017) (a "nonfrivolous, but ultimately incorrect, argument" that an exception applies "is insufficient to confer jurisdiction").[14]

### 1. Missouri Failed to Prove Any Direct Effect *Bailey* Upheld as Sufficient

Missouri did not prove the direct effects *Bailey* found sufficiently alleged—higher PPE prices and impaired treatment—but sought instead to prove the effects of ***lockdowns***, which *Bailey* rejected. 90 F.4th at 937–39; *supra* § II(D)(1).[15] Even had Missouri's evidence proved its asserted chain of events, *but see supra* § II(D)(1), the effects would remain "remote and attenuated," not the "immediate consequence" with no "intervening act" that a direct effect requires. *Bailey*, 90 F.4th at 937; *Weltover*, 504 U.S. at 618; *Virtual Countries, Inc. v. Republic of South Africa*, 300 F.3d 230, 237–38 (2d Cir. 2002) (a chain requiring "numerous actions by third parties" is too indirect); *Wye Oak Technology, Inc. v. Republic of Iraq*, 109 F.4th 509, 516–20 (D.C. Cir. 2024) (vacating

[14] The Judgment's reference to a "lenient standard" in certain FSIA default cases, Doc. 95 at 19, does not abrogate *Bailey*'s requirement that "Missouri must still prove" the jurisdictional exception to immunity applies. 90 F.4th at 939. That standard is based on the difficulty of obtaining evidence from an absent and hostile sovereign, particularly in terrorism cases, not to proof of alleged effects ***in Missouri*** entirely within Missouri's possession. *Owens v. Republic of Sudan*, 864 F.3d 751, 779, 785 (D.C. Cir. 2017), *vacated in part on other grounds sub nom. Opati v. Republic of Sudan*, 590 U.S. 418 (2020). Missouri's projected losses, moreover—which doubled here as Missouri's proof of jurisdictional "effects"—must be based on consequences that are "reasonably certain" and fixed in amount by a "reasonable estimate." *Hill v. Republic of Iraq*, 328 F.3d 680, 681 (D.C. Cir. 2003).

[15] That Missouri's expert purportedly isolated the share of lockdown losses indirectly attributable to PPE hoarding, Doc. 87 at 2, does not negate the numerous "intervening act[s]" between the alleged hoarding and their ultimate "remote and attenuated" effects. *Bailey*, 90 F.4th at 937.

judgment where alleged U.S. consequences depended on discretionary decisions by multiple actors), *cert. denied*, 146 S. Ct. 396 (2025).

As to the direct effects *Bailey* allowed, Missouri offered no evidence it paid higher prices for PPE or that Missourians suffered impaired treatment. *Supra* § II(D)(2). Missouri's evidence of bulk purchases from its own ***non-Chinese*** vendors, moreover, *supra* § II(D)(2), could not be a "direct" effect in any event. *Gen. Elec. Capital Corp. v. Grossman*, 991 F.2d 1376, 1385–86 (8th Cir. 1993) (plaintiff's claim "that it suffered injury in the United States because it paid too much" because of foreign state's concealment was not a "direct effect": the plaintiff "was not placed in financial peril as an '***immediate*** consequence'" (emphasis in original). *Accord Bailey*, 90 F.4th at 939 (upholding only effects "[n]o one else other than the defendants had to act to create").

### 2. Missouri Did Not Prove Commercial Activity by Any Defendant

Missouri did not prove any Defendant engaged in the commercial activity *Bailey* held sufficiently alleged: "[t]aking over mask-producing factories," "buying up a substantial portion of the world's supply of [PPE]," and "selling those items for a profit." *Bailey*, 90 F.4th at 938. The commercial-activity exception reaches only the "commercial activity of the foreign state" itself, § 1605(a)(2). A sovereign acts commercially when it acts "not as regulator of a market, but in the manner of a private player within it." *Weltover*, 504 U.S. at 614. Its regulation of others, including "regulat[ing] exports," is "governmental rather than commercial." *Cmty. Fin. Grp., Inc. v. Republic of Kenya*, 663 F.3d 977, 981 (8th Cir. 2011). Missouri's evidence did not even show that any Defendant engaged in the regulatory activity Missouri challenged—including nationalizing mask factories—nor that any Defendant engaged in any commercial activity, *supra* § II(E). It showed only ***private entities*** engaged in the challenged buying and selling of PPE. *Supra*

§ II(E). *See BP Chems. Ltd. v. Jiangsu SOPO Corp.*, 420 F.3d 810, 817–18 (8th Cir. 2005) ("***specific acts***" by named defendants necessary for commercial-activity exception to apply).

