中华人民共和国总领事馆
CONSULATE GENERAL OF THE PEOPLE'S REPUBLIC OF CHINA
IN CHICAGO
100 W Erie St, Chicago, IL 60654

No.2025/5

中华人民共和国驻芝加哥总领馆向密苏里州州政府致意，谨提及我馆3月13日就密苏里州针对中方提起的涉疫情滥诉案及所谓“缺席判决”向你方所提出的交涉，并谨就此案重申和进一步陈述中方立场如下：

一、该滥诉案和所谓“缺席判决”严重违背国家主权豁免和主权平等等国际法原则，严重挑衅中国国家主权和尊严，严重损害中美关系以及中国和密苏里州交往合作，纯属基于歪曲事实和法律谬误的恶意政治操弄，中方对此坚决反对，绝不接受。

二、该滥诉案和所谓“缺席判决”所依赖的“事实背景”及其所引用的所谓报告、报道，毫无事实根据。尤其所声称的中方“隐瞒和压制疫情信息”“阻碍溯源调查”“国有化美国在华工厂”“囤积和垄断个人防护用品”，更是充满事实谬误。

中国疫情应对公开透明。当年新冠肺炎疫情发生之后，

中国政府坚持人民至上、生命至上，同世界各国携手合作、共克时艰。中国政府始终本着公开、透明、负责任态度，积极履行国际义务。中方在 2019 年底发现不明原因肺炎病例，第一时间即向美国以及世界卫生组织等通报疫情信息。美方于 2020 年 1 月向中方通报美首例新冠肺炎确诊病例前，中方已两次向美疾控中心负责人介绍疫情情况。中方并自 2020 年 1 月 11 日起每日向世卫组织通报疫情信息，同年 1 月 12 日向世界公布新冠病毒基因序列，将新冠疫情诊疗方案编制成多语种分享给全球 180 多个国家。2021 年 1 月 21 日起，国家卫健委每天在官网、政务新媒体平台等发布前一天全国疫情信息。

中方积极支持和参与病毒溯源工作。中国是迄今唯一多次邀请世卫组织国际专家组到本国开展新冠病毒溯源合作的国家，也是迄今唯一多次组织专家同世卫组织分享溯源进展的国家。2021 年，中国同世卫组织国际专家组组成联合专家组，在武汉开展为期 28 天联合研究。联合专家组实地考察所有想去的地方，见到所有想见的人员，获得了中方提供的海量数据进行科学研究。联合专家组于 2021 年 3 月正式发布中国—世卫组织新冠病毒溯源联合研究报告，就溯源问题作出最权威、最专业、最科学的结论，认为新冠病毒“极不可能”通过实验室传人。

中国非但没有囤积防疫物资，还积极向国际社会提供援助。在自身疫情防控仍然面临巨大压力的情况下，中国迅速开展行动，力所能及地为国际社会提供援助。中国在满足国内疫情防控需要的基础上，想方设法为各国采购防疫物资提供力所能及的支持和便利，打通需求对接、货源组织、物流

运输、出口通关等方面堵点，畅通出口环节，有序开展防疫物资出口。采取有力措施严控质量、规范秩序，发布防疫用品国外准入信息指南，加强防疫物资市场和出口质量监管，保质保量向国际社会提供抗击疫情急需的防疫物资。

仅 2020 年 3 月至 5 月，中国向 200 个国家和地区出口 706 亿只口罩、3.4 亿套防护服、1.15 亿个护目镜、9.67 万台呼吸机、2.25 亿份病毒检测试剂。中国是最早承诺将提供新冠疫苗作为全球公共产品的国家，向 120 多个国家提供 22 亿剂疫苗，仅在 2021 年就向各国捐助 1.25 亿剂疫苗。中国并先后向 34 个国家派遣 38 批医疗专家组，通过双多边渠道向发展中国家提供 5600 万美元现汇援助，向世卫组织捐赠 5000 万美元。

其中，中国向美国提供 66 亿只口罩、3.44 亿双外科手套、4409 万套防护服、675 万副护目镜、近 7500 台呼吸机。据不完全统计，疫情发生初期，中国地方和相关机构和企业向美 30 个州、55 个城市捐助超 960 万只口罩、50 万盒检测试剂、30.59 万双医用和其他手套、13.35 万副护目镜。中国抗疫行动时间经纬清清楚楚，事实数据一目了然，获得国际社会普遍认可和高度评价，不容肆意歪曲抹黑。