### B. THE JUDGMENT IS VOID BECAUSE THE COURT LACKED PERSONAL JURISDICTION WITH RESPECT TO THE UNSERVED ANTITRUST CLAIMS

The Judgment is also void because the Court never acquired personal jurisdiction over Defendants as to the antitrust claims it adjudicated. The FSIA makes personal jurisdiction claim-specific, providing it only "as to every claim for relief" where an immunity exception applies and "***where service has been made under section 1608***." 28 U.S.C. § 1330(b); *CC/Devas (Mauritius) Ltd. v. Antrix Corp.*, 605 U.S. 223, 230, 232–33 (2025). Missouri never served its antitrust claims, including its treble-damages demand, on Defendants, depriving the Court of personal jurisdiction with respect to those claims. *Supra* § II(C).

Missouri's antitrust claims were "new"—triggering § 1330(b)'s service requirement—because they were a "substantial alteration" of the case, *Breezee v. Islamic Republic of Iran*, No. 23-3392 (BAH), 2025 U.S. Dist. LEXIS 133485, at *6–7 (D.D.C. July 14, 2025) (vacating entry of default where an unserved amended complaint added just two plaintiffs with similar claims to forty-nine existing plaintiffs). Even a claim for the same damages arising from the same facts, but based on a different legal theory, is sufficiently "new" to require an amended complaint and service. *Kenny v. Islamic Republic of Iran*, No. 1:22-cv-03299 (TNM), 2024 U.S. Dist. LEXIS 174176, at *21–22 (D.D.C. Sept. 26, 2024) (plaintiff could not switch at the default stage from her pleaded statutory claim to an unpleaded common-law tort theory seeking the same damages).

Missouri's alteration went further: Missouri sought trebled damages under its new claims.[16]

The Federal Rules embody the same principles. A default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings," Rule 54(c), and a new claim against a defaulted party "must be served . . . under Rule 4," Rule 5(a)(2). *See Breezee*, 2025 U.S. Dist. LEXIS 133485, at *5–6 ("the same procedural fairness considerations" underlie Rule 5(a)(2) and the FSIA's service requirements). A plaintiff cannot amend by brief, for that "would render Rule 5(a)(2) a nullity." *Mwani v. Al Qaeda*, 600 F. Supp. 3d 36, 53 (D.D.C. 2022). Courts accordingly vacate as void, under Rule 60(b)(4), default judgments resting on a new claim that was never served. *E.g., Printed Media Servs., Inc. v. Solna Web, Inc.*, 11 F.3d 838, 843 (8th Cir. 1993) (even "actual notice" does not cure defective service); *Campbell v. Bennett*, 47 F.4th 1362, 1366–67 (11th Cir. 2022) (vacating judgment based on unserved amendment adding "joint[] and several[]" liability). Missouri's unserved antitrust claims and treble-damages demand were a far greater alteration.

### C. The Judgment Is Also Void Because Missouri's Claims Present Nonjusticiable Political Questions

The Judgment is void for a third, independent reason: Missouri's claims present nonjusticiable political questions. A controversy is nonjusticiable where there is "a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it," *Baker v. Carr*, 369 U.S. 186, 217 (1962). "The conduct of the foreign relations of our

---

[16] Missouri's default-hearing briefs could not substitute for an amended pleading. "New claims are properly raised through amended complaints, not opposition briefs." *InfoDeli, LLC v. W. Robidoux, Inc.*, 136 F.4th 792, 801 & n.6 (8th Cir. 2025) (district court properly addressed "only the claims raised in the operative complaint").