三、该案件严重违背主权豁免和主权平等等重要国际法原则。主权豁免是一项久已确立的重要国际法原则，美国《外国主权豁免法》同样确立了主权豁免原则。根据这一原则，一国的主权行为免受外国司法管辖。各国开展的疫情防控措施是主权性行为，不受外国法院管辖。美方有义务尊重和确保中方在美国法院享有的司法管辖豁免，以及中国国家财产享有的执行豁免。

中国作为主权国家，依据《中华人民共和国传染病防治法》等实施医疗卫生、防疫管理、复工复产等病毒预防和控制措施。中国政府多次制定、修改《新型冠状病毒肺炎防控方案》，并授权地方政府出台临时性应急行政管理措施，加强市场监管，惩处囤货居奇，依法保证疫情防控物资大规模生产与配送，以最快速度恢复医疗用品生产，最大限度扩大产能。将中方主权行为污蔑为所谓“国有化”和“垄断”等商业行为，并实施管辖，严重违反主权豁免等国际法原则。中国疫情防控政策和措施系中国的主权行为，与商业活动毫无关系，未对美国产生任何“直接影响”，美国法院对此无管辖权。

四、该案件突破美国司法实践，违法域外适用美国内法。根据美国《外国主权豁免法》和司法判例，美国法院在没有“令法院满意的证据”情况下，不得对外国国家作出缺席判决。“缺席判决”依据的所谓报告和报道纯属谣言谎言，均未经证实，连“传闻证据”都算不上，根本不可能作为法院可采纳的“证据”。有关案件突破底线，以实现对中国欲加之罪的目的，用心极为险恶。

同时，美最高法院明确裁定，各州法律没有域外适用效力，连美国联邦政府都不受这些法律管辖。根据美国《外国主权豁免法》和判例，美法院无权对外国政府判处惩罚性赔偿金。所谓“缺席判决”将美法律和罚金强行适用于中方，是典型的霸权主义、双标行径。

五、将自身防疫不力责任转嫁给中方的做法毫无道理。“缺席判决”声称中方行为给密州带来“直接损害”，判决中方支付巨额“赔偿”，却不谈提起该案的 Andrew Bailey 检

察长在疫情初期曾大肆鼓吹口罩无用论、美联邦政府也采取了控制防疫物资生产和流动等措施。如果说密州人民因疫情遭受损害，也是美方未能及时采取疫情防控措施所致，怪不到中方头上。美法律和判例也要求被指控行为和损害结果之间存在法律上的因果关系，否则无法确立原告的“索赔和救济权利”。正如乔治华盛顿大学法学教授 William Dodge 在其近日发表的文章中指出，判决未能区分被指控的中方行为同其他介入因素，如密州居家令等对密州的影响，也没有讨论被控中方行为同损害结果间的因果联系，对中方的归责十分牵强。

综上所述，该案件性质极其恶劣，如处理不当，势必对中美关系以及中国和密苏里州各领域交往合作造成严重损害，也将成为美国罔顾国际法原则的又一力证，进一步损害美国国际信誉。中方敦促密苏里州政府从中美关系大局和中国与密苏里州合作大局出发，认清该滥诉案的严重性和危害性，务必重视中方立场和关切，立即采取一切必要措施尽早撤回滥诉，更不得执行判决。中方保留根据国际法采取坚决反制措施的权利，包括按照对等原则处理美方及其财产在华豁免问题，坚定维护自身合法权益。

顺致崇高的敬意。

2025年3月20日

( Translation )

No.2025/5

The Consulate General of the People's Republic of China in Chicago presents its compliments to the Government of the State of Missouri, and with respect to the letter we sent on March 13 regarding the lawsuit against the People's Republic of China filed by the State of Missouri, as well as the so-called "default judgment" made by the United States District Court for the Eastern District of Missouri, has the honor to reiterate and further inform the latter as follows:

1. This lawsuit and so-called "default judgment" seriously violate international legal principles such as sovereign immunity and sovereign equality, which constitute blatant provocations against China's national sovereignty and dignity and grave violations of the international rule of law, and severely undermine the China-U.S. relationship and the exchanges and cooperation between China and the State of Missouri in various fields. They are nothing but ill-motivated political manipulation based on distorted facts and legal fallacies. China firmly opposes and will never accept the so-called "default judgment."