Government is committed by the Constitution to the Executive and Legislative—'the political'—Departments of the [federal] Government . . . ." *Freiberg v. Muskie*, 651 F.2d 608, 609 (8th Cir. 1981) (per curiam) (quoting *Oetjen v. Central Leather Co.*, 246 U.S. 297, 302 (1918)). A nonjusticiable political question deprives a federal court of subject-matter jurisdiction. *Freiberg*, 651 F.2d at 609 (affirming Rule 12(b)(1) dismissal where the case "solely presented nonjusticiable political questions" concerning the conduct of foreign relations); *accord Spectrum Stores, Inc. v. Citgo Petroleum Corp.*, 632 F.3d 938, 954 (5th Cir. 2011).[17]

Missouri's claims directly challenged official directives China's government issued within its own territory to manage a public-health emergency—measures Missouri's own exhibit described as "understandable ***as part of its response***," "which preceded ***similar policies by other pandemic-affected countries, including the United States***." Doc. 80-8 at 3.[18]

Missouri's claims against Defendants thus raise quintessential political questions. There are no "judicially discoverable and manageable standards," *Baker*, 369 U.S. at 217,

[17] The United States described the political question doctrine as "absolute," not "an equitable principle to be freely and flexibly administered by the courts." Br. for Amicus Curiae United States at 21, *767 Third Avenue Associates v. Consulate General of Socialist Federal Republic of Yugoslavia*, 218 F.3d 152 (2d Cir. 2000) (No. 99-9011).

[18] The U.S. government engaged, as its own sovereign prerogative, in the allocation and export control of PPE. *E.g.,* Prioritization and Allocation of Certain Scarce or Threatened Health and Medical Resources for Domestic Use, 85 Fed. Reg. 20,195 (Apr. 10, 2020) (FEMA temporary final rule barring export of respirators and other PPE without agency approval); Exec. Order No. 13,909, 85 Fed. Reg. 16,227 (Mar. 23, 2020) (prioritizing and allocating health and medical resources under the Defense Production Act); Exec. Order No. 13,911, 85 Fed. Reg. 18,403 (Apr. 1, 2020) (delegating additional authority under the Act).

for evaluating China's pandemic management.[19] No rule of law fixes how much PPE a nation facing an epidemic may buy or refuse to export. "[R]ecasting foreign policy and national security questions in tort terms does not provide standards for making or reviewing foreign policy judgments." *Schneider v. Kissinger*, 412 F.3d 190, 197 (D.C. Cir. 2005) (affirming Rule 12(b)(1) dismissal).

Adjudicating Missouri's claims required "an initial policy determination of a kind clearly for nonjudicial discretion," *Baker*, 369 U.S. at 217, and "reflected a value judgment on [the sovereign's] decisions and actions—a diplomatic determination textually committed to the political branches." *Spectrum Stores*, 632 F.3d at 951. A federal judgment condemning a foreign government's pandemic response, entered at the instance of a single U.S. State, presents "the potentiality of embarrassment from multifarious pronouncements by various departments on one question." *Baker*, 369 U.S. at 217.

Courts apply the doctrine to analogous antitrust claims challenging sovereign production and allocation decisions. *Spectrum Stores*, 632 F.3d at 950–54 (antitrust claims challenging OPEC members' production decisions were nonjusticiable political questions);[20] *D'Augusta v. American Petroleum Institute*, 117 F.4th 1094, 1105 (9th Cir. 2024), *cert. denied*, 145 S. Ct. 1478 (2025) (political question doctrine barred antitrust

---

[19] *Romer v. Carlucci*, 847 F.2d 445, 463 (8th Cir. 1988) (en banc), is not to the contrary: it held NEPA claims against a federal agency justiciable because the issues were "purely legal ones of statutory interpretation." No statute supplies a standard for judging a foreign sovereign's epidemic governance within its own territory.