2. There is no factual basis for the so-called "factual background" and the reports quoted in this lawsuit and so-called "default judgment", especially the claims that China "hid and suppressed pandemic information", "obstructed the study of origins", "nationalized U.S. factories in China" and "hoarded and monopolized Personal Protective Equipment (PPE)", which are full of factual fallacies.

China's responses to the pandemic is open and transparent. After the

outbreak of COVID-19 pandemic years ago, the Chinese government put people and their lives first, joint hands with other countries to overcome difficulties, and made significant contributions to the international collaboration in combating the pandemic. China has been open, transparent and responsible in implementation of international obligations. At the time when pneumonia cases of unknown cause were identified in late 2019, China immediately informed the WHO and other countries, including the U.S. Before the U.S. side informed its first confirmed case to China in January 2020, China had twice briefed the director of the U.S. CDC about the pandemic. China started to update the WHO on a daily basis from January 11, 2020. On January 12, China released the genome sequence of the novel coronavirus, and then shared the diagnosis and treatment protocol for novel coronavirus pneumonia to more than 180 countries around the world in multiple languages. Since January 21, 2020, the National Health Commission has provided daily updates on nationwide cases on its official website and social media platform.

China has actively supported and participated in origins-tracing. To date, China remains the only country that has invited more than once WHO experts groups to conduct joint origins study inside the country. China is also the only country that has organized study inside the country. China is also the only country that has organized multiple events for its experts to share progress on origins-tracing with WHO. In 2021, China and WHO international experts group formed a joint team, and conducted joint research for 28 days in Wuhan. The experts were granted full access to every place they asked to see, everyone they wanted to meet, and obtained a huge amount of data for scientific research provided by China. In March 2021, the WHO officially released the origins-tracing study report of the China-WHO joint mission. The study reached the most authoritative, professional and scientific conclusion on origins-tracing,

concluding that it is "extremely unlikely" that COVID-19 virus was transmitted to human beings through the laboratory.

Rather than hoarding anti-epidemic supplies, China has actively provided assistance to the international community. While facing the tremendous pressure of domestic coronavirus control, China moved quickly to provide as much assistance to the international community as it can. While ensuring domestic needs, China has tried every possible means to provide support to all countries in purchasing protective materials. It has smoothed the channels for supply-demand docking, organized logistics, transport, and the supply of goods, and accelerated export customs clearance. It has taken effective measures to control product quality, regulate export procedures, issue guidelines on foreign market access, and strengthen market and export quality supervision, so as to provide other countries with goods of the highest quality.

From March to May 2020 alone, China exported 70.6 billion masks, 340 millions protective clothing, 115 million goggles, 96,700 ventilators, and 225 million testing kits to 200 countries and regions. China was the first country to commit COVID-19 vaccine as a global public good, providing 2.2 billion doses of vaccines to more than 120 countries, and donating 125 million doses of vaccines in 2021 alone. In addition, China dispatched 38 groups to 34 countries for COVID-19 control, provided $56 million in cash assistance through multilateral and bilateral channels, and donated $50 millions to the WHO.

Among them, China exported to the U.S. 6.6 billion masks, 344 million pairs of surgical gloves, 44.09 million protective suits, 6.75 million goggles, and nearly 7500 ventilators. Preliminary statistics indicate that in the early stage of the pandemic, Chinese local governments, institutions and companies donated, to 30 U.S. states and 55 cities, more than 9.6 million masks, 500,000 testing kits, 305,900 pairs

of medical and other gloves, and 133,500 goggles. The timeline of China's fight against the pandemic is clear. The facts and data are visible and widely recognized by the international community, which should not be distorted or smeared.