[20] The United States has argued that antitrust claims challenging foreign sovereigns' decisions regarding their own resources "should not be managed through private litigation," but through diplomacy. Br. of the United States as Amicus Curiae Supporting Affirmance at 4–5, 43, *Spectrum Stores, Inc. v. Citgo Petroleum Corp.*, 632 F.3d 938 (5th Cir. 2011) (No. 09-20084).

claims implicating foreign sovereigns' oil-production decisions). *See also Joo v. Japan*, 413 F.3d 45, 47–48, 52 (D.C. Cir. 2005) (declining to decide the FSIA's commercial-activity exception because the issues were "demonstrably committed by our Constitution not to the courts but to the political branches").[21]

### D. THE ACTION MUST BE DISMISSED AS TO ALL DEFENDANTS BECAUSE ITS DEFECTS ARE JURISDICTIONAL

#### 1. Missouri's Failure of Proof Requires Dismissal

Missouri's failure to establish subject-matter jurisdiction requires dismissal, not further proceedings. "[T]he ultimate burden rests with Missouri, the plaintiff, to 'show[] that an exception [to sovereign immunity] applies,'" *Bailey*, 90 F.4th at 936 (quoting *Community Fin. Grp., Inc. v. Republic of Kenya*, 663 F.3d 977, 980 (8th Cir. 2011)). Immunity's "basic objective" is "to free a foreign sovereign from suit"; a court "should normally resolve those factual disputes and reach a decision about immunity as near to the outset of the case as is reasonably possible." *Helmerich*, 581 U.S. at 174, 187. "Once the evidence is submitted, the district court must decide the jurisdictional issue." *Osborn v. United States*, 918 F.2d 724, 730 (8th Cir. 1990). A record that does not establish an FSIA exception leaves the presumptive immunity standing, and under Rule 12(h)(3), the Court "must dismiss the action."

Missouri has had every opportunity *Bailey* contemplated to prove the Court's jurisdiction: a continuance and leave to supplement, Docs. 81, 82, 87; thirty-eight exhibits, Doc. 80; a hearing, Doc. 96; and two rounds of post-hearing briefing, Docs. 89, 90, 92, 94. It asked for judgment on a record it had represented sufficed. Doc. 79 at 91, 111. Further proceedings would not change the result, because 98.5% of Missouri's

[21] The United States urged that disposition. Suppl. Br. on Remand for Amicus Curiae the United States at 4–13, *Joo v. Japan*, 413 F.3d 45 (D.C. Cir. 2005) (No. 01-7169).

claimed effects are indirect as a matter of law, and it made no attempt to prove the rest. *Supra* §§ II(D)(2), IV(A)(1).[22] *See Bell Helicopter*, 734 F.3d at 1183–86 (affirming an order that vacated a default judgment and dismissed the action where the plaintiff "did not offer evidence" of the effect claimed); *Wye Oak*, 109 F.4th at 514, 516 (after a remand "to develop a factual record" on direct effect and a bench trial, "the case remanded with instructions to dismiss").

**2. A Jurisdictional Defect Requires Dismissal as to Every Defendant, Moving or Not**

Vacatur and dismissal are required as to all Defendants. A determination that subject-matter jurisdiction is lacking requires dismissal as to moving and non-moving Defendants alike. *Brewer v. Socialist People's Republic of Iraq*, 890 F.2d 97, 101 (8th Cir. 1989) (even where a sovereign "fails to enter an appearance and assert its claim of immunity, a court must determine whether immunity is available"). Where subject-matter jurisdiction fails, the action "must also be dismissed with respect to any non-moving defendants." *Doe I v. Nixon*, No. 4:08-CV-1518 (CEJ), 2010 U.S. Dist. LEXIS 114189, at *16 (E.D. Mo. Oct. 27, 2010), *aff'd*, 716 F.3d 1041 (8th Cir. 2013). The Court may act on its own initiative: Rule 12(h)(3) applies "at any time," and Rule 60(b)'s "'motion' requirement may be satisfied by the court's own motion." *Jo Ann Howard & Assocs., P.C. v. Nat'l City Bank*, 11 F.4th 876, 885 (8th Cir. 2021) (citation omitted). *Accord Strahan*, 2024 U.S. Dist. LEXIS 158666, at *4–5; *Hagen v. Sisseton-Wahpeton Community College*, 205 F.3d 1040, 1043–45 (8th Cir. 2000) (reversing default judgment

[22] The rule is the same in non-FSIA cases. A party that had "a full and fair opportunity to present the case" but failed to make a submissible showing is not entitled to another. *Weisgram v. Marley Co.*, 528 U.S. 440, 444 (2000); *id.* at 455–56 (parties do not "present less than their best . . . evidence in the expectation of a second chance should their first try fail").

against a non-appearing sovereign "with directions to dismiss the complaints": immunity "may be asserted at any stage of the proceedings," and its waiver "cannot be implied from a . . . failure to appear" (cleaned up)).