3. This case seriously violates international legal principles such as sovereign immunity and sovereign equality. Sovereign immunity is a fundamental and long-established principle of international law, and is also adopted by the Foreign Sovereign Immunity Act (FSIA) of the U.S. According to this principle, a country's sovereign acts are immune from foreign court's jurisdiction and its property is immune from execution by foreign courts. Measures taken by States to prevent and control epidemic are sovereign actions, and are not subject to the jurisdiction of foreign courts. The U.S. governments at various levels have legal obligations under international law to respect and preserve China's jurisdictional immunity and immunity from attachment and execution of properties.

As a sovereign State, China implemented epidemic prevention and control measures in accordance with the Law of the People's Republic of China on Prevention and Treatment of Infectious Diseases and other laws, including medical and health care, epidemic management, resumption of work, and so on. The Chinese government has formulated and repeatedly revised the Protocol on Prevention and Control of Novel Coronavirus Pneumonia, authorizing local governments to take temporary emergency administrative measures, strengthening market supervision, punishing hoarding activities, ensuring large-scale production and distribution of anti-epidemic supplies in accordance with the law, resuming the production of medical supplies as quickly as possible, and expanding capacity to the maximum. Distorting China's sovereign actions as nationalization and monopoly and regarding them as commercial

activities to exercise jurisdiction constitutes a serious violation of international law principles, including sovereign immunity. China's anti-pandemic policies and measures have nothing to do with commercial activities and have no "direct effect" within the U.S. The U.S. courts have no jurisdiction over such kind of actions.

4. This case is against judicial precedence and illegally applies the U.S. domestic laws to foreign sovereigns. Even under the FSIA and case law, no judgment by default shall be entered by a U.S. court against a foreign country if there is no "evidence satisfactory to the court" in supporting the claim. The so-called reports that the default judgment relies on are pure rumors and lies, which do not even constitute "hearsay evidence". It is impossible for the court to accept such rumors as "evidence". However, in order to achieve its purpose of "convicting" China, the default judgment goes against judicial precedence with sinister motive.

Meanwhile, the U.S. Supreme Court clearly ruled that U.S. state laws cannot apply extraterritorially. The U.S. federal government is not subject to U.S. federal antitrust laws. According to FSIA and precedence, U.S. courts have no right to impose punitive damages on foreign sovereigns. It is a typical act of hegemony and double standards to forcibly apply U.S. laws and compensation to China.

5. There is no justification for diverting attention from the U.S. pandemic response failures and casting blame on China. The default judgment claims China's sovereign actions had caused "direct effect" to the State of Missouri, and orders China to pay a huge amount of "compensation". However, it does not mention that Attorney General Andrew Bailey, who is on behalf the State of Missouri in this case,

claimed the mask was uselessness during the early stage of the pandemic. Besides, the U.S. federal government also took measures to control the production and flow of PPE during the pandemic. The damage Missouri people suffered during the pandemic was due to the failure of the U.S. to take timely pandemic response measures. Such damage cannot be blamed on China. U.S. domestic laws and precedence also require that there is a legal causation between the alleged behaviors and the damage. Otherwise the plaintiff's "claim or right to relief" cannot be established. As professor William Dodge of George Washington University pointed out in his recent article, the "default judgment" fails to distinguish between the alleged Chinese behavior and other intervening factors, such as the impact of the Missouri stay-at-home order. It also does not touch upon the causality between the alleged Chinese behaviors and the damage. The so-called "default judgment" does not touch upon such details. Attributing such damage to China is very far-fetched.

In summary, this case is of a serious nature and, if not handled properly, will inevitably cause severe damage on China-U.S. relationship, and the exchanges and cooperation between China and the State of Missouri in various fields. It is also another example of non-compliance of international law by the U.S., causing further damage to the international credibility of the U.S. The Chinese government urges your state to bear in mind the overall interests of China-U.S. relations and the overall cooperation between China and your state, recognize the seriousness and harm of this frivolous lawsuit, attach importance to China's position and concerns, and take all necessary steps to restrain and stop the case, including revoking the judgment as soon as possible, and refraining from any enforcement of the judgment. China preserves the right to take countermeasures in accordance with international law, including handling the immunity of the U.S. and its property in China

based on the principle of reciprocity, in order to firmly safeguard its legitimate interests.

The Consulate General of the People's Republic of China in Chicago avails itself of this opportunity to renew to the State of Missouri the assurances of its highest consideration.

Chicago March 18, 2025

Government of State of Missouri
Jefferson City, MO