### E. Good Cause Supports Setting Aside the Entries of Default Under Rule 55(c)

The Court should also set aside the entries of default (Docs. 29, 44) for "good cause," weighing "whether the conduct of the defaulting party was blameworthy or culpable, whether the defaulting party has a meritorious defense, and whether the other party would be prejudiced if the default were excused." *Johnson v. Dayton Elec. Mfg. Co.*, 140 F.3d 781, 783–84 (8th Cir. 1998). Each consideration requires setting aside the entries of default against Defendants.

#### 1. A Sovereign's Nonappearance in Reliance on Immunity Is Not Culpable Conduct

Defendants' belief in their sovereign immunity was objectively reasonable. This Court dismissed the entire Complaint on that ground, and the Eighth Circuit affirmed except as to one count substantively different from the claims on which the Judgment was entered. *Supra* §§ II(B)–(C). Where "a foreign sovereign defendant's reasonable belief that it is immune from suit leads it to refuse to appear," ***a court "may not characterize this refusal as 'culpable conduct.'"*** *Gregorian v. Izvestia*, 871 F.2d 1515, 1525 (9th Cir. 1989). *Accord Jackson v. People's Republic of China*, 794 F.2d 1490, 1496 (11th Cir. 1986) (affirming vacatur; PRC's nonappearance reflected "misconception by an ancient and proud sovereign of its responsibility to reply to the demand of a United States court whose authority it does not recognize").[23] It is "in the interest of United States' foreign

[23] In *Jackson*, the United States asked the court to set aside the default judgment, citing the Secretary of State's judgment that vacatur "would clearly serve the foreign policy interests of the United States." Statement of Interest of the United States, *Jackson v.*

policy to encourage foreign states to appear before our courts"; defenses asserted "albeit after a default judgment has been entered" should "be considered carefully." *Practical Concepts*, 811 F.2d at 1551–52.[24] Even a willful default may be set aside where the defense is meritorious and prejudice is mitigated; the interest in resolving disputes on the merits "is pronounced in the context of a foreign state desiring to assert defenses based on its sovereign status." *Khochinsky v. Republic of Poland*, 1 F.4th 1, 7 (D.C. Cir. 2021).

#### 2. Missouri Will Suffer No Cognizable Prejudice

Missouri will not be prejudiced by setting aside the entries of default. Prejudice must be concrete—"loss of evidence, increased difficulties in discovery, or greater opportunities for fraud and collusion." *Dayton Elec.*, 140 F.3d at 785 (cleaned up). Missouri's proof was entirely documentary, so no evidence will be lost.

#### 3. Defendants Have Meritorious Defenses

Both against Count IV of Missouri's Complaint and its unpleaded antitrust claims (were they properly before the Court, which Defendants dispute, *supra* § IV(B)), Defendants have several defenses on the merits precluding judgment. A meritorious defense need not be proved; the question is whether the proffered facts and law "would permit a finding for the defaulting party." *Dayton Elec.*, 140 F.3d at 785 (cleaned up). *See Bituminous Cas. Corp. v. Scottsdale Ins. Co.*, No. 1:12-CV-84-SNLJ, 2012 U.S. Dist.

---

*People's Republic of China*, No. 79-C-1272-E (N.D. Ala. Aug. 18, 1983), *reprinted in* 22 I.L.M. 1077, 1083, 1101, 1107 (1983).

[24] *Accord* Br. for the United States as Amicus Curiae Supporting Petitioners at 1, *CC/Devas (Mauritius) Ltd. v. Antrix Corp.*, 605 U.S. 223 (2025) (Nos. 23-1201, 24-17) (litigation against foreign sovereigns "can affect the reciprocal treatment of the United States in the courts of other nations"); *id.* at 13 (it is "critically important to the United States' own interest in securing reciprocal treatment by foreign sovereigns, however, that foreign states understand that the United States appropriately safeguards their interests through non-constitutional means, including through various protections in the FSIA's comprehensive and carefully calibrated statutory framework").

LEXIS 169168, at *7–8 (E.D. Mo. Nov. 29, 2012) (Limbaugh, Jr., J.) (defenses not "presented in detail" sufficed, because "they would, if proven, necessitate a verdict in their favor"). Among them:

- As to Count IV as pleaded: ***Missouri law recognizes no "duty not to hoard" goods in world commerce***, Doc. 1 ¶ 176—a duty running "as to the world at large" is a burden "simply too great" to impose. *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Raczkowski*, 764 F.3d 800, 805–06 (8th Cir. 2014);

- ***98.5% of Missouri's base antitrust damages are foreclosed***, because a State may not recover damages in antitrust for injury to its "general economy." *Hawaii v. Standard Oil Co. of Cal.*, 405 U.S. 251, 255, 260–64 (1972);

- ***Missouri's trebled damages are prohibited against the foreign state Defendants***. The FSIA prohibits punitive damages against foreign states, 28 U.S.C. § 1606, which includes antitrust treble damages. *SuperTurf, Inc. v. Monsanto Co.*, 660 F.2d 1275, 1283–84 (8th Cir. 1981) (rejecting the argument that treble antitrust damages "are compensatory in nature and not punitive"); *Carpenter v. Countrywide Home Loans, Inc.*, 250 S.W.3d 697, 701 (Mo. banc 2008) (under Missouri law, statutory treble damages are "penal in nature");

- ***Foreign states and their political subdivisions are not "persons" subject to antitrust liability***, 15 U.S.C. §§ 2, 7, 12; *cf. Vermont Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 780–81, 784–85 (2000) (sovereign not a "person" subject to treble-damages liability);[25] and

- ***The act-of-state doctrine bars adjudicating the validity of "China's" official directives***, issued within its own territory to manage the pandemic. *W.S. Kirkpatrick & Co. v. Env't Tectonics Corp., Int'l*, 493 U.S. 400, 405–06, 409–10 (1990).[26]

---

[25] The Court itself stated at the hearing that its own research had "not found any case anywhere" treating a foreign country defendant as a "person," and observed Missouri was asking it to "go out on a limb." Doc. 96 at 13:17–14:10, 15:10–17.

[26] Should the Court conclude the Judgment is not void, the Ministry requests relief under Rule 60(b)(6), which reaches "any other reason that justifies relief" where Rules 60(b)(1)–(5) do not apply, *Kemp v. United States*, 596 U.S. 528, 533 (2022). Relief requires "extraordinary circumstances." *BLOM Bank SAL v. Honickman*, 605 U.S. 204, 210 (2025); *see Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863–64 (1988) (affirming vacatur under Rule 60(b)(6)). The circumstances here are exceptional: the size of the award; the novelty of imposing antitrust liability on a foreign sovereign for its domestic response to a pandemic; the entry of that award on unpleaded and unserved claims; and the foreign-relations consequences the Executive Branch has identified in like cases. *Supra* nn. 20–21, 23–24.

## V. CONCLUSION

For the foregoing reasons, the default judgment should be vacated, the entries of default should be set aside, and the case should be dismissed in its entirety for lack of subject-matter jurisdiction.

The Ministry requests all further relief the Court deems just.

Dated: September 3, 2026

Respectfully submitted,

/s/ Michael A. Wolff
Michael A. Wolff, #27633(MO)
Wolff Law LLC
77 Aberdeen Place
St. Louis, Missouri 63105
Tel: 314-691-4377
mike77wolff@gmail.com

Of Counsel:

/s/ Michael J. Baratz
Steven K. Davidson, #407137(DC)*
Michael J. Baratz, #480607(DC)*
STEPTOE LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
(202) 429-3000
sdavidson@steptoe.com
mbaratz@steptoe.com

/s/ Carl W. Oberdier
Carl W. Oberdier, #2427466(NY)*
Kellen G. Ressmeyer, #4666376(NY)*
OBERDIER RESSMEYER LLP
655 Third Avenue, Floor 28
New York, New York 10017
(212) 659-5141
cwo@oberdier.com
kgr@oberdier.com

*Counsel for Defendant the Ministry of Emergency Management of the People's Republic of China (limited appearance)*

* *pro hac vice*